

1  Michelle D. Strickland  *(SBN # 165966)*
   *LAW OFFICES OF MICHELLE D. STRICKLAND*
2  P.O. Box 2238
   Colton, California  92324
3  Tel:  (951) 782-8555
   Fax:  (951) 782-8555
4  E-MAIL: MSSTRIC@AOL.COM

5  Attorneys for Plaintiff,
   LISA LIBERI
6

7

8              **UNITED STATES DISTRICT COURT**

9              **CENTRAL DISTRICT OF CALIFORNIA**

10 LISA LIBERI            **CV  05  -  03015  PA  (Ex)**
                          CASE NO.
11                Plaintiff,
12
13   v.                   **PLAINTIFF'S VERIFIED COMPLAINT
                          UNDER THE CIVIL RICO ACT 18
14 WEST VALLEY DETENTION CENTER;   U.S.C. §1962;  §1961; 5 U.S.C. §522;
   SAN BERNARDINO COUNTY SHERIFF'S 18 U.S.C. §2; § 4; §241; §242; §373;
15 DEPARTMENT, GARY PENROD, San    §892; §894; §1021; §1341; §1343;
   Bernardino County Sheriff; PAUL §1346; §1512;  §1621; §1622; §1623;
16 MORRISON; DOE DEPUTIES assigned to §1952; §1956; §1957; §2340A; and
   West Valley Detention Center;  DOE UNDER THE CIVIL RIGHTS ACT 42
17 NURSES, assigned to West Valley Detention U.S.C. §1983; §1985(3); §1986; FOR
   Center; DR. SHIN YIN LIONG, M.D.; DOE DECLARATORY RELIEF; INJUNCTIVE
18 CONTRACTORS assigned to West Valley RELIEF AND MONETARY RELIEF;
   Detention Center, JOHN HEARY, Nursing DEMAND FOR JURY TRIAL
19 Supervisor, BRIAN FRATT, Deputy;
   COUNTY OF SAN BERNARDINO;
20 SAN BERNARDINO COUNTY DISTRICT
   ATTORNEY'S OFFICE; JAMES SECORD,
21 Deputy District Attorney; MIKE LEIBERICH,
   V.L. HAMILTON,  MICHAEL A. RAMOS,
22 District Attorney; JOAN BORBA, Judge;
   CRAIG WYATT ZIBELL, individually and
23 dba ALLWAYS ALLWAYS 4U BAIL
   BONDS, aka ALLWAYS FOR-U BAIL
24 BONDS; ANGELO MICHAEL VERLINGO;
25
26
27
28

**Complaint**

FILED
APR 2 5 2005
CLERK, U.S. DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
EASTERN DIVISION
BY                    DEPUTY

DOCKETED ON CM
APR 2 8 2005
BY

1  BAR TRIANGLE BAIL BONDS, INC., DBA
2  BOONES BAIL BONDS; SENECA
   INSURANCE COMPANY, INC.; JOHN
3  MARK ALLEN; USA FEDERAL CREDIT
   UNION aka UNITED SERVICES OF
4  AMERICA, MARCELLA WEVELY,
   MELINDA ROSAS, HOUTS &
5  ASSOCIATES, RANDOLPH C. HOUTS,
   JULIE MISLEH, ROB HENDERSON,  and
6  Does 1 through 10, Inclusive
7                              Defendants.
8
           PLAINTIFF, LISA LIBERI pleads as follows:
9

10  **CIVIL RICO CLAIM FOR DAMAGES AND OTHER RELIEF FOR VIOLATION**
11  **OF RACKETEERING INFLUENCED AND CORRUPT ORGANIZATIONS ACT (RICO),**
12  **RELATED FEDERAL LAWS, AND RELATED STATE LAWS**
13

14      This is an action brought by plaintiff LISA LIBERI, who petitions for redress of
15  grievances, and requests the court hold defendants accountable for violations of Title 18 U.S.C. §
16  1962 et seq. (West 2001), clearly established law, other applicable federal statutes, and
17  applicable state statutes, for fraud and swindle, for obstruction of justice, conspiring to obstruct
18  justice for themselves and others and for operating the courts as a racketeering enterprise.
19

20                              **NATURE OF ACTION**
21      This is an action for Injunctive and Monetary Relief under 42 U.S.C. §§ 1983; 1985(3);
22  and 1986; The Liberty Clause of the Fourteenth Amendment to the United States Constitution,
23  The Due Process Clause of the Sixth Amendment of the United States Constitution,   The
24  Excessive Bail and Twice Placed in Jeopardy Clause of the Fifth Amendment of the United
25  States Constitution, The Cruel and Unusual Punishment Clause of the Eighth Amendment of the
26  United States Constitution, The Equal Protection Clause of the First and Fourteenth Amendments
27  of the United States Constitution, The right to Privacy and Invasion of Privacy Clause of the First
28

**Complaint**                    - 2 -

1   Emotional Distress of the First Amendment of the United States Constitution, and Intentional

2   Infliction of Emotional Distress Clause of the First Amendment of the United States

3   Constitution, Violation of Title 5 U.S.C. §552; Title 18 U.S.C. §§ 2; 4; 241; 373; 892; 894; 1021;

4   1341; 1505; 1621; 1623; 1951; 1621; 1622; 1623; 1952; 1952; 1956; 1957;  and 2340A;   RICO

5   violations under 18 U.S.C. §1962; Violation of State laws under California *Penal Code* §§118;

6   127;  137; 138;  141; 182; 422.6; 4001; and 4002(a); California *Civil Code* §§ 43; 44; 45; 45(a);

7   46; 52; and 52.1;

8

9                    **BRIEF STATEMENT OF THE CASE UNDER  F.R.C.P. RULE 8**

10          MICHAEL RAMOS, and JAMES SECORD through SAN BERNARDINO DISTRICT

11   ATTORNEY'S OFFICE,  took bribes (asked for and granted favors) and conspired with

12   JUDGES, WEST VALLEY DETENTION CENTER; SAN BERNARDINO COUNTY

13   SHERIFF'S DEPARTMENT, GARY PENROD, DOE DEPUTIES, DOE NURSES, SHIN YU

14   LIONG; JOHN HEARY, DOE CONTRACTORS; MIKE LEIBERICH, JOHN ALLEN, USA

15   FEDERAL CREDIT UNION, HOUTS & ASSOCIATES, HOUTS, WEVELY, ROSAS,

16   MISLEH, HAMILTON, HENDERSON, and other defendants to use the courts as a racketeering

17   enterprise by working in concert to fix Plaintiff's cases by doing the following

18          * To obstruct justice for the criminal, civil and Paternity actions pending and to keep

19          Plaintiff incarcerated unnecessarily,

20          * Sealing civil cases which pertain to Plaintiff without notice and opportunity to be heard

21          thereby denying her the right to litigate these matters and allowing the alleged creditor to

22          obtain a judgment without due process.

23          * Assisting opposing counsel by providing them with confidential information from

24          Plaintiff's paternity file to aid Defendants opposition to Plaintiff's attempt to set aside a

25          void judgment.

26          * SECORD and/or his agents provided ALLEN with personal and legal information

27          regarding Plaintiff's criminal matter, even though ALLEN had been convicted of crimes

28          against Plaintiff.  This information was given to aid ALLEN in another of his numerous

**Complaint**                                   - 3 -

1    attempts to take custody of his and Plaintiff's minor son.

2        * Defendants conspired, aided and abetted in the refusing Plaintiff required  medical

3    attention based on a known heart condition;

4        * Defendants  conspired, aided, abetted each other to refuse Plaintiff her heart

5    medications after court order requiring she receive the requisite medical attention;

6        * Defendants conspired, aided, abetted in violating court orders that ordered Defendants

7    to give proper medical attention and medications to Plaintiff,

8         * Defendants conspired, aided and abetted in exonerating Plaintiff's bail, after the second

9    premium of $25,000.00 was paid by extortionate means.

10   *SECORD, and ALLEN conspired to file fraudulent charges against Plaintiff based on

11   allegations ALLEN had been accusing Plaintiff of since 1992 and which still have yet to

12   be proven.

13       * SECORD informed ALLEN he was filing a second warrant against Plaintiff, ALLEN

14   contacted Officer Gallegos with the Santa Fe Police Department in or about the end of

15   May 2004 to mid June 2004 stating Plaintiff had a fugitive warrant for her arrest for

16   crimes she committed in California.

17   * SECORD sought a second warrant in  San Bernardino - **Central** Superior Court Case

18   #FSB 044914 against Plaintiff June 30, 2004, knowing  she had arraignment on or about

19   July 13, 2005 in the Rancho Cucamonga Division on very similar charges.

20       * Defendants' conspired with one another, aided and abetted each other by arresting

21   Plaintiff and locking Plaintiff in isolation within the mens unit of the Detention Facility,

22   in which Plaintiff was unable to take a shower; obtain emergency medical attention when

23   needed due to a broken intercom system.

24       * Defendants' conspired to make it as hard and difficult on Plaintiff during her

25   incarceration, with knowledge  the stresses, lack of medical attention, and lack of

26   medications would endanger Plaintiff's health and could possibly kill her.

27       * Defendants' conspired in order to aid  SECORD to keep Plaintiff incarcerated in order

28   for him to obtain a conviction against Plaintiff as a favor to his friend, MORRISON.

**Complaint**                                            - 4 -

1        * The prosecution against Plaintiff is retaliatory and was filed after Plaintiff filed a state

2        lawsuit against the County of San Bernardino and numerous other defendants for their

3        wrongful arrest and detention of Plaintiff in January 2002.   NOTE: No proof is required

4        in a judicial bribery case other than the solicitation and completion of the act by a judge;

5        "to do a favor" is the standard for "principals and accessories." See ***Salinas v. United***

6        ***States,*** 118 S.Ct. 469 (1997).  Defendants' succeeded in part of their plan, they kept

7        Plaintiff incarcerated for 3-1/2 weeks, which caused permanent heart damage and almost

8        cost Plaintiff her life.

9    **PARTIES**

10   1.    Plaintiff, LISA LIBERI (Plaintiff) is a Citizen of the United States, and a resident of

11       Santa Fe, New Mexico.

12   2.    Defendant, SAN BERNARDINO COUNTY SHERIFF'S DEPARTMENT, whose

13       principal place of business is 655 East 3rd Street,  San Bernardino, California 92415, is in

14       charge of serving mankind, to safeguard lives and property, to investigate criminal acts, to

15       enforce the laws of the State of California  within the County of San Bernardino.

16   3.    Defendant, GARY PENROD, sued here in his official capacity is a resident of

17       California, at all times pertinent to this action, he was San Bernardino County Sheriff and

18       was employed by the SAN BERNARDINO COUNTY SHERIFF'S DEPARTMENT,

19       located at 655 East 3rd Street, San Bernardino, California.

20   4.    Defendant, PAUL MORRISON, sued here in both his individual and official capacities,

21       resident of California, at all times pertinent to this action, has been employed as a

22       Detective by the San Bernardino County Sheriff's Department, Rancho Cucamonga

23       division located at 10510 Civic Center Drive, Rancho Cucamonga, CA 91730.

24   5.    Defendant, WEST VALLEY DETENTION CENTER, conducting business at 9500

25       Etiwanda Avenue,  Rancho Cucamonga, California 91739, and is a San Bernardino

26       County Detention facility who is in charge of housing inmates accused of crimes.

27   6.    Defendants DOE DEPUTIES, sued here in their official and individual capacity, are

28       residents' of California.  At all times pertinent to this action, Defendants have been

1    employed as Deputies assigned to the WEST VALLEY DETENTION CENTER, located

2    at 9500 Etiwanda Avenue, Rancho Cucamonga, California 91739;

3    7.    Defendants DOES NURSES, sued here in their official and individual capacity, are

4    residents' of California.  At all times pertinent to this action, Defendants have been

5    employed as nurses with the County of San Bernardino assigned to the WEST VALLEY

6    DETENTION CENTER, located at 9500 Etiwanda Avenue, Rancho Cucamonga,

7    California 91739;

8    8.    Defendant SHIN YIN LIONG, MD, sued here in his official and individual capacity, is a

9    medical doctor, duly licensed to practice medicine in the State of California.  At all times

10    pertinent to this action, Plaintiff is informed and believes and thereon alleges  Defendant

11    LIONG has been employed as a doctor with the County of San Bernardino assigned to

12    WEST VALLEY DETENTION CENTER, located at 9500 Etiwanda Avenue, Rancho

13    Cucamonga, California 91739.

14    9.    Defendants DOE CONTRACTORS, sued here in their official and individual capacity,

15    are residents' of California.  At all times pertinent to this action, Defendants have been

16    employed as staff with the County of San Bernardino assigned to WEST VALLEY

17    DETENTION CENTER, located at 9500 Etiwanda Avenue, Rancho Cucamonga,

18    California 91739;

19    10.    Defendant, JOHN HEARY, sued here in his official and individual capacity, is a resident

20    of California.  At all times pertinent to this action, Defendant has been employed by the

21    County of San Bernardino as Nursing Supervisor assigned to WEST VALLEY

22    DETENTION CENTER, located at 9500 Etiwanda Avenue, Rancho Cucamonga,

23    California 91739;

24    11.    Defendant BRIAN FRATT, sued here in his official and individual capacity, is a deputy

25    assigned to WEST VALLEY DETENTION CENTER, located at 9500 Etiwanda Avenue,

26    Rancho Cucamonga, California 91739;

27    12.    Defendant, SAN BERNARDINO COUNTY DISTRICT ATTORNEY'S OFFICE,

28    located at 316 Mountain View Avenue, San Bernardino, CA 92415-0023 and is in charge

Complaint                                    - 6 -

1    of prosecuting those accused of criminal activity within the county of San Bernardino.

2    13.    Defendant, JAMES R. SECORD, sued here in both his individual and official capacities,

3           is a resident of California, at all times pertinent to this action, has been employed as a

4           Deputy District Attorney, by the San Bernardino County District Attorney's Office, 316

5           Mountain View Avenue, San Bernardino CA 92415-0023,

6    14.    Defendant, V.L. HAMILTON, sued here in both his individual and official capacity, is a

7           resident of California, at all times pertinent to this action, has been employed as an

8           Investigator by the San Bernardino County District Attorney's Office located at 316

9           Mountain View Ave., San Bernardino, California 92415-0004,

10   15.    Defendant, MIKE LEIBERICH, sued here in both his individual and official capacities, is

11          a resident of California, at all times pertinent to this action, has been employed as an

12          Investigator, by the San Bernardino County District Attorney's Office located at 316

13          Mountain View Avenue, San Bernardino, CA 92415

14   16.    Defendant, MICHAEL RAMOS, sued here in his official capacity,  serves as District

15          Attorney for the San Bernardino County  District Attorney's Office located at 316

16          Mountain View Avenue, San Bernardino, CA 92415 and has primary prosecutorial

17          authority within the county of San Bernardino.   Defendant Ramos is responsible for,

18          among other things, control, supervision, operation and administration of the San

19          Bernardino County District Attorney's Office.

20   17.    Defendant, HOUTS & ASSOCIATES, at all times herein mentioned, conducted business

21          at 401 West "A" Street, Suite 1720,  San Diego, California 92101 and  is the law firm

22          which represents USA Federal Credit Union aka United States of America Federal Credit

23          Union.

24   18.    Defendant, RANDOLPH C. HOUTS,, is an attorney licensed to practice law in the State

25          of California, and at all times pertinent to this action, has been employed by Houts &

26          Associates located at 401 West "A" Street, Suite 1720,  San Diego, CA 92101, and is an

27          Attorney for USA Federal Credit Union.

28   19.    Defendant, USA FEDERAL CREDIT UNION, a.k.a. United Services of America Federal

**Complaint**                                    - 7 -

1    Credit Union, headquartered at 9999 Willow Creek Road, San Diego, California 92131

2    and is a Federal Credit Union who provide financial assistance and banking needs to

3    Active and Retired Military, The Department of Defense, Federal Civilian employees,

4    Department of Defense Contractors, U.S. Naval Surface Forces, Pacific Fleet, and other

5    Government employees.

6  19.  Defendant, MARCELLA WEVELY, sued here in both her official and individual

7    capacity, is a resident of California, at all times pertinent to this action, has been

8    employed by USA FEDERAL CREDIT UNION located at 9999 Willow Creek Road, San

9    Diego, California 92131,  as a Loan Manager.

10  20.  Defendant, MELINDA ROSAS, sued here in both her official and individual capacity, is

11    a resident of California, at all times pertinent to this action, has been employed by USA

12    FEDERAL CREDIT UNION located at 9999 Willow Creek Road, San Diego, California

13    92131  as a Collection Manager.

14  21.  Defendant, JULIE MISLEH, sued here in her official capacity, is a resident of California,

15    at all times pertinent to this action, has been employed by USA FEDERAL CREDIT

16    UNION located at 9999 Willow Creek Road, San Diego, California 92131 as a Collection

17    Manager.

18  22.  Defendant, ROB HENDERSON, sued here in both his official and individual capacity, is

19    a resident of California, at all times pertinent to this action, has been employed as a

20    Process Server.

21  20.  Defendant, JOAN BORBA, sued here in both her official and individual capacity, is a

22    resident of California, at all times pertinent to this action, has been assigned as a Judge

23    with the County of San Bernardino, San Bernardino Superior Court, Rancho Cucamonga

24    District, located at 8303 N. Haven Avenue,  Rancho Cucamonga, California 91730;

25  21.  Defendant CRAIG WYATT ZIBELL, individually and dba ALLWAYS 4U BAIL

26    BONDS, aka ALLWAYS FOR-U BAIL BONDS, is located at 7201 Haven Avenue,

27    Suite E497, Rancho Cucamonga, CA 91701 and conducts the business of writing bail

28    bonds through SENECA INSURANCE COMPANY.

22.   Defendant, ANGELO MICHAEL VERLINGO, sued here in both his official and individual capacity, at all times pertinent to this action, has been employed as a Bail Agent with ALLWAYS 4U BAIL BONDS, aka ALLWAYS FOR-U BAIL BONDS, located at 7201 Haven Avenue, Suite E497, Rancho Cucamonga, CA 91701.

23.   Defendant, BAR TRIANGLE BAIL BONDS, INC. dba BOONE'S BAIL BONDS (Hereinafter "BOONES" or BOONE'S BAIL BONDS), located at 13677 Foothill Blvd., Suite K, Fontana, California 92335 transacts and writes bail bonds on behalf of SENECA INSURANCE COMPANY, INC.

24.   Defendant, SENECA INSURANCE COMPANY, INC. (SENECA) located at 160 Water Street, 16th Floor, New York, New York 10038. SENECA INSURANCE COMPANY, INC. is a commercial property and casualty insurance company licensed in 50 states. Through independent brokers and agents SENECA provides property and liability insurance for risks classified a main street, and specialty lines including bail bonds.

25.   Defendant, JOHN MARK ALLEN, sued here in his individual capacity, is a resident of California, located at 19 Mejorana, Rancho Santa Margarita, California.

26.   At all relevant times, SECORD, LEIBERICH, and RAMOS were agents of the SAN BERNARDINO COUNTY DISTRICT ATTORNEY'S OFFICE. In committing the acts alleged herein, these defendants acted within the scope of their agency and/or employment and were acting with the consent, permission, authorization and knowledge of their other respective defendants, and perpetrated and/or conspired to or aided and abetted the unlawful acts described herein.

27.   At all relevant times, each SAN BERNARDINO COUNTY DISTRICT ATTORNEY'S OFFICE co-conspirator, was respectively an agent and/or employer of each and every other SAN BERNARDINO COUNTY DISTRICT ATTORNEY'S OFFICE co-conspirator and the respective defendants. In committing the acts alleged herein, the SAN BERNARDINO COUNTY DISTRICT ATTORNEY'S OFFICE co-conspirators acted within the scope of their respective agency and/or employment and were acting with the consent, permission, authorization and knowledge of each of the other SAN

1   BERNARDINO COUNTY DISTRICT ATTORNEY'S OFFICE co-conspirators and the

2   respective defendants respectively, and perpetrated and/or conspired to or aided and

3   abetted the unlawful acts described herein.

4   28.   All actions of the SAN BERNARDINO COUNTY DISTRICT ATTORNEY'S OFFICE

5   co-conspirators and the respective defendants alleged herein were ratified and approved

6   by the other respective SAN BERNARDINO COUNTY DISTRICT ATTORNEY'S

7   OFFICE co-conspirators and the respective defendants of their officers, directors,

8   controlling persons, agents, aiders and abetters or co-conspirators even though the overt

9   and predicate acts in furtherance of the conspiracy and aiding and abetting violations set

10  forth herein have been and are contrary to stated corporate policy and to representations

11  to Plaintiff and Plaintiff's family.

12  29.   At all relevant times, HOUTS was an agent of HOUTS & ASSOCIATES. In committing

13  the acts alleged herein, these defendants acted with the scope of their agency and/or

14  employment and were acting with the consent, permission, authorization and knowledge

15  of their other respective defendants, and perpetrated and/or conspired to or aided and

16  abetted the unlawful acts described herein.

17  30.   At all relevant times, each HOUTS & ASSOCIATES co-conspirators were respectively

18  an agent and/or employer of each and every other HOUTS & ASSOCIATES co-

19  conspirators and the respective defendants. In committing the acts alleged herein, the

20  HOUTS & ASSOCIATES co-conspirators acted within the scope of their respective

21  agency and/or employment and were acting with the consent, permission, authorization

22  and knowledge of each of the other HOUTS & ASSOCIATES co-conspirators and the

23  respective defendants respectively, and perpetrated and/or conspired to or aided and

24  abetted the unlawful acts described herein.

25  31.   All actions of the HOUTS & ASSOCIATES co-conspirators and the respective

26  defendants alleged herein were ratified and approved by the other respective HOUTS &

27  ASSOCIATES co-conspirators and the respective defendants of their officers, directors,

28  controlling persons, agents, aiders and abetters or co-conspirators even though the overt

1   and predicate acts in furtherance of the conspiracy and aiding and abetting violations set

2   forth herein have been and are contrary to stated corporate policy and to representations

3   to Plaintiff and Plaintiff's family.

4   32.   At all relevant times, MISLEH, WEVELY, and ROSAS were agents of USA FEDERAL

5   CREDIT UNION.  In committing the acts alleged herein, these defendants acted with the

6   scope of their agency and/or employment and were acting with the consent, permission,

7   authorization and knowledge of their other respective defendants, and perpetrated and/or

8   conspired to or aided and abetted the unlawful acts described herein.

9   33.   At all relevant times, each USA FEDERAL CREDIT UNION co-conspirators were

10   respectively an agent and/or employer of each and every other USA FEDERAL CREDIT

11   UNION co-conspirators and the respective defendants.  In committing the acts alleged

12   herein, the USA FEDERAL CREDIT UNION co-conspirators acted within the scope of

13   their respective agency and/or employment and were acting with the consent, permission,

14   authorization and knowledge of each of the other USA FEDERAL CREDIT UNION co-

15   conspirators and the respective defendants respectively, and perpetrated and/or conspired

16   to or aided and abetted the unlawful acts described herein.

17   34.   All actions of the USA FEDERAL CREDIT UNION  co-conspirators and the respective

18   defendants alleged herein were ratified and approved by the other respective USA

19   FEDERAL CREDIT UNION co-conspirators and the respective defendants of their

20   officers, directors, controlling persons, agents, aiders and abetters or co-conspirators even

21   though the overt and predicate acts in furtherance of the conspiracy and aiding and

22   abetting violations set forth herein have been and are contrary to stated corporate policy

23   and to representations to Plaintiff and Plaintiff's family.

24   35.   At all relevant times, ZIBELL and VERLINGO were agents of ALLWAYS FOR-U BAIL

25   BONDS, SENECA INSURANCE, and BOONES.  In committing the acts alleged herein,

26   these defendants acted with the scope of their agency and/or employment and were acting

27   with the consent, permission, authorization and knowledge of their other respective

28   defendants, and perpetrated and/or conspired to or aided and abetted the unlawful acts

Complaint          - 11 -

1    described herein.

2    36.    At all relevant times, each ALLWAYS FOR-U BAIL BONDS, SENECA INSURANCE,

3    and BOONES co-conspirators were respectively an agent and/or employer of each and

4    every other ALLWAYS FOR-U BAIL BONDS, SENECA INSURANCE, and BOONES

5    co-conspirators and the respective defendants.  In committing the acts alleged herein, the

6    ALLWAYS FOR-U BAIL BONDS, SENECA INSURANCE, and BOONES co-

7    conspirators acted within the scope of their respective agency and/or employment and

8    were acting with the consent, permission, authorization and knowledge of each of the

9    other ALLWAYS FOR-U BAIL BONDS, SENECA INSURANCE, and BOONES co-

10    conspirators and the respective defendants respectively, and perpetrated and/or conspired

11    to or aided and abetted the unlawful acts described herein.

12    37.    All actions of the ALLWAYS FOR-U BAIL BONDS, SENECA INSURANCE, and

13    BOONES  co-conspirators and the respective defendants alleged herein were ratified and

14    approved by the other respective ALLWAYS FOR-U BAIL BONDS, SENECA

15    INSURANCE, and BOONES co-conspirators and the respective defendants of their

16    officers, directors, controlling persons, agents, aiders and abetters or co-conspirators even

17    though the overt and predicate acts in furtherance of the conspiracy and aiding and

18    abetting violations set forth herein have been and are contrary to stated corporate policy

19    and to representations to Plaintiff and Plaintiff's family.

20    38.    At all relevant times, PENROD, DOE DEPUTIES, DOE CONTRACTORS, DOE

21    DOCTORS, DOE NURSES, HEARY, LIONG and FRATT were agents of the SAN

22    BERNARDINO COUNTY SHERIFF'S DEPARTMENT, assigned to WEST VALLEY

23    DETENTION CENTER.  In committing the acts alleged herein, these defendants acted

24    within the scope of their agency and/or employment and were acting with the consent,

25    permission, authorization and knowledge of their other respective defendants, and

26    perpetrated and/or conspired to or aided and abetted the unlawful acts described herein.

27    39.    At all relevant times, each SAN BERNARDINO COUNTY SHERIFF'S

28    DEPARTMENT, co-conspirators were respectively an agent and/or employer of each and

**Complaint**                                    - 12 -

1    every other SAN BERNARDINO COUNTY SHERIFF'S DEPARTMENT co-

2    conspirators and the respective defendants.  In committing the acts alleged herein, the

3    SAN BERNARDINO COUNTY SHERIFF'S DEPARTMENT co-conspirators acted

4    within the scope of their respective agency and/or employment and were acting with the

5    consent, permission, authorization and knowledge of each of the other SAN

6    BERNARDINO COUNTY SHERIFF'S DEPARTMENT co-conspirators and the

7    respective defendants respectively, and perpetrated and/or conspired to or aided and

8    abetted the unlawful acts described herein.

9    40.    All actions of the SAN BERNARDINO COUNTY SHERIFF'S DEPARTMENT co-

10    conspirators and the respective defendants alleged herein were ratified and approved by

11    the other respective SAN BERNARDINO COUNTY SHERIFF'S DEPARTMENT co-

12    conspirators and the respective defendants of their officers, directors, controlling persons,

13    agents, aiders and abetters or co-conspirators even though the overt and predicate acts in

14    furtherance of the conspiracy and aiding and abetting violations set forth herein have been

15    and are contrary to stated corporate policy and to representations to Plaintiff and

16    Plaintiff's family.

17    41.    ALLEN, WEVELY, MISLEH, ROSAS, HENDERSON, HAMILTON, LEIBERICH,

18    SECORD, BORBA, ZIBELL, ALLEN, VERLINGO, HEARY, RAMOS, PENROD,

19    VERLINGO, and ZIBELL are a group of individuals associated in fact, although not a

20    legal entity, who have a common and shared purpose.  The Rico Act defines an enterprise

21    as "any individual, partnership, corporation, association, or other legal entity, and any

22    union or group of individuals associated in fact although not a legal entity".

23    42.    At all relevant times, each Enterprise and/or Legal Entity co-conspirators were

24    respectively an agent and/or employer of each and every other Entity and/or Enterprise

25    co-conspirators and the respective defendants.  In committing the acts alleged herein, the

26    Enterprise and/or Legal Entity co-conspirators acted within the scope of their agency

27    and/or employment and were acting with the consent, permission, authorization and

28    knowledge of each of the other Enterprise and/or Legal Entity co-conspirators and

Complaint                              - 13 -

1   defendants respectively, and perpetrated and/or conspired to or aided and abetted the

2   unlawful acts described herein.

3   43.   All actions of the Enterprise and/or Legal Entity co-conspirators and the respective

4   defendants alleged herein were ratified and approved by the other respective Enterprise

5   and/or Legal Entity co-conspirators and the respective defendants or their officers,

6   directors, controlling persons, agents, aiders and abetters or co-conspirators even though

7   the overt and predicate acts in furtherance of the conspiracy and aiding and abetting

8   valuations set forth herein have been and are contrary to stated corporate policy and to

9   representations to the Plaintiff.

10  44.   The true names and capacities of Defendants herein sued by the fictitious names as DOES

11  1 to 10, Inclusive, are unknown to Plaintiff, who therefore sues those Defendants under,

12  pursuant to, and in accordance with the provisions of Section 474 of the California Code

13  of Civil Procedure.  Plaintiff will ask leave of court to amend this complaint as and when

14  the true names and capacities of Defendants named herein as DOES 1 to 10 have been

15  ascertained.

16  45.   At all times herein mentioned, Defendants named herein as DOES 1 to 10, and each of

17  them, were the agents, servants and employees of each other and every remaining

18  Defendant, and in doing the things alleged, were active in the course and scope of said

19  authority of such agents, servants, and employees.

20

21  **JURISDICTION AND VENUE**

22  46.   This Court has jurisdiction over the subject matter of this action pursuant to 18 U.S.C. §§

23  1961, 1962, 1964 and 28 U.S.C. §§ 1331 and 1337. The Court has personal jurisdiction

24  over the defendants pursuant to 18 U.S.C. §§ 1965(b) and (d).

25  47.   Venue is appropriate in the Central District of California pursuant to 18 U.S. C.

26  §§1965(a) and (d) because a substantial portion of events giving rise to this action

27  occurred in the Central District and because all defendants are found, have an agent,

28  and/or transacts affairs within the Central District.

**Complaint**                          - 14 -

1    48.    Subject matter jurisdiction of this action exists under 28 U.S.C. §1331. The claims stated

2            herein involved federal questions arising under the Constitution of the United States, U.S.

3            Constitution Amendment I, Amendment XIV, §1.  Furthermore, this is an action to

4            redress the deprivation under color of law of the State of California of a right secured by

5            the First and Fourteenth Amendments to the Constitution of the United States.

6            Jurisdiction is conferred on this court by 28 U.S.C. §1343.

7    49.    Venue is appropriate in the Central District of California pursuant to 28 U.S.C.  §1391(b)

8            because a substantial portion of events giving rise to this action occurred in the

9            Central District and because the defendants are found, has an agent, and/or transacts

10           affairs within the Central District.

11

12   **PLAINTIFF DEMANDS FOR FULL DISCLOSURE PER TITLE 28 U.S.C. RULE 26**

13   50.    Plaintiff demands all defendants fully disclose the following without delay, obstruction or

14           "gamesmanship"

15           (a)    Copy of their Oaths of Office

16           (b)    Copy of their bond

17           (c)    Copy of their Insurance

18           (d)    Copy of their State Licenses

19           (e)    Copies of Appearance bonds on each Case

20           (f)    Copy of a list of all their Creditors

21           (g)    Copy of a list of all their Debtors

22           (h)    Copies of all financial transactions

23           (I)    Membership of all clubs, organizations, fraternities, and groups

24           (j)    Treaties per limitations of the Constitution

25           (k)    Names, addresses, and phone numbers of all their witnesses

26           (l)    Names, addresses, and phone numbers of any other entities pertinent to this case

27           (m)    Copies of phone records pertaining to defendants home phones, cell phones,

28                  business phones and any other phone lines defendants have access to from May 1,

Complaint                                    - 15 -

1            2001 to current.

2       (n)     Copies of all defendants personnel files;

3       (o)     Copies of all bank statements pertaining to all types of banking and brokerage

4            accounts from January 1, 2001 to current.

5       (p)     Copies of any other papers  pertinent to this case.

6

7                 **SUMMARY OF FACTUAL AND LEGAL ALLEGATIONS**

8   51.     The following factual and legal allegations are based upon knowledge, information and

9         belief.

10   52.     This is a claim for which relief can be granted pursuant to Title IX of the Organized

11         Crime Control Act of 1970, Public Law 91-452, 84 Stat. 922, commonly known and

12         referred to as RICO  (Racketeer Influenced Corrupt Organization Act), codified at 18

13         U.S.C. § 1961, et seq., and in particular for violation of 18 U.S.C. § 1962. The Plaintiff

14         also seeks declaratory and injunctive relief and monetary damages as restitution as well as

15         treble damages to the Plaintiff for the Defendants' violation as alleged herein pursuant to

16         18 U.S.C. § 1964©)).

17   53.     This claim asserts violations of 5 U.S.C. §552 against Defendants SECORD, HOUTS,

18         HOUTS & ASSOCIATES, and SAN BERNARDINO COUNTY DISTRICT

19         ATTORNEY'S' OFFICE  by giving access to Plaintiff's confidential home loan

20         Application  and distributing this confidential information contained in the paternity suit

21         to unauthorized parties to aid in at least one civil lawsuit against Plaintiff.  In Addition,

22         SECORD gave copies of Plaintiff's home loan Application to HOUTS to aid him in a

23         civil judgment against Plaintiff.  Plaintiff was never given the opportunity to be heard, or

24         notice of the documentation being sought.  .Defendants' reviewed, used in court

25         proceedings, shared with each other, Plaintiff's confidential home loan application

26         information which SECORD used in the criminal proceedings against Plaintiff. Violation

27         of this United States Code shall be guilty of a misdemeanor and fined under this title  not

28         more than $5,000.00.

54. This claim asserts violations of 18 U.S.C. §373, Solicitation to commit a crime of violence, wherein, Plaintiff is informed and believes and thereon alleges  SECORD advised other Defendants  Plaintiff did not have any medical conditions,  Plaintiff lied about everything and could not be trusted.  Plaintiff is informed, believes and thereon alleges SECORD further solicited, commanded, induced and endeavored the other Defendants not to give court ordered  medical attention, not to give court ordered medications, took Plaintiff's insulin pump away from her in violation of court orders which endangered Plaintiff's health.  As a result, Plaintiff suffered Diabetic Ketoacidosis (DKA) and another heart attack which damaged her bypassed area of her heart.  SECORD asked for favors from the other Defendants to make it hard and difficult on Plaintiff, with malice and out of retaliation.  SECORD conspired with ALLEN and gave confidential information about Plaintiff to ALLEN so ALLEN would be able to continue his stalking and harassing of Plaintiff and Plaintiff's minor son.  SECORD was aware Plaintiff and Plaintiff's minor son were victims of ALLEN's crimes for which ALLEN was convicted. Violations of this United States Code shall be imprisoned not more than one-half the maximum term of imprisonment or (notwithstanding section 3571) fined not more than one-half of the maximum fine prescribed for the punishment of the crime solicited, or both; or if the crime solicited is punishable by life imprisonment or death, shall be imprisoned for not more than twenty years.

55. This claim asserts violations of 18 U.S.C. §892, Extortionate Credit Transactions, wherein USA FEDERAL CREDIT UNION, WEVELY, ROSAS, and MISLEH, conspired to make extortionate extension of credit in Plaintiff's name in excess of $100.00.  Violations of this United States Code shall be fined under this title or imprisoned not more than 20 years, or both.

56. This claim asserts violations of 18 U.S.C. §894, Collection of extensions of credit by extortionate means, wherein all Defendants conspired to use extortionate means to collect debts Plaintiff was unaware of.  Defendants conspired with the Courts to bring civil and criminal proceedings against Plaintiff and falsified testimony in attempts to win

**Complaint**                                    - 17 -

their legal claims against Plaintiff.  With this, USA FEDERAL CREDIT UNION, HOUTS, HOUTS & ASSOCIATES, MISLEH, ROSAS, and WEVELY obtained money by obtaining payments on the loans, repossessing vehicles and selling them, obtaining a default judgment for monies, and participating in a criminal action against Plaintiff, wherein if Plaintiff is convicted she would be required to pay the entire loan balances.

57.    This claim asserts violations of 18 U.S.C. §1021, Title Records, wherein, SECORD, SAN BERNARDINO COUNTY DISTRICT ATTORNEY'S OFFICE, ROSAS, MISLEH, WEVELY, HOUTS, HOUTS & ASSOCIATES, USA FEDERAL CREDIT UNION supplied false testimony regarding the title issued on a 2001 Chevrolet Camaro stating the Title to this vehicle had been forged and  the Credit Union never released the title in the name of Plaintiff.  Plaintiff did not reside in the State of California on the supposed dates of these crimes and would not have had availability to the title held by USA FEDERAL CREDIT UNION securing a note or loan for the 2001 Chevrolet Camero.  Violations under this United States Code shall be fined under this title or imprisoned not more than five years, or both.

58.    This claim asserts violations of 18 U.S.C. §1512(2)(B) Tampering with a Witness, Victim, or an informant, wherein Defendants caused and induced other Defendants to withhold testimony, give false testimony under the penalty of perjury and  concealed the information by sealing the civil file.  Defendants summoned HOUTS, HOUTS & ASSOCIATES, WEVELY, and ROSAS to appear before the judge in the official criminal proceedings to testify against Plaintiff and give false testimony.  Defendants further concealed the records in the civil file so the documents would be unavailable for Plaintiff to defend herself against the civil action and to be unable use in her official criminal proceedings to show  the testimony given against her was falsified.  Defendants conspired together sought and instituted a criminal prosecution to take place against Plaintiff, knowing the testimony given was false.  Defendants aided,  abetted and assisted in the prosecution against Plaintiff and assisted in the Defendants civil proceedings in order to obtain a default judgment against Plaintiff.  Defendants further suppressed

1    evidence, which would clear Plaintiff of criminal activity.

2    59.    This claim asserts violations of 18 U.S.C. §2340A, Torture, wherein Defendants placed

3    Plaintiff in Solitary Confinement, once brought to WEST VALLEY DETENTION

4    CENTER, in the Mens section of the Detention facility, with no working medical

5    intercom, refused to allow Plaintiff to shower while kept in solitary confinement, refused

6    Plaintiff medical attention when she was having chest pains which went down her left

7    arm and up to her left jaw.  Defendants refused to give Plaintiff her heart medications,

8    and refused Plaintiff immediate medical attention.  Defendants refused to allow Plaintiff

9    to see or speak with her attorney when she was brought to WEST VALLEY

10    DETENTION CENTER.  Defendants further only allowed Plaintiff 4 hours of day room

11    time the entire time Plaintiff was locked in solitary confinement (14 days).  Further,

12    Defendants violated every court order issued to insure proper medical attention and

13    medications to protect the life of Plaintiff.  Defendants used all of these tactics attempting

14    to harass, intimidate and endanger the health and safety of Plaintiff, at the request of and

15    as a favor to SECORD and the SAN BERNARDINO COUNTY DISTRICT

16    ATTORNEY'S OFFICE  All Defendants conspired in order to carry out their mission to

17    harass, intimidate and endanger Plaintiff's health.  Violations of this United States Code

18    shall be fined under this title or imprisoned not more than 20 years, or both.  A person

19    who conspires to commit an offense under this section shall be subject to the same

20    penalties (other than the penalty of death) as the penalties prescribed for the offense, the

21    commission of which was the object of the conspiracy.

22    60.    This claim asserts violations of 18 U.S.C. §2, wherein Defendants conspired, induced and

23    procured their commission of prohibited activities (counseled, commanded, or directly

24    preformed by them, aid and abetted), which are in violation of 18 U.S.C. §1962(c)(d) by

25    extorting money from Plaintiff and Plaintiff's family, engaging in monetary transactions

26    in property derived from specified unlawful activity, interstate and foreign travel in aid of

27    racketeering enterprises, in going to New Mexico to commit the extortionate acts.

28    Plaintiff further asserts mail and wire fraud by Defendants in furtherance of their

**Complaint**                                    - 19 -

1    unlawful activities.

2    61.    This claim asserts violations of 18 U.S.C. §4, Misprision of Felony, wherein Defendants

3    were aware of the laws being broken and refused to report and/or prosecute the actions of

4    other Defendant and instead concealed the crimes as favors to obtain their goals against

5    Plaintiff.

6    62.    This claim asserts violations of 18 U.S.C. §§241 and 242, Conspiracy against Rights, and

7    deprivation of rights wherein Defendants conspired to injure, oppress and intimidate

8    Plaintiff and deprive her of rights and/or privileges secured to her by the Constitution and

9    laws of the United States, and/or because of her having so exercised the same.  Violations

10    of this United States code shall be fined under this title or imprisoned not more than ten

11    years, or both.

12    63.    This claim asserts violations of 18 U.S.C. §1341, Mail Fraud, Frauds and Swindles,

13    wherein Defendants sent a letter to United States Congressman Tom Udall, stating

14    Plaintiff was in the medical unit of the Detention Center, receiving proper medical

15    attention and all her medications.  Defendants knew this letter contained false

16    information.  USA FEDERAL CREDIT UNION, HOUTS, HOUTS & ASSOCIATES,

17    ROSAS, WEVELY, and MISLEH placed documents, which they knew were to be false,

18    and spurious articles, in order to obtain money and/or property from Plaintiff,  in the mail

19    addressed to Defendant SANCHEZ, and other Defendants. Violations of this United

20    States Code shall be fined under this title or imprisonment for not more than 20 years or

21    both.

22    64.    This claim asserts violations of 18 U.S.C. §1343, Wire Fraud, wherein USA FEDERAL

23    CREDIT UNION, ROSAS, MISLEH, HOUTS & ASSOCIATES, SECORD, SAN

24    BERNARDINO COUNTY DISTRICT ATTORNEY'S OFFICE, SANCHEZ and

25    HOUTS submitted false representations, by facsimile to each other and other Defendants,

26    in attempts to obtain money and property from Plaintiff.   ALLEN sent by facsimile to

27    Officer Rudy Gallegos at or about the end of May 2004, letter stating Plaintiff had a

28    fugitive felony warrant for her arrest for crimes she committed in California.  The warrant

1    ALLEN was referring to had not been issued until June 30, 2004 and was obtained by

2    SECORD.  The only way ALLEN could have obtained the information a warrant was

3    being sought against Plaintiff, is if SECORD told him.

4  65.    This claim asserts 18 U.S.C. §1346, Definition of "scheme or artifice to defraud," for the

5    purposes of this chapter, the term "scheme or artifice to defraud" includes a scheme or

6    artifice to deprive another of the intangible right of honest services.

7  66.    This claim asserts violations of 18 U.S.C. §1505, Obstructions of proceedings before

8    departments, agencies and committees, wherein Defendants solicited each other to insure

9    they made misrepresentations, falsified oral testimony, concealed information, including

10    but not limited to, the refusal to give Plaintiff her heart medications, concealed

11    information by sealing the civil case pertaining to USA FEDERAL CREDIT UNION to

12    cover up the declarations filed in this civil case, knowing and conspiring in order that

13    Plaintiff would be refused access to see the testimony in the criminal case did not match

14    the testimony given in the civil case. and to make it as hard on Plaintiff as possible.

15    Plaintiff is informed and believes and thereon alleges  SECORD refuses to turn over

16    information which could exonerate Plaintiff of many of the alleged crimes of which she

17    has been accused.   SECORD made false statements to the jail's personnel; SECORD

18    conspiring with other defendants regarding the testimony they should give in various

19    proceedings, knowing the testimony to be false; and SECORD conspired with other

20    Defendants in refusing to obey court orders.   SECORD supplied ALLEN a list of

21    witnesses from the criminal matter pending against Plaintiff, so ALLEN could use them

22    in the Paternity Action to obtain custody of Plaintiff's minor son, who is a victim of

23    crimes ALLEN was convicted of.   Defendants influenced, obstructed, impeded and

24    endeavor to influence, obstruct and impede the due and proper administration of the

25    department or agency of the United States.   Defendants further covered up the wrong

26    doings of each other so they would be able to carry out their crimes against Plaintiff.

27    Violations of this United States Code shall be fined under this title or imprisoned not

28    more than five years, or both

67. This claim asserts violations of 18 U.S.C. §1621, Perjury, wherein all Defendants misstated facts to the courts, in declarations under penalty of perjury and deceived the courts to believe false information, which included Plaintiff was receiving medical attention, Plaintiff was receiving all heart medications, and Plaintiff was fine.  Defendants were well aware the information provided was false.  Violations of this United States Code shall be fined under this title or imprisoned not more than five years, or both.

68. This claim asserts violations of 18 U.S.C. §1622, Subornation of Perjury, Defendants, SECORD, and HEARY conspired to have other defendants testify untruthfully, as favors, in order to obtain the end results which best fit them. SECORD, HAMILTON, MORRISON, LEIBERICH, and HOUTS, conspired to have other Defendants, WEVELY, ROSAS, HOUTS, and HENDERSON testify untruthfully, as favors, in order to obtain the end results which best fit them.  Violations of this United States Code shall be fined under this title or imprisoned not more than five years, or both.

69. This claim asserts violations of 18 U.S.C. §1623, False Declarations before Grand Jury or Court, wherein all defendants supplied declarations and documents which contained untruthful information, knowing the information was false,  to the San Bernardino Superior Court, Rancho Cucamonga District. Violations of this United States Code shall be fined under this title or imprisoned not more than five years, or both.

70. This claim asserts violations of 18 U.S.C. §1951 Extortion, wherein ZIBELL and VERLINGO went to Santa Fe, NM in or about May 2004 and contacted Plaintiff's family.  ZIBELL and VERLINGO were aware Plaintiff had just undergone open heart surgery with complications.   Out of fear, Plaintiff's family, on behalf of Plaintiff paid the $25,000.00 to Defendants, for which Plaintiff became indebted to them.  Defendants obtained the money from Plaintiff which was induced by wrongful use of fear.

71. The claim asserts violations of 18 U.S.C. §1952, Interstate and Foreign Travel or Transportation in Aid of Racketeering Enterprises, wherein ZIBELL and VERLINGO traveled from California to Santa Fe, New Mexico and extorted money in the amount of $25,000.00 from Plaintiff, Plaintiff is informed, believes and thereon alleges SECORD

1    was aware of ZIBELL and VERLINGO'S actions.   Violations of this United States Code,

2    paragraph (1) or (3) shall be fined under this title, imprisoned not more than five years, or

3    both; or an act described in paragraph (2) shall be fined under this title, imprisoned for

4    not more than 20 years, or both, and if death results shall be imprisoned for any term of

5    years or for life.

6   72.    This claim asserts violations of 18 U.S.C. §1956, Laundering of Monetary Instruments,

7       wherein, SECORD, SAN BERNARDINO COUNTY DISTRICT ATTORNEY'S

8       OFFICE, WEVELY, MISLEH, ROSAS, USA FEDERAL CREDIT UNION, HOUTS,

9       HOUTS & ASSOCIATES conspired and are attempting to convict Plaintiff of crimes, if

10      successful, Plaintiff would be required to pay back the entire amount of all loans.

11      Defendants were paid for one of the vehicles in question, repossessed and resold the other

12      two vehicles, and obtained a $20,0000.00 payment, according to a declaration,  on a

13      credit card wherein only $15,000.00 was owed.  In addition HOUTS, HOUTS &

14      ASSOCIATES, USA FEDERAL CREDIT UNION, WEVELY, MISLEH, and ROSAS

15      filed a lawsuit against Plaintiff, obtained a default judgment, and are attempting to collect

16      the monies on this judgment from Plaintiff.  USA FEDERAL CREDIT UNION, which is

17      a financial institution, is attempting to collect three times the amount of these supposed

18      loans. Defendants are aware  their allegations are untrue and have continued to provide

19      false documents and statements in attempts to illegally obtain money from Plaintiff. ,

20      USA FEDERAL CREDIT UNION, WEVELY, ROSAS, MISLEH, SECORD, HOUTS,

21      AND SABET, are aware  USA FEDERAL CREDIT UNION had possession and monies

22      for the vehicle and credit card involved in their accusations during the entire time of all

23      court actions. Violations of this United States Code shall be fined not more than

24      $500,000.00 or twice the value of the property involved in the transaction, whichever is

25      greater, or imprisonment for not more than twenty years, or both.

26   73.    This claim asserts violations of 18 U.S.C. §1957 Engaging in Monetary Transactions in

27      Property Derived from Specified Unlawful Activity, wherein ZIBELL and VERLINGO

28      traveled to New Mexico and extorted $25,000.00 from Plaintiff and Plaintiff's family.

**Complaint**               - 23 -

Plaintiff is informed, believes and thereon alleges SECORD was aware of ZIBELL and VERLINGO'S actions. SECORD, ZIBELL and VERLINGO conspired together and had Plaintiff's bail revoked and exonerated, after she was defrauded out of $25,000.00 for the premium by extortionate means. USA FEDERAL CREDIT UNION, WEVELY, ROSAS, and MISLEH conspired, wired funds for these supposed vehicle loans and credit card, sold two of the vehicles, received money for these two sold vehicles, received money for the third vehicle, and obtained a default judgment, has been attempting collection of this judgment and requested criminal charges, against Plaintiff, which if convicted, they would again receive the entire amount of the loans for these vehicles to be paid again, which is in excess of $10,000.00. Violations of this United States Code shall be fined under Title 19, United States Code, or imprisonment for not more than ten years or both. The Court may impose an alternate fine to that imposable under paragraph (1) of not more than twice the amount of the criminally derived property involved in the transaction.

74. This claim asserts violations of the Racketeering Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §1962, Racketeering and Corrupt Organizations, prohibited Activities, wherein Defendants conspired with each other to commit unlawful crimes against Plaintiff. Defendants' received favors from a pattern of racketeering activity through the collection of unlawful debts. All defendants' gained from their criminal activity. Violations of this United States Code pursuant to 18 U.S.C. §1963, shall be fined under this title or imprisonment for not more than 20 years, or for life if the violation is based on a racketeering activity for which the maximum penalty includes life imprisonment.

75. This claim asserts violations of 42 U.S.C. §1983, Civil Rights, Civil Action for Deprivation of Rights, wherein all Defendants subjected Plaintiff to the deprivation of rights, immunity and privileges secured by the Constitution and laws. Violations of this United States Code shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except in any action brought against a judicial officer

1    for an act or omission taken in such officer's judicial capacity, injunctive relief shall not

2    be granted unless a declaratory decree was violated or declaratory relief was unavailable.

3    76.    This claim asserts violations of 42 U.S.C. §1985, Civil Rights, Conspiracy to Interfere

4    with Civil Rights, wherein all Defendants conspired,  with each other to deprive Plaintiff

5    of equal protection of the laws, equal privileges and immunities under the laws and

6    hindering and preventing the constituted authorities from giving or securing to Plaintiff

7    the equal protection of the laws.  In any case of conspiracy, whereby another is  injured in

8    his person and deprived of having and exercising rights and privileges of a citizen of the

9    United States, the party so injured or deprived may have an action for the recovery of

10    damages occasioned by each injury or deprivation, against any one of more of the

11    conspirators.

12    77.    This claim asserts violations of 42 U.S.C. §1986, Civil Rights, Action for Neglect  to

13    prevent, wherein all Defendants' had knowledge the wrongs conspired to be done, and

14    mentioned in section 1985 of this title were about to be committed, and having power to

15    prevent or aid in preventing the commission of the same, neglects or refuses to take

16    proper action, shall be liable to the party injured, or his legal representatives for all

17    damages caused by such wrongful acts, which such people by reasonable diligence could

18    have prevented, and such damage may be recovered in an action on the case; and any

19    number of persons guilty of such wrongful neglect or refusal may be joined as defendants

20    in the action.

21    78.    This claim asserts violations of the U.S. Constitution, Fourteenth Amendment, Section 1,

22    wherein, Defendants enforced their own laws which abridged the privileges and/or

23    immunities of citizens of the United States.  Defendants' further deprived Plaintiff of

24    liberty, property, and almost life without the process of the law and also denied Plaintiff

25    of equal protections of the laws.

26    79.    This claim asserts violations of the U.S. Constitution, Eighth Amendment, Cruel and

27    Unusual Punishment and Excessive Bail, wherein Defendants' locked Plaintiff in solitary

28    confinement once arrested, with a non working medical emergency intercom, locked

1    Plaintiff in the mens unit where Plaintiff could not even take a shower, refused medical

2    attention when Plaintiff asked for help, refused to give heart medications, refused to

3    follow court orders, took Plaintiff's insulin pump away from her, against court order,

4    refused Plaintiff her right to speak to her attorney.

5    80.   This claim asserts violations of California *Penal Code* Section 182(A), Conspiracy to

6    Commit a Crime, wherein Defendants conspired, among other things and actions herein

7    stated, to commit the crime of Extortion, Falsely and maliciously to indict Plaintiff and to

8    procure Plaintiff to be charged and arrested for a crime, obtained money by false

9    pretenses and false promises with fraudulent intent not to perform the duties and/or

10   promises.

11   81.   This claim asserts violations of California *Penal Code* Section's 851.5(1)(b), 851.5(c),

12   851.5(d), and 851.5(e),  wherein Defendants listened and recorded Plaintiff's

13   conversations with her attorney's while she was incarcerated at WEST VALLEY

14   DETENTION CENTER.  Plaintiff was not read and/or explained her Miranda Rights, and

15   was refused to contact and/or see her attorney's on several occasions.  California *Penal*

16   *Code* §851.5(e) states, Any public officer or employee who willfully deprives an arrested

17   person of any right granted by this section is guilty of a misdemeanor.

18   82.   California *Government Code* Section 844.6(d) states nothing in this section exonerates a

19   public employee from liability for injury proximately caused by his negligent or wrongful

20   act or omission.

21   83.   California *Government Code* Section 815.2(a) states in part, A public entity is liable for

22   injury proximately caused by an act or omission of an employee of the public entity

23   within the scope of his employment if the act or omission would, apart from this section

24   have given rise to a cause of action against that employee or his personal representative.

25   84.   California *Government Code* Section 815.4 states, A public entity is liable for injury

26   proximately caused by a tortuous act or omission of an independent contractor of the

27   public entity to the same extent the public entity would be subject to such liability if it

28   were a private person.

85.  California *Government Code* Section 845.6 states in part, A public employee, and the public entity where the employee is acting within the scope of his employment, is liable if the employee knows or has reason to know the prisoner is in need of immediate medical care and he fails to take reasonable action to summon such medical care.

86.  This claim asserts violations of California *Code of Civil Procedure* §1209(5), wherein defendants' maliciously disobeyed court orders regarding the health and safety of Plaintiff, which caused damage to Plaintiff's heart.

87.  This claim asserts violations of the California *Penal Code* §§137(a)and 137©), Falsifying Evidence, and bribing, influencing, intimidating or threatening witnesses, wherein Defendants conspired together offering favors to each other to give false testimony in the criminal matter against Plaintiff.  Defendants' gave false testimony, withheld true material information and concealed true documentation.  Persons who violate this California *Penal Code* are guilty of a felony.

88.  This claim asserts violations of the California *Penal Code* §138(b),  Falsifying Evidence, and bribing, influencing, intimidating or threatening witnesses, wherein SECORD through the SAN BERNARDINO COUNTY DISTRICT ATTORNEY'S OFFICE and MORRISON through the SAN BERNARDINO COUNTY SHERIFF'S DEPARTMENT offered favors and help to USA FEDERAL CREDIT UNION, WEVELY, ROSAS, and HOUTS in obtaining and collecting a Civil Default Judgment against Plaintiff for their falsified testimony in the criminal matter against Plaintiff.  HOUTS, WEVELY AND ROSAS through USA FEDERAL CREDIT UNION testified falsely in the Preliminary hearing against Plaintiff.  Persons who violate this California Penal Code is guilty of a felony.

89.  This claim asserts violations of the California *Penal Code* §141(b) Falsifying Evidence, and bribing, influencing, intimidating or threatening witnesses, wherein law enforcement officials, MORRISON , through THE SAN BERNARDINO COUNTY SHERIFF'S DEPARTMENT,  LEIBERICH, and SECORD through the SAN BERNARDINO COUNTY DISTRICT ATTORNEY'S OFFICE willfully and intentionally concealed the

civil file pertaining to USA FEDERAL CREDIT UNION v. LIBER, et. al., with the specific intent to have Plaintiff charged with criminal crimes, and with the intent to produce falsified evidence and testimony.  Defendants successfully succeeded in their conspiracy and intentions, Plaintiff was brought up on criminal charges.  Law enforcement personnel who violate this California Penal Code is guilty of a felony and punishable by two, three, or five years in the state prison.

90.    This claim asserts violations of the California *Penal Code* §4002(a).  This California Penal Code states Persons committed on criminal process and detained for trial, persons convicted and under sentence, and persons committed upon civil process, shall not be kept or put in the same room, nor shall male and female prisoners, except husband and wife, sleep, dress or undress, bathe, or perform bodily functions in the same room.

91.    This claim asserts violations of the California *Civil Code* §43.  This California Code states, Besides the personal rights mentioned or recognized in the Government Code, every person has, subject to the qualifications and restrictions provided by law, the right of protection from bodily restraint or harm from personal insults, from defamation, and from injury to his personal relations.

92.    This claim asserts violations of the California *Civil Code* §§ 46 Slander, wherein SECORD made false and inflammatory statements regarding Plaintiff.

93.    This claim asserts violations of the California *Civil Code* § 52.1(a) which states, If a person or persons, whether or not acting under color of law, interfere by threats, intimidation, or coercion, or attempts to interfere by threats, intimidation, or coercion, with the exercise or enjoyment by any individual or individuals of rights secured by the Constitution or laws of the United States, or the Constitution or laws of this state, the Attorney General, or any district attorney, or city attorney may bring a civil action for injunctive relief and other appropriate equitable relief in the name of the people of the State of California, in order to protect the peaceable exercise or enjoyment of the rights or the rights secured.  An action brought by the Attorney General, any district attorney or any city attorney may also seek a civil penalty of twenty-five thousand dollars

1  ($25,000.00).  If this civil penalty is requested, it shall be assessed individually against

2  each person who is determined to have violated this section and the penalty shall be

3  awarded to each individual whose rights under this section are determined to have been

4  violated.

5  94.  This claim asserts violations of the California *Civil Code* §52.1(b) which states, Any

6  individual whose exercise or enjoyment of rights secured by the Constitution or laws of

7  the United States, or of rights secured by the Constitution or laws of this State, has been

8  interfered with, or attempted to be interfered with, as described in subdivision (a), may

9  institute and prosecute in his or her own name and on his or her own behalf a civil action

10  for damages, including, but not limited to, damages under Section 52, injunctive relief,

11  and other appropriate equitable relief to protect the peaceable exercise or enjoyment of

12  the right or rights.

13  95.  This claim asserts violations of the California Penal Code §§ 118 et seq. Perjury, wherein

14  defendants made false statements under the penalty of perjury on the stand within the

15  court and in declarations filed in the courts.  Pursuant to California Penal Code §126,

16  Perjury is punishable by imprisonment in the state prison for two, three or four years.

17  96.  This claim asserts violations of the California Penal Code §127, Subornation fo Perjury,

18  wherein Defendants conspired and instructed other defendants to give false testimony,

19  knowing the testimony to be false, during the criminal court hearings of Plaintiff.

20  97.  Pursuant to the California Penal Code §128, Every person who, by willful perjury or

21  subornation of perjury procures the conviction and execution of any innocent person, is

22  punishable by death or life imprisonment without a possibility of parole.  The penalty

23  shall be determined pursuant to Sections 190.3 and 190.4

24  98.  This claim asserts violations of the California Penal Code §236 and §237(a), False

25  Imprisonment, wherein SECORD placed a second warrant for Plaintiff's arrest

26  unnecessarily on similar if not the same charges for which she was appearing and had her

27  confined unnecessarily.   These California Penal codes state if the False Imprisonment

28  was affected by violence, menace, fraud or deceit, it shall be punishable by imprisonment

Complaint                                              - 29 -

1    in the State Prison.

2    99.   This claim asserts violations of the California Business and Professions Code §6068,

3          wherein SECORD and HOUTS are required to support the constitution and laws of the

4          United States.  Further, SECORD and HOUTS are not to advance any fact prejudicial to

5          the honor or reputation of a party or witness.

6    100.  This claim asserts violations of the California Business and Professions Code §6128,

7          wherein SECORD and HOUTS used deceit, collusion, and consented to deceit and

8          collusion with the intent to deceive the court and other parties.  Parties who violate  this

9          code are guilty of a misdemeanor.

10   101.  This claim asserts violations of the California Business and Professions Code §6106,

11         wherein SECORD and HOUTS commenced acts involving moral turpitude, dishonesty

12         and corruption.

13   102.  This claim asserts violations of The Rules of Professional Conduct, Pursuant to the State

14         Bar of California,  Rule 5-200 Trial Conduct, wherein SECORD and HOUTS sought out

15         and mislead the judges and judicial officers giving false statements and fact of law.

16         SECORD and HOUTS also asserted personal knowledge of the facts at issue without

17         testifying as a witness.

18   103.  This claim asserts violations of The Rules of Professional Conduct, Rule 5-220

19         Suppression of evidence, wherein Plaintiff is informed and believes and thereon alleges

20         SECORD suppressed the facts regarding the criminal case against Plaintiff to obtain a

21         new arrest warrant. Plaintiff is also informed and believes and thereon alleges   SECORD

22         and HOUTS further suppressed information which could exonerate Plaintiff in the

23         criminal matter and information pertinent to the civil matters.

24   104.  This claim asserts violations of The California Code of Judicial Ethics, Division II,

25         CANON 1, wherein BORBA committed acts which do not uphold the integrity and

26         independence of the judiciary. BORBA'S actions, rulings, statements, and behaviors have

27         been extremely biased towards Plaintiff.  The basic function of an independent and

28         honorable judiciary is to maintain the utmost integrity in decision making, and this Code

Complaint                                    - 30 -

shall be read and interpreted with that function in mind. Judges' are supposed to be unbiased, fair and impartial.

105.  This claim asserts violations of The California Code of Judicial Ethics, Division II, CANON 2, A Judge shall avoid impropriety and the appearance of impropriety in all of the Judges Activities. BORBA considered inappropriate personal situations in order to keep Plaintiff incarcerated, as well as granting favors to SECORD, even though BORBA had been made aware of Plaintiff precarious health situation by certified medical personnel.

106.  This claim asserts violations of The California Code of Judicial Ethics, Division II, CANON 3, A Judge shall perform the duties of judicial office impartially and diligently. BORBA, knowing Plaintiff was making her court appearances, denied every motion of Plaintiffs in order to keep her incarcerated, as a favor the SECORD.

107.  This claim asserts Breach of Contract against Defendants SENECA, BOONE'S BAIL BONDS, ZIBELL and VERLINGO breached their contract when they conspired with SECORD to recall and Exonerate Plaintiff's bail, even after Plaintiff had paid their second bail premium of $25,000.00 a month prior.

108.  This claim asserts Breach of Fiduciary Duty against Defendants BOONES BAIL BONDS, VERLINGO, ZIBELL, and SENECA owed a fiduciary duty to Plaintiff by keeping her bail instated, which Plaintiff had paid for and for not releasing any information to any parties regarding Plaintiff.

109.  This claim asserts Negligence against Defendants BOONE'S BAIL BONDS, ZIBELL, VERLINGO and SENECA for their failure to properly protect Plaintiff's interest.

110.  This claim asserts Unjust Enrichment, wherein Defendants BOONES, ZIBELL, VERLINGO, and SENECA INSURANCE, and each of them, have been unjustly enriched by the second bail premium paid by Plaintiff, profits and issues gained therefrom, with no intent to perform the duties agreed upon.

111.  This claim asserts Quantum Meriut, wherein Defendants BOONES, ZIBELL, VERLINGO and SENECA INSURANCE received monies and refused to return monies

Complaint                              - 31 -

1    to which they were not entitled.

2    112.    This claim asserts Fraud & Deceit (Concealment), where in SECORD sealed the civil

3            files pertaining to Plaintiff and concealed the information from the SAN BERNARDINO

4            COUNTY SUPERIOR COURT.   SECORD further used fraud and deceit and

5            misrepresented facts in order to obtain a second warrant for Plaintiff's arrest.

6    113.    This claim asserts Fraud & Deceit (Misrepresentation) wherein Plaintiff alleges

7            misrepresentations by SECORD, ZIBELL, VERLINGO  misrepresented facts to San

8            Bernardino County Superior Court, Central District which led to Plaintiff's second arrest

9            and lengthy, unnecessary incarceration.

10   114.    This claim asserts Promise Without Intent to Perform, wherein  BOONES, ALLWAYS

11           FOR-U BAIL BONDS, ZIBELL and VERLINGO willfully, maliciously, falsely, and

12           fraudulently represented to Plaintiff if Plaintiff would pay the additional $25,000.00 bail

13           premium, BOONES would continue her bail bond.

14   115.    This claim asserts violations of U.S. Constitution: First Amendment, Annotations -

15           Invasion of Privacy, which states "Governmental power to protect the privacy interests of

16           its citizens by penalizing publication or authorizing causes of action for publication which

17           implicates directly Fist Amendment Rights.  Privacy is a concept composed of several

18           aspects.  As a tort concept, it embraces at least four branches of protected interests;

19           protection from unreasonable intrusion upon one's seclusion, from appropriation of one's

20           name of likeness, from unreasonable publicity given to one's private life, and from

21           publicity which unreasonably places one in a false light before the public."  All

22           defendants conspired to and did violate the rights of Plaintiff's under the First and

23           Fourteenth Amendments.

24   116.    This claim asserts violations of the U.S. Constitution, Fifth Amendment, wherein

25           SECORD placed Plaintiff twice in jeopardy for the same crime, wherein SECORD filed a

26           second set of charges alleging the same crime with the same vehicle by forum shopping

27           and finally succeeding in obtaining the second warrant from a different court located

28           within San Bernardino County, by obtaining this warrant under Plaintiff's married name,

**Complaint**                                    - 32 -

instead of Plaintiff's maiden name which the other charges are filed under.   Due to this,
Plaintiff was arrested and placed in jail for allegations Plaintiff had already been arrested
and posted bail.  In addition, HOUTS, HOUTS & ASSOCIATES, USA FEDERAL
CREDIT UNION, ROSAS, and WEVELY have been attempting to force Plaintiff into a
Judgment Debtor's Exam in the civil matter, in attempts to prove Plaintiff's income. .

117.  This claim asserts violations of the U.S. Constitution. Sixth Amendment, wherein
Plaintiff has a right to a trial with an impartial jury.  Defendants have slandered Plaintiff
so horribly within the county of San Bernardino, Plaintiff fears she will not be able to
obtain an impartial jury.  USA FEDERAL CREDIT UNION is located in San Diego,
California.  WEVELY testified  Plaintiff  supposedly came to San Diego to meet with her
and obtain the loan, which Plaintiff is currently charged with.  If this occurred in San
Diego County, then San Bernardino County has no jurisdiction over it.  The second set of
charges filed by SECORD, wherein USA FEDERAL CREDIT UNION is the supposed
"victim" occurred when Plaintiff did not reside within the state of California.

118.  This claim asserts violations of U.S. Constitution: Fourteenth Amendment, Section 1,
which states, "All persons born or naturalized in the United States and subject to
jurisdiction thereof, are citizens of the United States and of the State wherein they reside.
No State shall make or force any law which shall abridge the privileges or immunities of
citizens of the United States; nor shall any State deprive any person of life, liberty, or
property, without due process of law; nor deny to any person within its jurisdiction the
equal protection of the laws."  All defendants conspired to and did violate Plaintiff's
rights under  the First and Fourteenth Amendments.

119.  This claim asserts violations of the U.S.  Fourteenth Amendment wherein defendants
violated Plaintiff's Constitutional Right to Non-Discriminatory Police Services and Equal
Protection of the laws.  Plaintiff contends she has a constitutional Fourteenth Amendment
Right to hold the police legally accountable for their response to violence against women.

120.  This claim asserts Civil Conspiracies, wherein all defendants acting under the color law,
conspired with each other to deprive Plaintiff's of her right to due process, right to

1    privacy and protection of the laws of the State of California, as well as Plaintiff's

2    Constitutional Rights as set forth herein.

3    121.   This claim asserts Abuse of Process and Retaliatory Prosecution as to Defendants

4    SECORD, and SAN BERNARDINO DISTRICT ATTORNEY'S OFFICE. SECORD

5    through the SAN BERNARDINO COUNTY DISTRICT ATTORNEY'S OFFICE

6    conspired with HOUTS, WEVELY, MISLEH, ROSAS, and USA FEDERAL CREDIT

7    UNION to mis-state facts during court proceedings in order to obtain a conviction against

8    Plaintiff and to conceal information that would help Plaintiff in her defense.  HOUTS,

9    WEVELY, MISLEH, ROSAS and USA FEDERAL CREDIT UNION conspired with

10   SECORD through the SAN BERNARDINO COUNTY DISTRICT ATTORNEY'S

11   OFFICE in order to obtain confidential information pertaining to Plaintiff,  they would

12   not have been able to obtain otherwise, to aid them in obtaining a money judgment

13   against Plaintiff.  MORRISON, LIEBERICH, and HAMILTON through the SAN

14   BERNARDINO COUNTY SHERIFF'S DEPARTMENT and the SAN BERNARDINO

15   COUNTY DISTRICT ATTORNEY'S OFFICE conspired with HOUTS, WEVELY,

16   SECORD, MISLEH, and USA FEDERAL CREDIT UNION to falsify testimony and

17   conceal information to obtain a criminal conviction against Plaintiff out of retaliation for

18   Plaintiff filing a civil lawsuit against the County of San Bernardino, MORRISON, SAN

19   BERNARDINO COUNTY SHERIFF'S DEPARTMENT and the city of Rancho

20   Cucamonga.  SECORD through the SAN BERNARDINO DISTRICT ATTORNEY'S

21   OFFICE further used his position as a deputy district attorney to obtain the original

22   documents from Postal Annex which showed  Plaintiff was not on the postal box B-104.

23   122.   Between the time of Defendants actions and the filing of this action, Plaintiff has

24   expended time and money attempting to  protect her minor child, answer the frivolous

25   allegations and court appearances and to treat her medical condition.

26   123.   As a proximate and legal result of Defendants conduct, Plaintiff has suffered damages in

27   excess of the minimum jurisdiction of this court.

28   124.    The Plaintiff hereby reserves all rights to file further appropriate amendments to add

**Complaint**                               - 34 -

1      additional parties and causes of actions.

2   125.   Plaintiff has a right to Due Process in accordance with judicial hearings and proceedings.

3      Defendants violated Plaintiff's Due process rights in violation of the Fourteenth

4      Amendment of the United States Constitution.

5   126.   Defendants conspired with each other attempting to to receive monies from Plaintiff and

6      a criminal conviction against her

7

8

9   **FACTUAL ALLEGATIONS COMMON TO ALL COUNTS**

10

11  127.   In or about 1992, Plaintiff had been attending court appearances in Orange County for her

12      Paternity Suit with ALLEN.  Plaintiff received a declaration from ALLEN accusing

13      Plaintiff of fraud crimes and Munchousen by Proxy (purposely getting her child sick).

14      Based on these allegations, custody of the minor was given to ALLEN.  Once ALLEN

15      obtained custody of the minor, he turned the child back over to Plaintiff.

16  128.   In or about 1993,  Plaintiff filed a motion with the Orange County Superior Court to

17      obtain custody of her minor son back.  Plaintiff advised all of ALLEN'S allegations

18      proved to be false.   Plaintiff was given full custody of her son.

19  129.   In or about November 1993 ALLEN was arrested and convicted in Los Angeles County,

20      for violating a court order for not returning Plaintiff's minor son after his visitation, per

21      court order.

22  130.   On or about May 25, 1999, Plaintiff's Family Law Attorney, Jack Kayajanian sent a letter

23      to ALLEN advising Plaintiff would be out of town with their minor son for her birthday

24      on the weekend of May 28, 1999.

25  131.   On or about May 30, 1999, Plaintiff and her minor son returned home.  Plaintiff contacted

26      her pet-sitter and advised she was home.  Plaintiff's pet-sitter immediately advised her

27      someone had entered Plaintiff's home, gone through her mail, and left filing cabinets

28      opened.  Plaintiff's neighbor came to her door.  Plaintiff's neighbor advised he had seen

**Complaint**                                    - 35 -

1   ALLEN go enter her backyard and ALLEN did not return for quite awhile.  Plaintiff

2   immediately contacted the SAN BERNARDINO COUNTY SHERIFF'S

3   DEPARTMENT and reported the crime of burglary listing ALLEN as the suspect.  A

4   deputy was dispatched to her home.  Plaintiff advised the deputy the information her

5   neighbor had told her and she had  found her mail had been opened and gone through,

6   however she did not notice anything missing.  Plaintiff also advised ALLEN was notified

7   prior to her departure out of town her attorney notified ALLEN she would be out of town.

8   Plaintiff further advised the deputy at approximately 5:30 PM she received a call from

9   ALLEN and she again told him she and the minor would be out of town.  The deputy took

10  a report naming ALLEN as the suspect.

11  132.    In or about June 1999 Plaintiff was contacted by Detective Danny Skaturo with the SAN

12  BERNARDINO COUNTY SHERIFF'S DEPARTMENT, Rancho Cucamonga

13  substation.  During Plaintiff's meeting with Detective Skaturo, Plaintiff was informed

14  ALLEN admitted to going into Plaintiff's backyard and peeking through her windows,

15  stating he believed she was involved in fraud type activities.  Detective Skaturo stated

16  ALLEN was denying the allegations of burglary.  Plaintiff advised Detective Skaturo

17  ALLEN had prior notice she would be out of town Detective Skaturo also advised

18  Plaintiff ALLEN was accusing Plaintiff of fraudulent activity which included false credit

19  reports, falsifying information for credit, Real Estate Fraud among other things.  Plaintiff

20  advised Detective Skaturo she had been accused of all types of crimes by ALLEN since

21  1992 during court proceedings.

22  133.    In or about August 1999, Plaintiff's son was with ALLEN for a court ordered 2 week

23  vacation period.  Plaintiff and her friend received a phone call around 11:00 PM to come

24  and pick up the minor from Rancho Santa Margarita.  When Plaintiff arrived, Plaintiff's

25  minor son was screaming and crying.  Plaintiff's son ran outside the door to Plaintiff's

26  car, ALLEN grabbed the minor by the arm and started dragging him into the house.

27  Plaintiff's minor son fell and was still being drug by ALLEN on the sidewalk.  Police

28  arrived at ALLEN'S home and advised the boy was home sick and ALLEN had changed

Complaint                                    - 36 -

1    his mind and wasn't going to allow him to leave.

2    134.    In or about August 1999, Plaintiff arrived to pick up her child after the vacation period. Plaintiff's son had a noticeable black eye, fever and bumps all over his body. Plaintiff's son had a doctor appointment the next day scheduled for his school check-up. When Plaintiff took the minor to the doctor the nurse asked who gave him the black eye. Plaintiff's son would not tell anyone anything and was very withdrawn. The doctor stated Plaintiff's son had a sinus infection and a staph infection. The Doctor called CPS and reported the black eye and everything the minor had told him. Plaintiff contacted the SAN BERNARDINO COUNTY SHERIFF'S DEPARTMENT for help. Deputy Batista was dispatched to Plaintiff's home. Deputy Batista stated the child should not go back with ALLEN and if Plaintiff needed any help to contact him immediately. Batista advised Plaintiff to immediately obtain a restraining order. Plaintiff did obtain a SAN BERNARDINO COUNTY restraining order stopping all contact between the minor and ALLEN. Because Orange County had jurisdiction, Plaintiff was required to file in Orange County to obtain a restraining order to protect her minor son, however the San Bernardino County Superior Court Judge extended the SAN BERNARDINO COUNTY restraining order to give Plaintiff time to file in Orange County. Plaintiff filed for a restraining order in Orange County which took months of litigation.

19    135.    In or about September 1999, A Social Security Representative appeared at Plaintiff's home. Plaintiff was shown a badge and advised they had received information accusing Plaintiff of committing crimes of Fraud, Falsified Credit Applications, Falsified Credit Reports, illegally manipulating credit reports, and Real Estate Fraud. Plaintiff advised the representative he was welcome to look around her house and showed the Social Security Representative her computer. The Social Security Representative looked through her computer and even showed Plaintiff how to use one of the computer programs. The Social Security Representative looked upstairs at all the bedrooms. Plaintiff told the Representative she knew the report came from ALLEN. The Social Security Representative advised he could not disclose who the party was made the complaint.

**Complaint**        - 37 -

1    Plaintiff showed the burglary police report to the Representative and explained the

2    ongoing problems she has had with ALLEN.  The Social Security Representative advised

3    Plaintiff the report Social Security received was false and they would not take any more

4    calls or reports from this individual.

5    136.    In or about October 1999, Detective Skaturo appeared at Plaintiff's home.  Detective

6    Skaturo advised Plaintiff the SAN BERNARDINO COUNTY DISTRICT ATTORNEY'S

7    OFFICE had declined filing charges against ALLEN.  Detective Skaturo stated Plaintiff

8    could not find anything missing and made it almost impossible to obtain a conviction

9    against ALLEN for the May 1999 burglary.

10   137.    In or about October 1999, Plaintiff was informed  her son's black eye was the result of

11   ALLEN violently and in a fit of anger, throwing her son across the room causing him to

12   strike his face on the arm of a couch.  LIBERI is further informed  ALLEN inflicted this

13   harm on her son because of the anger ALLEN felt toward LIBERI.   Despite this

14   information being reported to the SAN BERNARDINO COUNTY SHERIFF'S

15   DEPARTMENT, no charges were ever filed against ALLEN for the child abuse against

16   Plaintiff RICHARDSON which caused the black eye.

17   138.    On or about November 24, 1999, in violation of an Orange County Superior Court

18   Restraining Order, ALLEN again burglarized Plaintiffs' home.  This time ALLEN took

19   Plaintiffs' child abuse file and court files pertaining to Plaintiffs' Paternity Action.

20   LIBERI contacted the SAN BERNARDINO COUNTY SHERIFF'S DEPARTMENT

21   again and they responded.

22   139.    On or about December 23, 1999, Deputy Dvorak contacted Plaintiff and advised there was

23   a warrant for ALLEN's arrest for first degree burglary.  ALLEN was arrested at Plaintiff's

24   home on December 24, 1999 when he returned their minor son.

25   140.    On or about April 6, 2000, ALLEN accepted the SAN BERNARDINO COUNTY

26   DISTRICT ATTORNEY'S OFFICE Plea Agreement and plead Nolo Contende to 2nd

27   Degree Burglary and was placed on felony probation.

28   141.    In or about June 2001, ALLEN began stalking and following Plaintiff in violation of

1    restraining orders which violated the terms of ALLEN'S probation.

2    142.    Plaintiff attempted to make reports with the SAN BERNARDINO COUNTY SHERIFF'S

3    DEPARTMENT numerous times regarding ALLEN'S violation of court orders and his

4    illegal behavior.  The SAN BERNARDINO COUNTY SHERIFF'S DEPARTMENT

5    refused to take Plaintiffs reports against ALLEN thereby endangering Plaintiff's life.

6    143.    On or about October 01, 2001, D.D.A. Nancy Cooper filed a revocation of probation

7    against ALLEN and placed a $50,000.00 warrant for his arrest.  ALLEN posted bond.

8    D.D.A. Cooper sent ALLEN'S file to the SAN BERNARDINO COUNTY SHERIFF'S

9    DEPARTMENT and requested a special investigation against ALLEN.

10    144.    In or about November 2001, Plaintiff filed a complaint with Maggie Stan, with the  Board

11    of Supervisors for the County of San Bernardino, Jon D. Mikels Office, and Lt. Leau with

12    the San Bernardino County Sheriff's department against Detective Paul Morrison and

13    Deputy Alan Girard for failure to investigate ALLEN, which was affecting the safety of

14    Plaintiff and Plaintiff's minor child;

15    145.    On or about December 05, 2001, ALLEN admitted violations of his probation as to terms

16    03, 12, 15, and 16 which are as follows:

17    Term 03 reads:    Violate No Law

18    Term 12 reads:    Not associate with known convicted felons or anyone actively
19                      engaged in criminal activity or co-defendant(s) or victim(s).

20    Term 15 reads:    Not attack, strike, threaten, harass, stalk or sexually abuse the
                        victim Lisa Richardson

21    Term 16 reads:    Not violate any restraining order obtained by Lisa Richardson

22    146.    To this date, no new charges have ever been brought against ALLEN, nor apparently has

23    any investigation been done regarding  his new crimes, to which he admitted violation of

24    his probation, during his revocation of probation hearing.

25    147.    Because of ALLEN'S behavior and the failure of the SAN BERNARDINO COUNTY

26    SHERIFF'S DEPARTMENT to protect the Plaintiffs, Plaintiff LIBERI obtained approval

27    for a confidential address, for the protection of victims of crimes, which gave her out-of-

28    county address, for her and her son's safety.

148. Plaintiff moved twice to different addresses after the burglaries, and each time, the address confidential in nature, but somehow, ALLEN obtained the new addresses and was seen in the areas of both homes on numerous occasions. Plaintiff reported the stalking by ALLEN to the SAN BERNARDINO COUNTY SHERIFF'S DEPARTMENT but no action was ever taken to protect Plaintiffs.

149. Then, on January 15, 2002, Defendants GIRARD and MORRISON and numerous other deputies, showed up at Plaintiffs confidential address, with a search warrant naming LISA RICHARDSON, but without an arrest warrant, allegedly based on a forgery and grand theft. Items taken included but are not limited to LIBERI'S Paternity files, Attorney-Client records, notes pertaining to the complaints filed against Defendants MORRISON and GERARD, minor Clifford Richardson's birth certificates, and numerous other items. At that time, MORRISON threatened Plaintiff with bail enhancement because it appeared "Plaintiff had money" and had a nice truck.

150. Liberi had not used the name RICHARDSON for anything other than the family law case, since 2000. In fact ALLEN has always referred to Plaintiff LISA RENEE RICHARDSON which is also not her correct name.

151. On or about January 15, 2002, Detective Paul Morrison, and numerous other deputies, showed up at Plaintiff's Huntley address, with a search warrant naming LISA RICHARDSON, but without an arrest warrant, allegedly based on a forgery and grand theft. Detective Morrison scolded Plaintiff for getting him into trouble and threatened her with bail enhancement stating Plaintiff had money. Plaintiff asked Detective Morrison if the report against ALLEN was completed. Detective Morrison said no he did not have time because this fax came in regarding her.

152. Plaintiff, Liberi was arrested on PC 470 Grand Theft and PC 487 Forgery. Plaintiff posted a $20,000.00 bail and was released from West Valley Detention Center. In fact, Plaintiff was expedited out of the jail due to Plaintiff's medical status at that time.

153. In or about February 2002, Plaintiff learned ALLEN, who is a computer expert, had been "hacking" into her computer system. Plaintiff immediately filed an IFCC complaint,

**Complaint**                                          - 40 -

1   complaint #102033018032707, online with the FBI. Plaintiff contacted the FBI located in

2   Riverside to also report this crime, however, Plaintiff was advised she had to go through

3   her local law enforcement agency first. Plaintiff explained to the FBI all of the above and

4   stated she was not comfortable with reporting this action to the SAN BERNARDINO

5   COUNTY SHERIFF'S DEPARTMENT, Rancho Cucamonga Division. The agent from

6   the FBI instructed Plaintiff to try anyway.

7   154.   On or about February 2002, Plaintiff left a message and sent a letter to Morrison

8   requesting property be returned which had been taken during the arrest. In the letter,

9   Plaintiff stated if the Sheriff's Department was refusing to return her property, she wanted

10  an explanation as to why they were holding her property.

11  155.   Plaintiff never received her property back and never received any explanation as to why

12  she could not have her property back. Instead, Detective Morrison contacted ALLEN and

13  advised him Liberi had been arrested and the charges Liberi had been arrested on. ALLEN

14  filed a declaration under penalty of perjury as to these statements in Plaintiff's paternity

15  action. Plaintiff had a right to be protected. Detective Morrison was aware Plaintiff was

16  the victim of ALLEN'S crimes.

17  156.   Plaintiff did as she was instructed by the FBI. Plaintiff contacted the SAN

18  BERNARDINO COUNTY SHERIFF'S DEPARTMENT, Rancho Cucamonga Division

19  dispatch to report the crime. Approximately 1-1/2 hours later, Plaintiff received a call

20  from Sergeant Smith, Watch Commander, SAN BERNARDINO COUNTY SHERIFF'S

21  DEPARTMENT advising a deputy could not come out and take a report because

22  Detective Paul MORRISON had the property address "flagged" and Sergeant Smith stated

23  Detective MORRISON was currently working with Plaintiff regarding this crime, which

24  was **untrue**, and Plaintiff LIBERI had made a complaint against MORRISON for his

25  failure to investigate ALLEN for his ongoing criminal activity.   Plaintiff had never spoken

26  to MORRISON regarding this issue. Plaintiff advised Sergeant Smith this was untrue and

27  she had filed complaints against Detective MORRISON. Sergeant Smith advised there

28  was nothing he could do, and a deputy could not take a report, Plaintiff

1    would have to contact Detective MORRISON.  Plaintiff did not contact MORRISON

2    because she did not trust MORRISON and feared retaliation.

3  157.  Plaintiff was very concerned with the information she learned from Sergeant Smith.

4    Plaintiff was unable to report any type of crime, unless she went through MORRISON,

5    who had already placed Plaintiffs in harms way.  Plaintiff knew she was unable to get help

6    from the SAN BERNARDINO COUNTY SHERIFF'S DEPARTMENT.

7  158.  Plaintiff immediately contacted the Riverside office of the FBI back and advised all this

8    information learned from Sergeant Smith.

9  159.  In or about February 15, 2002, SECORD and HAMILTON drove to USA FEDERAL

10    CREDIT UNION and spoke with MISLEH, Collections Supervisor and WEVELY, who

11    gave her title as Director of Retail Lending and Development.  MISLEH stated she was

12    very familiar with Plaintiff,  Plaintiff had cheated the Credit Union out of three

13    automobiles by providing false income statements to obtain credit.  MISLEH further stated

14    Plaintiff would make one or two payments and  defaulted.  WEVELY stated  she recalled

15    Plaintiff came into the Credit Union in September 2001 and delivered what Plaintiff

16    claimed was a pay-stub.  WEVELY further stated  based on the level of income claimed

17    by Plaintiff, she authorized the immediate issuance of a credit union credit card with a

18    $10,000.00 limit.  WEVELY stated  Plaintiff subsequently used the credit card to obtain a

19    fourth vehicle at a Ford dealership in Ontario.  MISLEH supplied photo copies of  twelve

20    documents, including a pay-stub from PricewaterhouseCoopers.

21  160.  USA FEDERAL CREDIT UNION is a Federal Credit Union who offers' membership to

22    provide financial assistance and banking needs to Active and Retired Military, The

23    Department of Defense, Federal Civilian employees, Department of Defense Contractors,

24    U.S. Naval Surface Forces, Pacific Fleet, and other Government employees, none of which

25    Plaintiff qualifies under.

26  161.  In or about February 2002, Plaintiff had a criminal court date for her arraignment.  No

27    charges had ever been filed and the SAN BERNARDINO COUNTY DISTRICT

28    ATTORNEY'S OFFICE  did not make an appearance.  Plaintiff was released and her bail

**Complaint**                                    - 42 -

1   exonerated.  SAN BERNARDINO COUNTY SUPERIOR COURT, Rancho Cucamonga

2   Division Case #0201341972.

3   162.   On or about April 03, 2002, USA FEDERAL CREDIT UNION through their counsel,

4   HOUTS, with the firm of HOUTS & ASSOCIATES, filed an Ex Parte request for a

5   temporary restraining order, Declaration of ROSAS, Declaration for temporary restraining

6   order, Declaration of HOUTS regarding Ex Parte Notice being given, Application for writ

7   of possession, Motion Re: writ of possession filed by USA FEDERAL CREDIT UNION,

8   Order for writ of possession of 2001 Chevrolet Camaro.  Plaintiff never received any

9   notice of any Ex Parte Action on behalf of USA FEDERAL CREDIT UNION.

10   163.   On or about April 08, 2002, the Ex Parte hearing was held.  USA FEDERAL CREDIT

11   UNION received their Ex Parte Order re: writ of possession.  Plaintiff never had a chance

12   to be heard as Plaintiff was unaware of this proceedings and/or this complaint.   HOUTS

13   committed perjury by filing a Declaration in regards to Ex Parte Notice being given, which

14   in fact was never given or attempted.  In addition, USA FEDERAL CREDIT UNION

15   through WEVELY, ROSAS, and MISLEH testified in the criminal matter  Plaintiff had

16   obtained loans for three vehicles, and only one payment was made.  However, HOUTS on

17   behalf of USA FEDERAL CREDIT UNION, WEVELY, ROSAS and MISLEH only

18   obtained a writ of possession for one vehicle.

19   164.   On or about May 31, 2002, USA FEDERAL CREDIT UNION through their counsel,

20   HOUTS with the firm of HOUTS & ASSOCIATES had a process server, HENDERSON,

21   served the complaint upon an address located at 11338 Kenyan Way #B119, Alta Loma,

22   CA 91701.  This address is a postal annex, owned by another individual which Plaintiff

23   did not have a box at, nor did Plaintiff receive mail at this address.  In fact, Plaintiff owned

24   real property located in Rancho Cucamonga which she could have been served at.

25   165.   On or about July 19, 2002, USA FEDERAL CREDIT UNION through their counsel,

26   HOUTS with the firm HOUTS & ASSOCIATES, filed a request and order for default

27   judgment.

28   166.   On or about September 25, 2002, HOUTS with the firm HOUTS & ASSOCIATES, on

1    behalf of USA FEDERAL CREDIT UNION filed his Declaration re: request for court

2    judgment under CCP 585D and Request for court judgment under CCP 585(B). ©).

3    167.   In or about October 7, 2002, Judgment was returned by court per Judge Johnston reason

4    being, Judge Johnston set it for a default prove-up hearing.

5    168.   In or about November 19, 2002, Default prove-up hearing was heard, HOUTS with

6    HOUTS & ASSOCIATES was present on behalf of USA FEDERAL CREDIT UNION.

7    ROSAS was present and testified on behalf of USA FEDERAL CREDIT UNION.  The

8    default judgment was entered in the amount of $66,957.08.  Plaintiff was not present at

9    this hearing because Plaintiff was never given any type of notice.

10    169.   In November 2002, Plaintiffs fled the State of California because of the continued

11    harassment of ALLEN and fear for her family's safety, generated by SAN BERNARDINO

12    COUNTY SHERIFF'S DEPARTMENT'S refusal to investigate ALLEN, even though

13    there had been a history of crime and violence by ALLEN against Plaintiffs.

14    170.   Plaintiff has presented her claim pursuant to Government Code Section 900, et seq., in the

15    amount of $10,000,000.00.  Defendants, RANCHO and SAN BERNARDINO COUNTY

16    SHERIFF'S DEPARTMENT denied Plaintiff's claim in its entirety.

17    171.   In or about 2003, After Psychiatric evaluations were performed and completed on

18    Plaintiff's and ALLEN.  Plaintiff received sole custody of her minor son with limited

19    contact between Plaintiff's son and ALLEN.

20    172.   On or about January 14, 2003, Plaintiff,  filed a lawsuit in the San Bernardino Superior

21    Court, Central Division,  against the County of San Bernardino, SAN BERNARDINO

22    COUNTY SHERIFF'S DEPARTMENT, City of Rancho Cucamonga, MORRISON,

23    GIRARD,  Detective Danny Skaturo, and DOES 1-50 in the San Bernardino County

24    Superior Court, Central Division, Case #SCVSS 098957, for Assault & Battery,

25    Defamation of Character, False Arrest, False Imprisonment, Violation of Civil Rights -

26    Excessive Force, Violation of Civil Rights-Unreasonable Search & Seizure, Violation of

27    Civil Rights - Miranda Violations, , Conspiracy, General Negligence, Quantum Meriut,

28    Unjust Enrichment, Intentional Infliction of Emotional Distress, Negligent Infliction of

**Complaint**                                    - 44 -

1   Emotional Distress and Claim & Delivery .

2   173.   On or about February 28, 2003, Liberi filed an Application for Writ of Possession in Case

3          No. SCVSS 098957.

4   174.   On or about April 1, 2003, the Application for Writ of Possession came on regularly for

5          hearing.  SECORD made the appearance on behalf of the District Attorney's office as a

6          Real Party in Interest.  SECORD represented to the court  Plaintiff was not entitled to her

7          property because she was under investigation and verbally misled the court into believing

8          Plaintiff was required to bring the motion in front of the judge who issued the warrant,

9          which was not true, in this case, because there was no case pending.  The Application was

10         denied based on the representations of SECORD, even though no charges had been filed at

11         that time against Plaintiff and there was no case pending in any court of competent

12         jurisdiction.

13  175.   On or about April 10, 2003, Plaintiff filed a Motion for Reconsideration of the Application

14         for Writ of Possession and set the hearing for May 13, 2003.

15  176.   On or about  May 9,  2003, SECORD filed 17 felony counts against Plaintiff under the

16         name of LISA RENEE RICHARDSON, which has never been LIBERI'S name.   Plaintiff

17         had not used the name Richardson, except for her family law action, since 2000, in San

18         Bernardino County Superior Court, Rancho Cucamonga District, Case #FWV-028000.

19         These ALLEGATIONS are as follows:

20         a.      8 Counts of P.C. 487(a)        Grand Theft: Property/Etc over $400.00

21         b.      3 Counts of P.C. 487(d)        Grand Theft: Automobile/Animal/Etc.

22         c.      2 Counts of P.C. 470(d)        Forgery

23         d.      2 Counts of P.C. 472           Forgery of a Government Seal

24         e.      2 Counts of P.C. 115(a)        Offer/Etc. False/Forged Instrument to file

25         All of the above charges alleged against Plaintiff also had enhancements added.

26  177.   On or about May 9, 2003, SECORD had civil files **sealed** pertaining to Business Bank of

27         CA v. Liberi, PFF Bank and Trust v. Liberi, and USA Federal Credit Union a.k.a. United

28         Services of America v. Liber, without any notice to Plaintiff.

Complaint                                    - 45 -

178.  On or about May 13, 2003, SECORD, just prior to the Hearing on the Motion for Reconsideration, SECORD advised Plaintiff's counsel  he had issued a warrant for LIBERI'S arrest.  He  advised the court and Plaintiff's motion was denied.

179.  Plaintiff voluntarily returned to the State of California when she learned of the warrant, and thereafter, and Plaintiff's initial preliminary hearing began.  The preliminary hearing took approximately 10 ½ months to complete.

180.  In or about May 21, 2003 David Goldstein and Ronald Powell initiated contact between Plaintiff and  ZIBELL and VERLINGO and had the bails bondmen contact Plaintiff and Plaintiff's step-mother in their hotel in California to post Plaintiff's bail bond.

181.  On or about February 22, 2003, Plaintiff and her step mother met with CRAIG ZIBELL and ANGELO VERLINGO,  for the purpose of discussing the bail and the bail hearing. When they were leaving, ZIBELL informed Plaintiff to get up, not ask questions, and go straight for his car.  Plaintiff and her step mother did as instructed.  ZIBELL pulled out his handcuffs and approached the car with Plaintiff.  ZIBELL explained to Plaintiff and her mother there was a fugitive detective after Plaintiff.  ZIBELL, VERLINGO, Plaintiff and her step mother jumped in ZIBELL'S car and ZIBELL drove away very fast.  ZIBELL stated to Plaintiff and her step-mother they were being chased by the fugitive detective.  A police helicopter then appeared.  ZIBELL parked the car in a car dealership next to the hotel, Residence Inn, where Plaintiff and her step mother were staying.  ZIBELL advised Plaintiff and her step mother he needed to place their room in his name as a security for Plaintiff.  ZIBELL further handed a piece of paper to Plaintiff's step-mother stating if anyone shows up to arrest Plaintiff she was to show them the paper so they would know ZIBELL and VERLINGO through ALLWAYS FOR-U BAIL BONDS posted Plaintiff's bail.  Plaintiff has no idea why anyone would know her whereabouts, unless they were told to appear to intimidate her.

182.  On or about May  23, 2003, Plaintiff appeared in court on the warrant for the criminal charges filed against her along with ZIBELL, and VERLINGO and posted a $250,000.00 bail.  SECORD had placed a 1275.1 hold, which he would release if Plaintiff posted the

1    bail demanded.   Plaintiff and Plaintiff's stepmother were advised if they did not agree to

2    the $250,000.00 bail,  SECORD threatened to have Plaintiff in jailed for at least 10 days to

3    give him time to review the assets of Plaintiff's stepmother.  Due to Plaintiff's medical

4    situation, Plaintiff and Plaintiff's step mother agreed to ZIBELL'S, VERLINGO'S and

5    SECORD'S terms.

6    183.    On or about August 26, 2003, during the dependency of Plaintiff's preliminary hearing,

7            Detective Morrison **testified he self assigned this criminal matter against Plaintiff to**

8            **himself,** based on an unidentified and unsubstantiated fax which came into the SAN

9            BERNARDINO COUNTY SHERIFF'S DEPARTMENT.  Also during this preliminary

10           hearing, SECORD stated in open court he and Detective Paul Morrison were friends.

11   184.    On or about August 26, 2003, during the Preliminary Hearing,  Plaintiff's attorney's

12           requested all witnesses be excluded from the courtroom.  BROWN granted Plaintiff's

13           attorney's motion  and ordered all witnesses were to be excluded from the courtroom until

14           they were called and the witnesses were not to review any documents or discuss the case

15           with each other.

16   185.    On or about August 26, 2003, at the Preliminary Hearing,  Susan Kendrick took the stand.

17           Ms. Kendrick was shown a copy of a check which Plaintiff had supposedly changed the

18           payee on. Ms. Kendrick was asked to highlight where the "supposed" changes on the

19           check occurred.   Ms. Kendrick highlighted an area to the far right of the check.  Once she

20           highlighted the area, SECORD went up to the witness stand and attempted to have Ms.

21           Kendrick change her yellow highlighted area to where **he wanted it.**

22   186.    On or about August 26, 2003, at the Preliminary Hearing, a female witness from PFF Bank

23           and Trust took the stand.  When Plaintiff's  attorney's asked her if she had reviewed any

24           documentation, **she testified "yes, a file SECORD gave her"**.  SECORD, being the

25           deputy district attorney knew he was violating BROWN'S court orders  witnesses were not

26           to review any documentation.  SECORD immediately started telling the court he didn't

27           ask the witness to review it, but to just hold it for him.   In addition, the witness could not

28           clearly identify Plaintiff stating she thought it was Plaintiff, but it had been such a long

**Complaint**                                    - 47 -

1    time she just could not remember.

2    187.    On or about August 26, 2003 and September 22, 2003, at Preliminary Hearing, Ana Maria

3    Segura took the stand to testify.  Ana Maria Segura identified Plaintiff by pointing to the

4    table where Plaintiff was sitting.  At first, Ms. Segura testified she saw Plaintiff, Plaintiff

5    was the one who filled out the credit application and there was a picture of Plaintiff

6    picking up a check from the bank.  When Plaintiff's attorney's started questioning her, Ms.

7    Segura **retracted** her testimony and stated she had never seen the Plaintiff before, she did

8    not even receive the file for two weeks after the loan in question had commenced.

9    188.    Detective Morrison took the stand again and testified there was **not** a photo of Plaintiff

10    picking up a check or anything else.

11    189.    SECORD, did not take any steps regarding the false testimony first given by Ms. Segura.

12    190.    On or about September 23, 2003, during Plaintiff's preliminary hearing, SECORD

13    informed the court of Attorney-Client documents pertaining to Plaintiff's Family Law case

14    which he had in his possession.  The court ordered these documents be returned to

15    Plaintiff at that time.  The documents were returned to Plaintiff's defense counsel in open

16    court.  In these documents, was a copy of an income and expense declaration, as well as

17    other documents,  which had been filed in Plaintiff's confidential Paternity Action, not a

18    Family Law case.  Plaintiff is not sure  all of the privileged documents were returned.

19    191.    In or about September 24, 2003, USA FEDERAL CREDIT UNION'S  process server

20    attempted service on Plaintiff, however, instead of serving Plaintiff, the process server

21    served Plaintiff's attorney, who did not have authorization to accept service, by throwing

22    the Order for Appearance and Examination on the floor in front of Plaintiff's counsel.

23    Plaintiff was at the SAN BERNARDINO SUPERIOR COURT, Rancho Cucamonga

24    Division, 2nd floor, while plaintiff was there on another matter.  This was the first time

25    Plaintiff had learned there was a judgment and/or civil complaint filed against her by USA

26    FEDERAL CREDIT UNION.  The Judgment Debtors Exam was scheduled for November

27    19, 2003.

28    192.    On or about November 5, 2003, SECORD, during the Preliminary Hearing attempted to

Complaint                                        - 48 -

1    have BROWN recuse himself because he was the convicting Judge of ALLEN.  SECORD

2    had no basis in his attempts to have BROWN recuse himself unless SECORD'S

3    intentions were to call ALLEN to testify against Plaintiff in the criminal matter, as the

4    charges filed were based on ALLEN'S allegations.

5    193.    In or about November 2003, WEVELY, testified at Plaintiff's Preliminary hearing.

6    WEVELY testified differently during the criminal proceeding,  than her declarations,

7    signed under the penalty of perjury, stated, which were filed in a Civil matter, USA

8    Federal Credit Union v. Lisa Liber, San Bernardino County Superior Court, Rancho

9    Cucamonga District Case #RCVRS 061592.  This civil case was sealed by SECORD on

10    May 9, 2003, the same date charges were originally filed against Plaintiff.

11    194.    Detective Paul Morrison was at the counsel table during WEVELY'S testimony.  Once

12    Ms. Wevely was finished with her testimony, **she got down off the stand walked behind**

13    **Detective Morrison, pressed the front of her body against the back of Detective**

14    **Morrison, placed her arms around Detective Morrison and began rubbing his**

15    **stomach**, in open court.

16    195.    In or about November 2003, Plaintiff learned SECORD also sealed the civil files

17    pertaining to PFF Bank & Trust v. Richardson and Business Bank of California v.

18    Richardson.  PFF Bank & Trust and Business Bank of California are also witnesses for

19    SECORD in the criminal case.

20    196.    In or about November 2003, SECORD, working on behalf of District Attorney RAMOS,

21    obtained access, without court order, subpoena or notice to any parties, the entire original

22    confidential  paternity file of minor, Clifford Richardson, San Bernardino County Case

23    No. RFL-034080.

24    197.    On the record, SECORD admitted to reviewing Plaintiffs' paternity action prior to the

25    hearing and  SECORD requested BROWN  take Judicial Notice of entire Plaintiffs

26    paternity file, in order to use documentation in that file to prove the income of Liberi in the

27    criminal case, knowing there were less invasive and more accurate ways to prove

28    LIBERI'S income.  SECORD mislead the court by stating this file was a **"family law"** file

Complaint                                    - 49 -

| | | |
|---|---|---|
| 1 | | and never stated to the Court  it was actually a confidential sealed action to Establish |
| 2 | | Paternity nor did he ever request a court hearing to unseal the file. |
| 3 | 198. | The only way SECORD could have gained access to Plaintiffs Paternity Action is if a San |
| 4 | | Bernardino County Superior Court, Rancho Cucamonga District, DOE CLERKS gave him |
| 5 | | access to the file. |
| 6 | 199. | In or about November 2003, Plaintiff's criminal attorney advised BROWN  the file was |
| 7 | | confidential in nature, and it was a paternity file and should not be view by anyone, |
| 8 | | including SECORD. BROWN ignored this information and called the attorneys and |
| 9 | | investigators to the bench to view the file, LIBERI'S attorneys reiterated the confidential |
| 10 | | nature of the file, at which time SECORD stated, on record,   he had already been through |
| 11 | | the entire file.  BROWN allowed copies of the confidential information to be made and |
| 12 | | ordered SECORD to give copies to LIBERI'S counsel.. |
| 13 | 200. | After this hearing, SCHREIBER, the SAN BERNARDINO COUNTY DISTRICT |
| 14 | | ATTORNEY'S OFFICE investigator approached LIBERI'S attorney's with copies of |
| 15 | | documents taken from Plaintiffs Paternity Action, which BROWN told SECORD to make |
| 16 | | were given to LIBERI'S counsel. |
| 17 | 201. | In or about November 2003, Plaintiff through her counsel requested  Judge Sabet place a |
| 18 | | stay on the civil case pertaining to USA FEDERAL CREDIT UNION v. LIBERI et. al, in |
| 19 | | order to preserve Plaintiff's Fifth Amendment right to self incrimination.  Judge Sabet |
| 20 | | denied Plaintiff's request. |
| 21 | 202. | On or about November 12, 2003, Plaintiff's civil attorney filed a motion to set aside the |
| 22 | | default judgment which was scheduled to be heard on December 22, 2003. |
| 23 | 203. | On or about November 19, 2003, Plaintiff's attorney, made the appearance for the |
| 24 | | Judgment Debtors Exam.  Plaintiff was unavailable as she was on a plane traveling home. |
| 25 | | Judge Sabet, even though Plaintiff's attorney was present, issued a $5,000.00 bench |
| 26 | | warrant against Plaintiff stating Judgment Debtor failed to appear for Debtor's exam, |
| 27 | | knowing Plaintiff resided outside the state of California and over 150 miles from the court, |
| 28 | | in violation of California Civil Code 708.160. |

204. On or about November 25, 2003, Plaintiff's attorney sent a letter to SECORD regarding the confidentiality of Plaintiff's Paternity Suit. In this letter, Plaintiff's attorney requested no information be provided to any persons.

205. On or about December 11, 2003, Plaintiff has presented her claim pursuant to Government Code Section 900, et seq., regarding the paternity documents. THE COUNTY OF SAN BERNARDINO denied Plaintiffs' claim in its entirety.

206. On or about December 12, 2003, Plaintiff's civil attorney filed an Ex- Parte Motion to quash service re: Exam of Judgment Debtor. Judge Sabet continued this matter to December 22, 2003 to be heard along with the Motion to set aside default judgment.

207. On or about December 22, 2003, Plaintiff appeared at the court hearings scheduled for the Motion to set aside default judgment, Motion to quash a service re: Exams of judgment debtor, and the motion re Exam of Judgment Debtor. With Plaintiff was the owner of the post office box which was originally served with the Complaint for damages, Default Judgment, etc. Judge Sabet attempted to deny the Motion to set aside default judgment stating "usually there is a response attached to the original complaint" Plaintiff's attorney immediately replied stating "Your honor that is the usual way these motions are handled however, this file is sealed and we have been unable to obtain a copy of the complaint and/or all the other documents. Further, I have requested several times from HOUTS, the attorney for USA FEDERAL CREDIT UNION, a copy of the file, but to date have been refused." Judge Sabet stated "you are correct counsel, the file is sealed." Plaintiff's attorney again advised Judge Sabet Plaintiff resided outside of the state of California. Judge Sabet refused to hear testimony from the owner of the post office box, she made derogatory statements about Plaintiff to her counsel stating "for someone like you and I counsel your argument would be valid, but this is a person who uses different names and addresses. Plaintiff's attorney immediately stated on record "Your honor, none of that has been proven." Judge Sabet stated "it's a question of credibility, I have a declaration from the process server, HENDERSON which states the Postal Annex advised him Plaintiff had a post office box at that location." Plaintiff's attorney responded "Your honor, we

1    have the owner of the post office box here in court with us today, you have a copy of his

2    declaration stating that was his box and Plaintiff did not receive mail there, nor did she

3    have a box there to accept service. Judge Sabet stated, "I do?" "Oh, yes I do, and I did

4    consider it" "It still comes down to credibility and Mr. Morris's declaration does not have

5    his relationship to the Plaintiff in his declaration." Judge Sabet refused to recall the

6    $5,000.00 bench warrant and ordered it held, even though Plaintiff was present in court.

7    Judge Sabet continued the matter to February 24, 2004 and ordered Plaintiff back on that

8    date.

9    208.    Everyone left the courtroom. Plaintiff and the box owner, were downstairs waiting

10    outside. Plaintiff's attorney had forgotten her briefcase in the court room. Plaintiff's

11    attorney ran back up stairs and obtained her briefcase. While upstairs she saw, USA

12    FEDERAL CREDIT UNION'S personnel, HOUTS, and WEVELY in the district

13    attorney's office.

14    209.    In or about December 22, 2003, Plaintiff and the post office box owner, immediately went

15    down to the Postal Annex where the post office box is located. The box owner went in

16    and attempted to obtain a copy of his post office box application to prove Plaintiff was not

17    on his box and did not receive mail at this address. Mr. Morris was advised by the Postal

18    Annex personnel and the manager SECORD had already been there and obtained the

19    original application to this post office box. Mr. Morris was further advised  no copies

20    were kept. Mr. Morris advised the postal annex personnel  he had called several times to

21    see if Plaintiff was receiving mail there, and was advised no,  Plaintiff's name was not in

22    the computer system and they did not have a signed contract for Plaintiff to receive mail.

23    The Postal annex personnel stated  they did not have even a copy of his application and did

24    not have anything with Plaintiff's name on it. There was no reason for SECORD to obtain

25    these documents, it had nothing to do with the criminal case and only helped  SECORD'S

26    witness, USA FEDERAL CREDIT UNION, in obtaining a favorable outcome in their civil

27    case against Plaintiff. Without these documents, Plaintiff was unable to prove she was not

28    on this postal box and did not receive mail at this address.

**Complaint**                                      - 52 -

210. In or about December 2003, Plaintiff contacted ZIBELL and VERLINGO advising them she had moved. Plaintiff further faxed a letter to ZIBELL and VERLINGO stating in writing her new home address. Plaintiff requested her home address remain confidential and not be given to anyone, as she feared SECORD and did not want him to have her physical location.

211. On or about January 6, 2004, LIBERI'S civil attorney, Michelle D. Strickland, received a letter from County of San Bernardino Deputy County Counsel Dennis Wagner, which had attached copies of the Ex Parte Application and Order permitting viewing of documents in Plaintiffs Paternity Action, Orange County Case #AD-60301, but which had a heading stating "County of San Bernardino."

212. In late January 2004, Plaintiff was required to undergo an angiogram and determined Plaintiff needed to undergo open heart surgery. SECORD was advised of Plaintiff's medical situation.

213. On or about February 19, 2004 USA FEDERAL CREDIT UNION through their New Mexico Attorney, SANCHEZ served Plaintiff with a Filing of Foreign Judgment, First Judicial District Court Case #D0101-CV-2004-00-337 in Santa Fe, NM where Plaintiff resides.

214. On or about February 23, 2004, Plaintiff's attorney filed a 170.1 motion to have Judge Sabet recused based on her biased and prejudicial statements. Judge Sabet refused to recuse herself. The February 24, 2004 court date was taken off calendar.

215. In or about February 2004, SECORD provided confidential documentation from Plaintiffs paternity file to HOUTS, the attorney for USA FEDERAL CREDIT UNION. One such document was a letter which was provided to Deputy District Attorney Nancy Cooper by LIBERI regarding JOHN ALLEN'S criminal violations. HOUTS, in a declaration in Case No. RCV 061592 of the Rancho Cucamonga Superior Court, stated he had received said documentation from the criminal file. The criminal matter had yet to be tried nor had it concluded the preliminary hearing phase and no rulings had been made by BROWN allowing the documents in question to be entered as exhibits. Representatives from USA

1    FEDERAL CREDIT UNION have been called as witnesses to testify in the criminal

2    matter.

3    216.    The documentation which HOUTS attached to his declaration were documents which he

4    could have only obtained from SECORD.  There has never been an order allowing

5    unlimited access to Plaintiff's paternity file, nor any Motion by HOUTS to obtain

6    information from Plaintiff's paternity file, or any other confidential documents used in the

7    Preliminary hearing.  Plaintiff's are unaware of any subpoenas to obtain personal

8    information, yet Mr. Houts had access to personal information of Plaintiff's through

9    documents contained in the criminal file, which were not entered as exhibits, where

10   ordinarily a subpoena would be necessary to obtain such personal information.

11   217.    Plaintiff alleges confidential information in Plaintiff's paternity file, as well as

12   documentation obtained in the course of a criminal proceeding, which has yet to be tried is

13   not now, nor has it ever been public information the District Attorney's office can share

14   with outside civil counsel for any purpose.

15   218.    On or about February 03, 2004, HOUTS on behalf of USA FEDERAL CREDIT UNION

16   filed a motion requesting Judge Sabet, San Bernardino Superior Court, Rancho

17   Cucamonga Division, Department R20,  in a civil proceeding, non related to  the paternity

18   suit,  to take judicial notices of these confidential documents which were taken from

19   Plaintiff's Paternity File in order to aid HOUTS and USA FEDERAL CREDIT UNION on

20   a default judgment.

21   219.    On or March 26, 2004, BROWN entered into evidence portions of Plaintiffs paternity file

22   and documents within the Paternity Action knowing this Paternity action was a

23   confidential sealed file per California State Statute and California Family Law Code 7643.

24   BROWN was aware  there was no motion before the San Bernardino Court requesting

25   access to Plaintiffs Paternity action, and no court order from any San Bernardino judge

26   allowing access to Plaintiffs Paternity Action.  Plaintiff alleges  BROWN did not have

27   jurisdiction over Plaintiffs Paternity Action to make such rulings as the case had been

28   assigned **for all purposes** to the Family Law Division, Commissioner John Crowley in

1    Department R-17 of the Rancho Cucamonga Court.

2    220.    In or about March 2004, Plaintiff's criminal attorney, Ron Powell advised Plaintiff

3    SECORD was spreading rumors around the court house stating her criminal attorney's

4    were paying off Judge BROWN.  During court in the criminal matter, BROWN held

5    Plaintiff on all charges, at that time Ron Powell advised Plaintiff SECORD and the SAN

6    BERNARDINO COUNTY DISTRICT ATTORNEY'S OFFICE pressured and threatened

7    BROWN to rule in favor of SECORD.

8    221.    On or about March 31, 2004 Plaintiff had open heart surgery at the Heart Hospital located

9    in Albuquerque, New Mexico.

10    222.    In or about April 2004, Plaintiff received documentation from Alfred M. Sanchez, New

11    Mexico Attorney representing USA FEDERAL CREDIT UNION a.k.a. United Services of

12    America, which contained the declaration of Mr. Houts and the documents which had been

13    taken from Plaintiff's Paternity Action

14    223.    On or about April 19, 2004 Plaintiff was unable to attend her criminal court hearing due to

15    her open heart surgery.  SECORD attempted to have a warrant placed for Plaintiff's arrest

16    for her non appearance, knowing Plaintiff had just underwent Open Heart Surgery.

17    224.    On or about May 17, 2004, ZIBELL started contacting Plaintiff's stepmother stating

18    Plaintiff's bail premium had to be renewed or they would need a revocation of bail signed

19    by them.  Plaintiff's stepmother refused to sign a revocation of bail.  Plaintiff's step

20    mother advised ZIBELL Plaintiff had just recently undergone Open Heart Surgery and her

21    life was at risk.  ZIBELL threatened Plaintiff's step mother if she did not play the premium

22    on behalf of Plaintiff, he would hire a life flight team and pick Plaintiff up and take her to

23    jail.  ZIBELL further threatened it would cost Plaintiff and Plaintiff's family more than

24    $100,000.00 in costs to have this done.  Plaintiff's parents still refused to pay the

25    additional fee's on behalf of Plaintiff stating her bail did not have to be renewed at that

26    time, as it had not been a year yet.  Not once did VERLINGO or ZIBELL contact Plaintiff.

27    225.    On or about May 2004 USA FEDERAL CREDIT UNION through their New Mexico

28    Attorney, SANCHEZ, served Plaintiff in Santa Fe, NM,  with a Deposition Duces Tecum

Complaint                                    - 55 -

1    in Aid of Judgment.  First Judicial District Court Case #D0101-CV-2004-00-337.

2    226.    On or about May 18, 2004, Judge Sabet placed the motions re: Set aside default judgment,

3    Motion to quash service re: Exam of Judgment Debtor and Motion re: Exam of Judgment

4    Debtor back on the court's calender set for June 09, 2004.

5    227.    On or about May 19, 2004, ZIBELL and VERLINGO showed up in Santa Fe, New

6    Mexico.  Plaintiff's parents met with them.  ZIBELL and VERLINGO again told them if

7    they did not pay the renewal premium in the amount of $25,000.00 on behalf of Plaintiff,

8    they would have Plaintiff picked up by a life flight team and transported back to a

9    California jail.  ZIBELL and VERLINGO again attempted to have Plaintiff's step mother

10    sign a revocation of bail, which they refused.  ZIBELL contacted Plaintiff and never

11    advised her of their attempts to extort money from her family, nor did they advise Plaintiff

12    they were in Santa Fe, New Mexico.

13    228.    In or about May 2004, Plaintiff's criminal attorney sent a letter to VERLINGO, ZIBELL

14    and ALLWAYS FOR-U BAIL BONDS, stating he had filed a motion to have Plaintiff

15    released on her own recognize and stating Plaintiff's bail should not be renewed.  The

16    letter further stated the conversation Plaintiff's attorney had with SECORD regarding their

17    agreement not to have Plaintiff arrested prior to her court hearing.

18    229.    In or about May 2004, ZIBELL started calling Plaintiff's step mother's broker, Bill Torretz

19    in California attempting to to freeze Plaintiff's mother's assets in the amount of

20    $420,000.00 even though Plaintiff's bail was set at $250,000.00.  As a result on May 24,

21    2004, and out of fear, Plaintiff's stepmother, on behalf of Plaintiff, paid the additional bail

22    premium of $25,000.00, which Plaintiff has to reimburse.

23    230.    On or about May 22,  2004, Plaintiff filed a police report with Officer Gallegos with the

24    Santa Fe Police Department,  Report #04–012251 against ALLEN for violation of court

25    orders.

26    231.    On or about June 09, 2004, Plaintiff's civil attorney was present for the hearings regarding

27    the Motions to set aside default judgment, quash service re: examination of judgment

28    debtor, and re: examination of a judgment debtor. Judge Sabet denied Plaintiff's motions.

**Complaint**                                    - 56 -

1    Judge Sabet ordered Plaintiff back on August 09, 2004 for examination of judgment

2    debtor, and notice was to be given by HOUTS.  HOUTS never gave notice regarding this

3    issue, nor was a Notice of Judgment filed

4    232.    Sometime between the end of May 2004 to mid June 2004, ALLEN contacted Officer

5    Gallagos with the Santa Fe Police Department alleging Plaintiff had a felony fugitive

6    warrant for her arrest, approximately two weeks **prior** to the issuance of the second

7    warrant, which is information only SECORD would have known.  The warrant issued on

8    June 30, 2004.

9    233.    On or about June 09, 2004, after oral argument by Plaintiff's counsel, Judge Sabet took

10    judicial notice of the documents illegally obtained from Plaintiff's Paternity Action.

11    Judge Sabet also took judicial notice of the copy of Plaintiff's home loan application,

12    which again was illegally obtained and confidential.   HOUTS stated on record to Judge

13    Sabet  he had obtained the confidential documents February 2004 from the Exhibits in the

14    criminal matter pending against Plaintiff.  Exhibits were not entered until April 2004 after

15    the conclusion of the preliminary hearing process.  HOUTS filed a declaration under the

16    penalty of perjury dated February 02, 2004 stating he had received the confidential

17    documents from the Exhibit file in Plaintiff's unrelated criminal hearings.  However,

18    again, exhibits were never entered in the criminal matter until April 2004 and the

19    Preliminary hearing was not concluded until the end of March 2004.

20    234.    In or about mid June 2004, Officer Gallegos advised Plaintiff ALLEN contacted him,

21    stating LIBERI had a felony warrant for her arrest in California  for fraud crimes she had

22    committed.  Officer Gallegos stated  he ran LIBERI through NCIC and found this

23    information to be untrue.  LIBERI was unaware of the new charges being filed against her

24    in California by SECORD and the only way ALLEN would have known this information

25    is from SECORD.

26    235.    SECORD filed the second set of  charges against LIBERI on June 30, 2004.  LIBERI  is

27    informed, believes and thereon alleges  SECORD and ALLEN conspired together to have

28    LIBERI arrested in New Mexico on this second warrant and for SECORD to help ALLEN

**Complaint**                                - 57 -

1   obtain custody of LIBERI'S minor son out retaliation against LIBERI and done with

2   malice.

3   236.    Plaintiff is informed, believes and thereon alleges SECORD and ALLEN conspired

4   together attempting to to have Plaintiff arrested in New Mexico on this second warrant and

5   for SECORD to help ALLEN obtain custody of Plaintiff's minor son out retaliation

6   against Plaintiff and done with malice.  In fact, there was not a new police report

7   submitted with the second set of charges only a supplemental police report referring back

8   to Case #FWV-028000.

9   237.    On or about June 10, 2004, Plaintiff has presented her claim for the release of confidential

10  information to outside civil counsel,  pursuant to Government Code Section 900, et seq.,

11  which was denied in its entirety.

12  238.    In or about June 30, 2004, Plaintiff is informed and believes and thereon alleges

13  SECORD went forum shopping and obtained a warrant for LIBERI'S  arrest for the **third**

14  time in the amount of $100,000.00, for similar if not the same charges she had been

15  charged with in May 2003.  This warrant was obtained under the name LIBERI,  in the San

16  Bernardino Superior Court, Central District, Case #FSB-044914.  These allegations

17  contained in the Information are as follows:

18      a.      2 counts of P.C. 470(d)         Forgery

19      b.      1 Count of P.C. 472             Forgery of an Official Seal

20      c.      1 Count of P.C. 115(a)          Offer/Etc. False/Forged Instrument to file

21  All of the above charges alleged against Plaintiff also had enhancements added, and a

22  1275.1 hold.  ALLEN was aware of this warrant prior to the actual issuance.  The

23  Information related details regarding a vehicle which was already the subject of the

24  preliminary hearing which took 10 ½ months for SECORD to present.

25  239.    SECORD never contacted Plaintiff's criminal counsel (or any other of Plaintiff's counsel)

26  to discuss and/or inform Plaintiff's counsel he had filed new charges against Plaintiff and

27  there was a warrant for her arrest.

28  240.    On or about July 12, 2004, SECORD had LIBERI arrested at Ontario Airport by

Complaint                                - 58 -

1  LEIBERICH when LIBERI flew in for her Arraignment in the criminal action related

2  herein above, for which she had already been required to post bail.    LIBERI spent 3-1/2

3  weeks incarcerated at the West Valley Detention Center based on the new warrant, and

4  was required to post bail yet again, for the **third** time.  The warrant was based on the

5  allegations of USA FEDERAL CREDIT UNION regarding a vehicle for which SECORD

6  had made already made similar allegations against Plaintiff in the preliminary hearings and

7  based on the arraignment she was appearing for when she arrived at Ontario Airport.

8  241.  Plaintiff requested to see her attorney, who was at WEST VALLEY DETENTION

9  CENTER, however Plaintiff was refused.  Plaintiff advised Defendants WEST VALLEY

10  DETENTION CENTER and LEIBERICH she would not answer questions without her

11  Attorney present.   DOE DEPUTY and LEIBERICH threatened Plaintiff if she did not

12  answer the questions they would input her as a "Jane Doe" which basically means to

13  "lose" Plaintiff in the system so  no one will find her.

14  242.  Plaintiff advised Defendants  she needed to take her heart medications, however, Plaintiff

15  was refused.  Plaintiff was processed and placed in solitary confinement, without a

16  working medical emergency intercom system,  in the Mens section of the WEST

17  VALLEY DETENTION CENTER.  Plaintiff was traveling against medical advice, of

18  which SECORD had been advised and was aware.

19  243.  On or about July 12, 2004 Plaintiff's civil attorney had conversations with VERLINGO

20  regarding posting Plaintiff's additional bail.  VERLINGO agreed there would be no

21  problem with ALLWAYS FOR-U BAIL BONDS to post her additional bail, however,

22  they would need assets to cover the bail amount.

23  244.  Plaintiff's friend offered to place his house up for the collateral of Plaintiff's bail.

24  VERLINGO contacted the friend and obtained the information needed to proceed with the

25  bail paperwork.  Plaintiff's premium to cover this new bail was quoted at $10,000.00.

26  245.  On or about July 13, 2004, Plaintiff was not taken to court due to her incarceration and

27  alleged confusion regarding her whereabouts.

28  246.  BORBA issued a court order for Plaintiff to receive medical attention.  BORBA reset

Plaintiff's court date for July 14, 2004. Plaintiff's counsel was present at this hearing along with ZIBELL and VERLINGO, Plaintiff's bail agents. ZIBELL and VERLINGO approached Plaintiff's attorneys and requested Plaintiff sign a waiver of fees, so they would not have to reimburse Plaintiff for the $25,000.00 premium recently paid, if she was released on her own recognize, and/or received a bail reduction. Plaintiff's attorneys declined this request.

247. On or about July 13, 2004, according to the court minute order, SECORD made an appearance at the SAN BERNARDINO COUNTY SUPERIOR COURT, CENTRAL DIVISION, Department S-21 regarding the second set of charges filed against Plaintiff. Plaintiff was not present for this hearing. The court ruled "Defendant having other cases in Rancho matter is transferred to R2, Defendant ordered to appear, file transferred by DDA SECORD".

248. On or about July 14, 2004, Plaintiff was taken to the San Bernardino County Superior Court, Central District, instead of San Bernardino County Superior Court, Rancho Cucamonga District, where her case was handled. Plaintiff continued telling DOE DEPUTIES, however, they advised Plaintiff they didn't care, it wasn't their problem, Plaintiff should not have committed crimes.

249. On or about July 14, 2004, Plaintiff was finally taken to San Bernardino County Superior Court, RANCHO CUCAMONGA DIVISION, from San Bernardino County Superior Court, CENTRAL DIVISION. Plaintiff saw ZIBELL and VERLINGO walk into the court room with SECORD and LEIBERICH.

250. Plaintiff is informed and believes and thereon alleges because Plaintiff's attorney's declined ZIBELL and VERLINGO'S request for the waiver, they conspired with SECORD to have Plaintiff's current bail exonerated. Plaintiff nor Plaintiff's attorney were ever notified VERLINGO and ZIBELL were attempting to exonerate Plaintiff's bail. There were no motions before the court for bail exoneration, in violation of California Penal Code §1300.

251. ZIBELL and VERLINGO testified untruthfully stating Plaintiff never notified them she

1   had moved.  This was untrue, and Plaintiff's attorney had a copy of the letter and facsimile

2   transmission proving the letter had been sent.  SECORD immediately stated Plaintiff must

3   have manufactured this facsimile transmission.

4   252.   Based on this testimony, BORBA exonerated Plaintiff's current bond in the amount of

5   $250,000.00 without motion or opportunity be heard.

6   253.    SECORD stated to the court Plaintiff should remain in custody because she "forged"

7   documents which contained a government seal (a court seal).  However, Plaintiff had not

8   been tried and/or convicted of this accusation.

9   254.   BORBA took judicial notice of these documents and denied Plaintiff's request for O.R.

10  (Own recognize) BORBA did not give a reason for denying Plaintiff's request for bail

11  reduction and/or O.R. (Own recognize) release, instead BORBA stated Plaintiff's medical

12  condition could be handled by the jail, she had gestational diabetes's when she was

13  pregnant.  BORBA made statements which would lead Plaintiff to believe  she had

14  medical training superior to a doctor.

15  255.   BORBA issued a second court order, stating Plaintiff was to receive medical attention.

16  Plaintiff had not missed any of her court hearings, except for her open heart surgery, which

17  was excused by the court.  Plaintiff did not pose any type of threat to anyone and was not a

18  flight risk.  Furthermore, Plaintiff was not accused of any type of crimes which were

19  supposedly committed during her time on bail.

20  256.   On or about July 14, 2004, Plaintiff started having severe chest pains in the evening.

21  Plaintiff advised DOE DEPUTY, and asked to immediately see medical personnel.

22  Plaintiff was refused medical attention by DOE DEPUTY and was told too bad.  Plaintiff

23  also advised she was not receiving any of her medications for her heart and/or blood

24  pressure.

25  257.   On or about July 15, 2004, Plaintiff again complained of severe chest pains.  Finally,

26  Plaintiff was taken to see LIONG, an oriental man, who plaintiff told she was having

27  severe chest pains.  LIONG ignored plaintiff.  Plaintiff told LIONG all her medications.

28  DOE DEPUTY came up to Plaintiff screaming at Plaintiff for complaining about her

**Complaint**

1    "aches and pains" and Plaintiff was not being cooperative, in front of LIONG. DOE

2    DEPUTY threatened Plaintiff stating she would be locked down and receive no care if she

3    did not shut her mouth. DOE DEPUTY made Plaintiff say "yes ma'am." Plaintiff was

4    taken back to her solitary confinement cell. Plaintiff was given her blood pressure

5    medication this day, and Plaintiff's blood sugars were checked twice, when they should

6    have been checked 4-6 times, however, Plaintiff was still not receiving her heart

7    medications.

8    258.    On or about July 16, 2004, a new female deputy came on duty, this deputy advised

9    Plaintiff she had just returned from vacation. This deputy allowed Plaintiff out of her cell

10    to use the phone. Plaintiff immediately contacted her mother and advised her of the chest

11    pains. Plaintiff also notified her mother her blood sugars had only been checked twice

12    and she was not receiving any of her heart medications. Plaintiff's mother immediately

13    sent a fax to the WEST VALLEY DETENTION CENTER advising this information and a

14    copy to RAMOS.

15    259.    On or about July 17, 2004, WEST VALLEY DETENTION CENTER AND DOE

16    NURSES received the fax from Plaintiff's mother. Plaintiff was called down to the

17    medical unit. Plaintiff's blood pressure was extremely high, and her EKG was abnormal.

18    An ambulance was called and plaintiff was taken to Kaiser Hospital located in Fontana

19    because Arrowhead Regional was unequipped to handle heart problems. Plaintiff was

20    admitted into Kaiser Hospital and was allowed to contact her family, who resides out of

21    state and her attorney. Plaintiff advised her husband she was in the hospital for her heart.

22    Plaintiff was handcuffed to her bed, at her ankle and a deputy sat next to her the entire

23    time. Plaintiff could not even discuss her medical situation with the doctors privately,

24    even though medical information is confidential. Plaintiff was maintained cuffed to her

25    hospital bed with a deputy at her side her entire hospital stay.

26    260.    On or about July 20, 2004, Plaintiff's attorney filed another motion for Plaintiff to be

27    released on O.R. (Own recognize) or for a reduction in bail. BORBA was advised

28    Plaintiff was seriously ill and in desperate need of medical attention. BORBA again

Complaint                                    - 62 -

1    ordered Plaintiff to receive any appropriate medical attention including the Services of a

2    Cardiologist.  BORBA further ordered Plaintiff was to remain at Kaiser Hospital, if

3    appropriate.  BORBA reset the bail hearing for July 21, 2004 and ordered defendant not be

4    transported for the July 21, 2004 bail hearing.

5    261.    On or about July 21, 2004, Bail hearing was heard in Department R2, before Judge

6    BORBA Plaintiff's attorney called Dr. Scott, doctor assigned to Plaintiff at Kaiser

7    Hospital.  Dr. Scott was not paid anything for his appearance.  SECORD displayed

8    unnecessary and unexplainable zeal in attempting to convince the court to keep Plaintiff

9    incarcerated, knowing it was endangering Plaintiff's health.  BORBA disregarded the

10    medical testimony she heard regarding Plaintiff.   BORBA was informed and aware

11    Plaintiff was not receiving her heart medication, and her court orders were not being

12    followed.  BORBA did nothing to protect the health, safety and/or life of Plaintiff.

13    SECORD succeeded in keeping Plaintiff incarcerated.

14    262.    The court contacted WEST VALLEY DETENTION CENTER and was advised by DOE

15    NURSES Plaintiff was receiving all her heart medications, which was untrue.

16    263.    Plaintiff's attorney filed an emergency Writ of Habeas Corpus due to Plaintiff's life

17    threatening medical conditions,  with the California Appellate Court, Division Two

18    located in Riverside, CA.

19    264.    On or about July 23, 2004, Plaintiff was released from Kaiser Hospital and taken back to

20    WEST VALLEY DETENTION CENTER.  Plaintiff was finally allowed to change her

21    insulin pump out, which should have been done days prior.  Plaintiff was taken back to

22    isolation, where she went to sleep.  Plaintiff was not given her heart medications and her

23    blood sugars were never checked, which is extremely important after changing out an

24    insulin pump.

25    265.    On or about July 24, 2004, Plaintiff woke up at about 4:00 A.M. with severe chest pains

26    and vomiting.  Plaintiff attempted to call for help on her emergency medical intercom, but

27    she could not get an answer.  Plaintiff started banging on the doors for help.  Finally, DOE

28    DEPUTY appeared and immediately obtained medical attention for Plaintiff.  Plaintiff was

Complaint                                      - 63 -

placed into an ambulance and taken back to Kaiser Hospital. Kaiser Hospital immediately admitted Plaintiff. Plaintiff was diagnosed with Diabetic Ketoacidosis and cardiac tests were abnormal, showing damage to the heart muscle. Diabetic Ketoacidosis can cause death.

266. Plaintiff was placed in ICU (Intensive Care Unit), handcuffed by her ankle to the bed, with a deputy sitting next to her. Plaintiff begged to be able to call her attorney or family, who resided out of state, to advise she was in ICU at the hospital due to her heart and Ketoacidosis. Plaintiff truly believed she was going to die. DOE DEPUTY refused to allow Plaintiff to call anyone, even her attorney. Plaintiff was hysterical asking DOE DEPUTY, what if she died, DOE DEPUTY was very cold and callus stating your family will eventually find out. Plaintiff asked about her child, DOE DEPUTY stated "what about him, if you die he will eventually find out." Plaintiff had to be sedated.

267. On or about July 24, 2004, Plaintiff was moved from ICU in the early morning to a regular room. Plaintiff woke up during shift change of the deputies. Plaintiff over heard DOE DEPUTY attempting to convince the Hospital doctor to release Plaintiff because DOE DEPUTY did not want to be there. DOE DEPUTY stated she would take Plaintiff to Arrowhead Regional Hospital. The hospital doctor was not comfortable with this. DOE DEPUTY asked the doctor what difference it would make wether it was an ambulance transferring Plaintiff or her. DOE DEPUTY finally convinced the hospital doctor to release Plaintiff to her, again, in violation of a court order.

268. Plaintiff asked to use the restroom, however, her ankle was handcuffed to the bed. DOE DEPUTY told Plaintiff to use a bed pan. DOE DEPUTY told Plaintiff to get dressed or she would take her out of the hospital naked. Plaintiff did as told and placed the dirty jail clothes back on.

269. DOE DEPUTY handcuffed and shackled Plaintiff, around her waist, her ankles and her hands. DOE DEPUTY drug Plaintiff through the hospital, DOE DEPUTY got lost and drug Plaintiff in circles of the hospital for approximately 20 minutes. Plaintiff was having a hard time breathing and had cuts on the back of her ankles from the shackles. DOE

1    DEPUTY kept screaming at Plaintiff "HURRY UP" and was pulling Plaintiff behind her.

2    Plaintiff was placed in the back of a police car, not seat belted, and taken back to WEST

3    VALLEY DETENTION CENTER. Plaintiff was never taken to Arrowhead Regional

4    Medical Center.

5  270.  Once Plaintiff arrived back to WEST VALLEY DETENTION CENTER, she was taken to

6    the medical unit to see the nurse. DOE NURSE took Plaintiff's insulin pump away from

7    her stating she could not have it. Plaintiff advised DOE NURSE there was a court order

8    Plaintiff was to keep her insulin pump in. DOE NURSE stated they did not have to follow

9    any court orders.

10  271.  DEPUTY BRIAN FRATT, who was present, stated he had taken Plaintiff's belongings

11    out of her cell and found a prescription with VOID written across it in a Kaiser Hospital

12    Bag. FRATT questioned Plaintiff as to where this prescription paper came from. Plaintiff

13    advised she could not remember as she had been on heavy narcotic drugs while in the

14    hospital. Plaintiff further told FRATT she was immediately taken back to the hospital and

15    never had the opportunity to look in the hospital bag. FRATT asked DOE NURSE if he

16    was correct Plaintiff was in jail for Fraud, DOE NURSE stated yes that's correct. FRATT

17    told Plaintiff if he finds anything like that again he would charge her with the crime

18    because it's considered contraband.

19  272.  FRATT took Plaintiff to the women's Unit 15, cell E5. Plaintiff advised DOE NURSES

20    and DOE DEPUTIES she has not been and is still not receiving her heart medications.

21    Plaintiff was ignored.

22  273.  Plaintiff was advised by nursing staff and deputies SECORD had been up at the jail stating

23    Plaintiff did not have medical problems, she was a liar and could not be trusted, she had a

24    criminal record in San Antonio, Texas and Plaintiff's husband had just been released from

25    Chino Institute for Men. The nursing staff and deputies advised Plaintiff that is why DOE

26    DEPUTIES and DOE NURSES were making it so hard on her. The nursing staff and

27    deputies also told Plaintiff that is why she is not getting her proper medications and her

28    insulin pump was taken away from her.

274.    On or about July 25, 2004, Plaintiff was served with Ex Parte Notice by the attorney for ALLEN wherein, he was attempting to gain custody of her minor son, Clifford Richardson, while she was incarcerated at West Valley Detention Center. Plaintiff is informed, believes and thereon alleges ALLEN received information regarding Plaintiff's incarceration from SECORD.

275.    On or about July 26, 2004 Plaintiff was placed in her cell in lock down and given a discipline slip accusing Plaintiff of lying to staff. The discipline slip was signed by FRATT. The discipline slip further stated FRATT had advised Plaintiff of this discipline and handed her the report. This was untrue. Plaintiff received the discipline report from Deputy Collins. This report stated FRATT contacted Kaiser Hospital and spoke to Dr. Scott, Dr. Scott stated he voided the prescription form and gave it to Plaintiff because she asked for his name and number. According to this report, Dr. Scott stated he did not have any business cards. FRATT, stated Plaintiff lied to him regarding this issue. Plaintiff asked to see the Sergeant and her attorney, however, Plaintiff was refused. Deputies stated Plaintiff would be seeing a Sergeant within 72 hours. Plaintiff was kept in lock down in her cell for this period of time.

276.    DOE NURSES were refusing to give Plaintiff her correct medication, and trying to give Plaintiff Paxel, and some other drugs, for which Plaintiff had not been prescribed, two of which Plaintiff was allergic too, and was unaware of what the other drugs were.

277.    DOE DEPUTY, a black male, came and handcuffed Plaintiff and told her she was going to see a doctor. Plaintiff asked why she was handcuffed, DOE DEPUTY stated to her because she could not be trusted. Plaintiff was further humiliated by this behavior of DOE DEPUTY.

278.    Plaintiff was taken to see was defendant HEARY, who is not a doctor, but a Nursing Supervisor. HEARY advised Plaintiff her mother had called and was extremely worried about her, and her mother told them Plaintiff was not receiving her heart medications. Plaintiff advised HEARY this information was true she was not receiving her heart medications. HEARY asked what medication she was not receiving, Plaintiff told him the

1    medications she was not receiving.  HEARY  asked Plaintiff, how Plaintiff was doing

2    otherwise. Plaintiff did not respond.  Plaintiff was  taken back to her cell and placed back

3    in lock down.

4    279.    Plaintiff continued advising DOE NURSES she was not receiving her heart medications.

5    Plaintiff was told it was because they did not have the medications there available.

6    Plaintiff continued advising this was affecting her heart and life.  Plaintiff also advised

7    medical personnel her blood sugars were not being checked as required by her doctors, and

8    when they did check her blood sugars, they were extremely high, which was also very

9    dangerous to her life.   Plaintiff was told they get to it when they can and the jail was not

10    set up to handle a person with the type of medical problems Plaintiff had.

11    280.    On or about July 27, 2004 Plaintiff was called down to the day room to speak with the

12    Sergeant.  The Sergeant read the report, and asked Plaintiff what happen.  Plaintiff

13    explained.   The Sergeant looked at the deputies with him and asked "Who wrote this"

14    Plaintiff told him it was FRATT.  The Sergeant laughed and over turned the discipline.

15    Plaintiff asked the Sergeant what that meant, the Sergeant explained she was no longer in

16    lock down and the write up was void, as if all of this was nothing but a game.

17    281.    On or about July 28, 2004, Plaintiff was called for court.  DOE DEPUTY told Plaintiff to

18    go back to her cell she was on special transportation and would be called when her

19    transportation arrived.  Plaintiff was never called for court.  Plaintiff asked a deputy why

20    she was not taken to court.  Plaintiff was told she was placed on special transportation and

21    it was up to the District Attorney's office to provide transportation.  Plaintiff's attorney

22    was present at the court hearing and stated when DOE NURSES were asked if Plaintiff

23    was receiving her heart medications, they informed the court she was.

24    282.    On or about July 28, 2004, Plaintiff's attorney filed another motion to request Plaintiff to

25    be released on O.R. (own recognize) or a reduction in the bail amount.  This hearing was

26    continued to August 4, 2004.

27    283.    Plaintiff's family contacted bail agents to post bail for Plaintiff.  Each time the bail bond

28    company would contact the jail, they were told Plaintiff had **no bail**.  The bond companies

Complaint                                    - 67 -

1    contacted Plaintiff's family back advising until Plaintiff went to court and was granted a

2    bail, they could not assist in any way.

3    284.    Scott Mehr of Steven Scott Mehr Bailbonds contacted SECORD and met with him

4    regarding Plaintiff's bail and the 1275.1 hold.  SECORD demanded proof of all funds for

5    both cases, even though there was not a 1275.1 hold on the $250,000.00 bail.   SECORD

6    stated to Scott Mehr he would release the hold once all demands were met.

7    285.    Scott Mehr contacted SECORD advising him all his terms had been met.  SECORD made

8    an appointment with Scott Mehr to go over all paperwork in order to lift the hold.  Scott

9    Mehr appeared for his appointment with SECORD at the SAN BERNARDINO COUNTY

10    DISTRICT ATTORNEY'S OFFICE, however, SECORD was not there which meant that

11    Plaintiff would be incarcerated even longer.

12    286.    On or about August 2, 2004, Plaintiff was called for court again.  Plaintiff was taken down

13    to the holding area with approximately 100 other females, crammed in a small cell,

14    waiting to be transported to court.  It was very hot, and Plaintiff began sweating and

15    having a hard time breathing.  The other inmates started calling for help.  DOE DEPUTY

16    was standing behind Plaintiff stating "it must be nice to fake your medical," "nothing is

17    wrong with you, your just faking."

18    287.    Plaintiff was seen by the nurse and the nurse immediately contacted an ambulance.

19    Plaintiff was placed in the ambulance and an IV was started.  The ambulance personnel

20    called to find out where to take Plaintiff.  The ambulance personnel was instructed to take

21    Plaintiff to Kaiser Hospital because Arrowhead Regional was not set up to handle a person

22    with a heart condition.

23    288.    DOE DEPUTIES attempted to force Plaintiff to sign an A.M.A. (Against Medical Advice)

24    form so the ambulance would take Plaintiff to Arrowhead Regional instead of Kaiser

25    Hospital.  Plaintiff refused.  DOE DEPUTIES became even more hostile toward Plaintiff.

26    289.    On or about August 4, 2004 Plaintiff was taken to court for her bail hearing.  Scott Mehr

27    was present with Plaintiff's attorney.  SECORD was present with Thomas Rice from the

28    Department of Insurance, HEARY, and LEIBERICH.  HEARY testified Plaintiff's insulin

**Complaint**                - 68 -

1    pump was taken away from her due to a doctor's medical order.  HEARY was asked if he

2    had a copy of the medical order signed by the doctor.  HEARY looked through his file and

3    stated he did not have an order signed by a medical doctor, but did have an order signed by

4    a jail nurse.  HEARY was asked about Plaintiff's blood sugars, HEARY stated Plaintiff's

5    blood sugars had run in the 500 range which is extremely high and dangerous.  When

6    HEARY was asked to produce the blood sugar logs, HEARY testified he could not

7    because he did not have them.  HEARY was  asked if Plaintiff was receiving her heart

8    medication and HEARY testified no.

9    290.    LEIBERICH  took the stand and testified under oath he showed Plaintiff the warrant and

10    search warrant, and allowed Plaintiff to read them, which was untrue.  LEIBERICH

11    testified he did not read Plaintiff her Miranda Rights.  LEIBERICH testified Plaintiff was

12    on the phone with her attorney when he arrested her.  Scott Mehr testified on behalf of

13    Plaintiff regarding having the 1275.1 hold removed.

14    291.    SECORD proceeded to tell the court Scott Mehr had made arrangements with Plaintiff to

15    show the court her mother paid the $8,000.00 premium on her credit card, but  Scott Mehr

16    would kick the $8,000.00 dollars back.  This was all untrue,   SECORD  stated he had a

17    jail tape with this conversation on it, however, SECORD only played approximately 20

18    seconds of the tape in order to deceive the court.  SECORD accused Scott Mehr of

19    violating codes of the Department of Insurance stating Scott Mehr was refunding 2% of

20    the premium to the Plaintiff.  Scott Mehr testified all monies had been paid, where the

21    money came from, and the 2% rebate was legal per a new statute was passed.

22    292.    SECORD  placed his witness, Mr. Thomas Rice from the Department of Insurance on the

23    stand.  SECORD had Mr. Rice testify there was no such statute on the Department of

24    Insurance Books, which was untrue.  This law did pass and is currently on the books

25    today.  SECORD  attempted to have Plaintiff's bail raised to $750,000.00 stating to the

26    court Plaintiff was threatening her sister, which was one of his witnesses.  SECORD

27    further stated to the court he had a jail tape of Plaintiff threatening this person to her

28    mother.  This tape was never produced, because this tape did not exist.  Plaintiff's attorney

Complaint                                    - 69 -

1    said to the Judge he had never seen such **vindictive** behavior and everything SECORD

2    was doing was **extremely vindictive** against his client.  Plaintiff's attorney  immediately

3    requested a court order SECORD not be allowed to listen to any conversations between

4    Plaintiff and her attorneys.

5    293.    Judge Pacheco denied SECORD's request for bail enhancement and removed the 1275.1

6    hold.  Judge Pacheco  asked Steve Mehr if he was posting Plaintiff's bail and Scott replied

7    yes.  SECORD did everything in his power attempting to to get Plaintiff's bail bondsman

8    in trouble and have his license taken away from him, attempting to to keep Plaintiff

9    incarcerated. SECORD'S behaviors embarrassed Scott Mehr and his Company, Scott

10   Mehr worked with Thomas Rice in stopping the fraudulent bail bond companies..

11   294.    Plaintiff is informed and believes and thereon alleges  SECORD was telling the court

12   personnel he had  pictures of her doing something with her insulin pump.

13   295.    Plaintiff is informed and believes and thereon alleges  SECORD contacted Scott Mehr,

14   Plaintiff's Bail Bondsman stating Plaintiff was a flight risk, she had a criminal record in

15   San Antonio, Texas and her husband had just been released from Chino Institute for Men.

16   SECORD further stated to Scott Mehr if he posted Plaintiff's bail, Plaintiff would violate

17   it and he would incur a loss.

18   296.    On or about August 5, 2004 at 8:00 A.M. Scott Mehr posted Plaintiff's bail at the San

19   Bernardino County Superior Court, Rancho Cucamonga District, in the total amount of

20   $350,000.00.  Plaintiff was supposed to be released from WEST VALLEY DETENTION

21   CENTER by noon.  Plaintiff was not released.  Plaintiff called her mother, and advised she

22   was still at WEST VALLEY DETENTION CENTER.

23   297.    Plaintiff's mother immediately contacted a Sergeant at the WEST VALLEY DETENTION

24   CENTER, who advised Plaintiff would be out by 6:00 P.M.  Plaintiff was  called to the

25   nurses station where she was supposed to check her blood sugar.  Plaintiff took her cotton

26   ball from the tray where she checks her blood sugars, for her bleeding finger and DOE

27   DEPUTY in the bubble started screaming at Plaintiff to get out of the nurses station.

28   Plaintiff did as she was instructed.

**Complaint**                                    - 70 -

298.   Plaintiff, while waiting at the nurses station was approached by DOE DEPUTY, a male, when Plaintiff asked for a grievance form. DOE DEPUTY refused stating the reason this incident occurred was due to a security issue and he would be the one who responded to the grievance. DOE DEPUTY, who was a man, searched Plaintiff, stating DOE DEPUTY in the bubble saw Plaintiff take something when the nurse's back was turned. Plaintiff said yes, she took her cotton ball which she was supposed to take, yet again unnecessarily harassing Plaintiff.

299.   DOE DEPUTY escorted Plaintiff back to the day-room, and as soon as Plaintiff walked through the entrance, DOE DEPUTY, a ethnic female, race unknown, in the bubble, started screaming at Plaintiff stating this was not the Hyatt Regency, if she didn't like the rules, stop committing crimes.

300.   DOE DEPUTY locked Plaintiff down. Plaintiff requested one of the other inmates to call her mother, and advise Plaintiff was lock downed for no reason, which they did. Plaintiff was released from lock down for dinner. After dinner, Plaintiff was in her cell and locked back down by DOE DEPUTY in the bubble. DOE DEPUTY came on the emergency medical intercom system in Plaintiff's cell screaming at Plaintiff, "you think your getting out but you're not," again unnecessarily harassing Plaintiff without cause.

301.   Approximately two hours later, DOE DEPUTY came on the intercom again asking Plaintiff for a contact person. Plaintiff gave her names and phone numbers. Plaintiff was called and told to "role it up" which meant Plaintiff was going home. Plaintiff was taken down to the medical unit to see the nurse. She saw the nurse and Plaintiff was finally released from WEST VALLEY DETENTION CENTER at approximately 10:00 P.M.

302.   On or about August 6, 2004 Plaintiff had a criminal court date. Plaintiff's court date was rescheduled for September 10, 2004 due to Plaintiff's medical condition. SECORD was instructed to return Plaintiff's drivers license to her attorney. SECORD argued with the court he should not be required to turn over Plaintiff's drivers license. BORBA stated due to Plaintiff's medical condition and her doctor appearances she will need her identification.

303.   On or about August 9, 2004, SECORD appeared at Plaintiff's Ex-Parte hearing regarding Plaintiff's paternity action, acknowledged ALLEN'S presence, as if he knew him, attempted to intimidate and harass Plaintiff, by chasing her down the hall and attempting to communicate with her, even though SECORD was aware Plaintiff was represented by counsel.

304.   Plaintiff did not appear at the August 9, 2004 civil hearing regarding the Judgment Debtor's Examination.  Plaintiff and/or Plaintiff's counsel were never served with notice and Plaintiff's  medical situation was deteriorating and Plaintiff needed to get home to see her health care providers immediately.

305.   On or about August 2004, USA FEDERAL CREDIT UNION through HOUTS, served Plaintiff through the US Postal Service in Santa Fe, NM, with a Writ of Execution of a Money Judgment along with a Declaration of Accrued Interest.

306.   In or about August 2004, Plaintiff received a declaration from ALLEN, which was filed in San Bernardino County Superior Court, Rancho Cucamonga  District, Case #RFL-034080. In his declaration, which was signed under penalty of perjury, ALLEN states in December 2003, BROWN, during a criminal matter relating to ALLEN, advised ALLEN and his counsel  Plaintiff had a pending criminal matter before him.  BROWN was the convicting Judge against ALLEN on felony charges of burglary, of which Plaintiff and her minor son were the victims.  BROWN was also the convicting Judge of ALLEN during his revocation of probation hearings for stalking, harassing, and following Plaintiff and her minor child.  One of ALLEN'S terms and conditions of his felony probation was not to have any contact with Plaintiff's and not to contact Plaintiff.  Because of the nature of the crimes against Plaintiff and her minor son, the California Secretary of State approved and issued a "confidential address" to Plaintiff, her husband and her minor child.  Despite all this, BROWN, according to ALLEN'S declaration, gave information to ALLEN regarding Plaintiff before Plaintiff's preliminary hearing had ever been concluded.

307.   In addition, ALLEN stated in his declaration he had requested the Santa Fe Police Department to do a welfare check on Minor, Clifford Richardson.  The declaration further

Complaint                                         - 72 -

states law enforcement went to Plaintiff's address located at #4 Bonito Court, Santa Fe, NM 87508 and the house appeared to be abandoned. Plaintiff had not resided at this address for approximately seven months.

308. On or about August 10, 2004, after Plaintiff returned home in New Mexico, her physician advised Plaintiff she had suffered a **Myocardial Infarction** and it affected her bypass area to the extent the area was again blocked. Dr. Brown further advised Plaintiff since she had open heart surgery and was allergic to the beta blocker medication, the heart was unprotected and the heart medications she was on were extremely important for her to take. Dr. Brown further advised Plaintiff the trauma she had been through with her incarceration, caused her bypassed area to shut down, thus causing a <u>Myocardial Infarction</u> (heart attack). Dr. Brown immediately contacted Dr. Soto to schedule another Angiogram.

309. On or about August 10, 2004, Plaintiff received a call from Officer Gallegos of the Santa Fe Police Department stating he had received a fax from ALLEN requesting a welfare check of their minor son. Plaintiff gave Officer Gallegos her address and requested it be kept confidential. Officer Gallagos appeared with Corporal Bill Rich from the Santa Fe Sheriff's Department, as Plaintiff resided outside the city limits of Santa Fe. Both Officer Gallegos and Corporal Rich talked with Plaintiff's son and advised Plaintiff needed to obtain a restraining order against ALLEN.

310. Plaintiff also learned ALLEN stated to Officer Gallegos he did not have a contact number for his son and had not seen him for several months. Plaintiff informed Officer Gallegos she had just returned home from Family Law Court in California with ALLEN. Plaintiff informed Officer Gallegos ALLEN in fact had a phone number and showed a federal express slip from ALLEN which had Plaintiff's phone number on it. Corporal Rich stated the Santa Fe Sheriff's Department would not accept any other calls from ALLEN as it appeared to be just harassment. Plaintiff was again instructed to obtain a restraining order against ALLEN. Corporal Rich also explained to Plaintiff a Sheriff's Sargent lived down the street from her and he was requesting increased patrol of her home.

311. On or about August 11, 2004, Plaintiff contacted the dispatch center for the City of Santa Fe Police Department and the County of Santa Fe Sheriff's Department to find out if a call

had ever come in for a welfare check of her minor son by ALLEN.  Plaintiff was informed the **only** call they had received from ALLEN was on August 7, 2004 and a facsimile transmission addressed to Officer Gallegos on August 10, 2004.  Dispatch further informed Plaintiff they ran her old address of #4 Bonito Court, Santa Fe, NM 87508 and no law enforcement personnel had been dispatched to the address prior to August 07, 2004.  Plaintiff obtained a declaration from Deputy Robert Salas with the Dispatch Center stating this information.  This was a concern for Plaintiff as it appeared, according to ALLEN'S July 2004 declaration, the only way he would have known Plaintiff did not reside at #4 Bonito Court, Santa Fe, NM 87508 was if he had been watching the house and stalking her again or if SECORD had given him the information, again threatening Plaintiff's safety.

312.   On or about August 11, 2004,  LIBERI contacted Corporal Rich from the Santa Fe Sheriff's Department.  Corporal Rich  stated  Officer Gallegos mentioned  he was filing a report against ALLEN for using a law enforcement agency to stalk Plaintiffs.

313.   In or about August 2004, Plaintiff was scheduled for an angiogram, and her doctor found part of the bypassed artery had closed down.

314.   On or about September 8, 2004, Plaintiff's civil attorney, Michelle D. Strickland was served at her residence at night with a subpoena from SECORD, ordering her to appear for the criminal court date on September 10, 2004 regarding Plaintiff.  Plaintiff is informed and believes and thereon alleges  SECORD was attempting to intimidate Ms. Strickland, as he had Ms. Strickland's office address and made no attempt to serve her at her office.

315.   In or about September 2004, BORBA was sent a letter from Plaintiff's treating physician.  This letter stated Plaintiff could not travel as he felt it would be a life threatening commission.  This letter further advised  Plaintiff suffered a Myocardio Infarction (heart attack) during her incarceration.  The letter also reminded BORBA  when Plaintiff was arrested in July, she was traveling against medical advice.

316.   In or about September 10, 2004, Attorney Strickland appeared at the criminal court hearing.  Plaintiff was unable to be present due to the severe damage caused to her heart during her incarceration at West Valley Detention Center.  SECORD was present with a

deputy to have Plaintiff arrested, knowing of the recent injuries to Plaintiff's heart. Plaintiff's counsel learned Judge Sabet issued a bench warrant in the amount of $2,000.00 for Plaintiff's non appearance at the Examination of Judgment Debtor. This was the first notice Plaintiff had of this $2,000.00 bench warrant. The deputy stated Judge Sabet ordered him to contact New Mexico, have Plaintiff picked up on this $2,000.00 bench warrant, held in the New Mexico jail and extradited back to California.

317. In or about September 27, 2004, Plaintiff's civil attorney filed an Ex Parte Motion to Quash Service of a Debtors Exam and Recall the Bench Warrant. Plaintiff's Ex Parte application was denied, however, it was set for hearing on November 10, 2004.

318. On or about September 28, 2004, Plaintiff had a court hearing for her paternity matter, however, due to Plaintiff's medical status, she was unable to appear. Plaintiff was advised by her attorney SECORD appeared at this hearing with a Deputy from the San Bernardino Sheriff's Department. Plaintiff is informed, believes, and therefore alleges SECORD was present at this hearing to have Plaintiff arrested on this bench warrant, on behalf of USA Federal Credit Union and to assist ALLEN, who was again attempting to obtain custody of Plaintiff's minor child, Clifford Richardson.

319. On or about October 28, 2004, Plaintiff received Randolph C. Houts Opposition, which was filed with the Court October 18, 2004, regarding the civil matter entitled USA Federal Credit Union v. Liber, et. al., San Bernardino County Superior Court Case #RSCVS 061592 on a Motion to Recall Bench Warrant and Motion Quashing the Application for Examination of Judgment Debtor. Mr. Houts states in his declaration he has been attempting to serve Plaintiff with the Bench Warrant in the hall of the San Bernardino County Superior Court, Rancho Cucamonga District, when she appeared for litigation in separate matters. Mr. Houts also stated in his declaration he and Defendant USA Federal Credit Union have been informed Plaintiff was in fact present in Department R-17 of this court on August 9, 2004, for case #RFL-034080. HOUTS further states in his declaration he and USA Federal Credit Union have been informed the county, for Plaintiff's benefit, is pursuing ALLEN to establish paternity and seek monetary relief, Case No. RFL034080. All of this information could have only been obtained by and from SECORD.

**Complaint**                                    - 75 -

320.    On or about November 10, 2004, Plaintiff's civil attorney appeared for the hearing on the Motion to Quash Service of the Debtors Exam and Recall the Bench Warrant, San Bernardino Superior Court Case #RCVRS 061592.  Plaintiff's motion was granted, the bench warrant was recalled and the Service of the Debtors Exam was quashed.

321.    On or about January 29, 2005 Plaintiff received documentation from the attorney handling her paternity action.  Contained therein was a declaration by ALLEN which noted a list of witnesses which include among other names, LEIBRICH, who is a SAN BERNARDINO COUNTY DISTRICT ATTORNEY'S OFFICE Investigator, HOWE, who is a DMV Investigator and  JOHN HEARY, who is the nursing supervisor at West Valley Detention Center.  The list of witnesses are names who are potential witnesses SECORD, the deputy district attorney, has stated will be called as witnesses in the pending criminal action against Plaintiff.   Plaintiff is informed, believes and thereon alleges witness information is not public record and could have only been obtained from SECORD.

322.    Plaintiff alleges  the prosecution against Plaintiff is retaliatory.   The first arrest on January 15, 2002 was after Plaintiff filed complaints against Detective Paul Morrison with the San Bernardino County Board of Supervisors and the FBI.   No charges were ever filed against Plaintiff resulting from that arrest.   The first criminal case was filed May 9, 2003 against Plaintiff after she filed a lawsuit against the County of San Bernardino, San Bernardino county Sheriff's Department, City of Rancho Cucamonga, Detective Morrison, Deputy Girard, and Detective Skaturo on January 14, 2003.  The second arrest and  second set of charges were filed against Plaintiff after she filed a Government Claim dated June 10, 2004 and signed for by the San Bernardino County District Attorney's Office on June 17, 2004  for the illegal access of Plaintiff's confidential Paternity Action and sharing of confidential information with outside parties, which was illegally taken from Plaintiff's confidential Paternity Action.   All Defendants' have gone to extreme lengths in order to harm and destroy Plaintiff.

323.    Plaintiff is informed, believes and thereon alleges the actions and criminal filings are retaliatory against Plaintiff for exercising her rights to redress.

# FIRST CAUSE OF ACTION
## Invasion of Privacy

(Violation of the First and Fourteenth Amendments
Against All Defendants)

324.  Plaintiff incorporates and re-alleges the preceding paragraphs as if fully set out herein.

325.  Defendants shared private information of Plaintiffs with ALLEN, knowing Plaintiff was
      the victim of ALLEN'S crimes.  Plaintiff is informed, believes and thereon alleges
      SECORD gave ALLEN her address information.  SECORD was aware  Plaintiff had a
      confidential address due to ALLEN'S crimes.

326.  Defendants' shared private information of Plaintiff's with HOUTS and USA FEDERAL
      CREDIT UNION to aid them in a civil judgment against Plaintiff.

327.  HOUTS on behalf of  USA FEDERAL CREDIT UNION filed declarations and attached
      the confidential private information illegally obtained in an unrelated Civil matter.

328.  HOUTS on behalf of USA FEDERAL CREDIT UNION sent the illegally obtained
      confidential information of Plaintiff's to Attorney Alfred Sanchez in New Mexico to aid in
      his collection of a default judgment.

329.  SECORD, LEIBERICH and the SAN BERNARDINO COUNTY DISTRICT
      ATTORNEY'S OFFICE conspired with ALLEN to have witnesses from the pending
      criminal action against Plaintiff as witnesses in Plaintiff's confidential paternity action.
      These witnesses are irrelevant to the paternity action and were only introduced in order to
      aid ALLEN in his continuing harassment of Plaintiff to try to obtain custody of their minor
      child.

330.  Sometime between the end of May 2004 to mid June 2004, ALLEN contacted Officer
      Gallagos with the Santa Fe Police Department alleging  Plaintiff had a felony fugitive
      warrant for her arrest, approximately two weeks **prior** to the issuance of the second
      warrant, which is information only SECORD would have known.  The warrant issued on
      June 30, 2004.

331.  SECORD and HOUTS knew or should have known their actions, as stated herein, violated
      California *Business and Professions Codes* §§6068, 6106, and 6128.

332.  BORBA, and RAMOS were aware of the violations of these laws and did nothing to

uphold the laws, in violation of the California Business and Professions Code §§6068, 6106, and 6128.

333.    The Defendants' acts were intentional and done in violation of Plaintiff's legal and Constitutional rights, and have directly and proximately caused Plaintiff humiliation, mental pain, intentional inflictions of emotional distress, negligent infliction of emotional distress, injury and harm to Plaintiff's health and body civil and constitutional rights violations, and the invasion of privacy, and has cost Plaintiff excessive amounts of money, placing Plaintiff and Plaintiff's family in financial hardship.

## SECOND CAUSE OF ACTION

### Right to Privacy

(Violation fo the First and Fourteenth Amendments
Against All Defendants)

334.    Plaintiff incorporates and realleges the preceding paragraphs as if fully set out herein.

335.    Defendants shared Plaintiff's private and confidential information with ALLEN, knowing Plaintiff was the victim of ALLEN'S previous crimes. Plaintiff is informed, believes and thereon alleges SECORD gave ALLEN Plaintiff's home address information. SECORD was aware Plaintiff had a confidential address because of ALLEN'S past crimes against Plaintiff.

336.    As previously stated herein, Defendants' shared private information of Plaintiff's with HOUTS and USA FEDERAL CREDIT UNION to aid them in a civil judgment against Plaintiff.

337.    As previously stated herein, HOUTS on behalf of USA FEDERAL CREDIT UNION filed declarations and attached the confidential private information illegally obtained in an unrelated Civil matter.

338.    As previously stated herein, HOUTS on behalf of USA FEDERAL CREDIT UNION sent the illegally obtained confidential information of Plaintiff's to Attorney Alfred Sanchez in New Mexico to aid in his collection of a default judgment.

339. As previously stated herein SECORD, LEIBERICH and the SAN BERNARDINO COUNTY DISTRICT ATTORNEY'S OFFICE conspired with ALLEN regarding witness lists in order to harass Plaintiff in the paternity action herein referenced.

340. As previously stated herein ALLEN acquired and used information obtained from SECORD regarding a felony warrant to urge Santa Fe Police Department to arrest Plaintiff, which is the same sort of harassment which Plaintiff has endured for years.

341. SECORD and HOUTS knew or should have known their actions, as stated herein, violated California *Business and Professions Codes* §§6068, 6106, and 6128.

342. BORBA, and RAMOS were aware of the violations of these laws and did nothing to uphold the laws, in violation of the California Business and Professions Code §§6068, 6106, and 6128.

343. The Defendants' acts were intentional and done in violation of Plaintiff's legal and Constitutional rights, and have directly and proximately caused Plaintiff humiliation, mental pain, intentional inflictions of emotional distress, negligent infliction of emotional distress,  injury and harm to Plaintiff's health and body civil and constitutional rights violations, and the invasion of privacy, and has cost Plaintiff excessive amounts of money, placing Plaintiff and Plaintiff's family in financial hardship.

### THIRD CAUSE OF ACTION

**Violation of Equal Protection and Non-Discriminatory Police Services Rights**

(In Violation of the First and Fourteenth Amendments
Against All Defendants)

344. Plaintiff incorporates and realleges the preceding paragraphs as if fully set out herein.

345. Defendants, in retaliation brought charges against Plaintiff for allegations of fraud, forgery and other alleged crimes, instead of pursuing those actions against ALLEN.

346. Defendants refused Plaintiff the same rights secured to her during the criminal court proceedings.

347. As previously stated herein, Defendants' shared private information of Plaintiff's with HOUTS and USA FEDERAL CREDIT UNION to aid them in a civil judgment against

Plaintiff.

348. SECORD, LEIBERICH, SAN BERNARDINO COUNTY DISTRICT ATTORNEY'S OFFICE and HOUTS conspired with WEVELY and ROSAS to mis-state their testimony in the preliminary hearing phase of the criminal action pending against Plaintiff.

349. In violation of court orders, HOUTS and WEVELY reviewed and discussed documents pertaining to the criminal action pending against Plaintiff prior to WEVELY'S testimony in the preliminary hearing.

350. As previously stated herein SECORD, LEIBERICH and the SAN BERNARDINO COUNTY DISTRICT ATTORNEY'S OFFICE conspired with ALLEN regarding witness lists in order to harass Plaintiff in the paternity action herein referenced.

351. As previously stated herein ALLEN acquired and used information obtained from SECORD regarding a felony warrant to urge Santa Fe Police Department to arrest Plaintiff, which is the same sort of harassment which Plaintiff has endured for years.

352. ALLEN conspired with SECORD, the SAN BERNARDINO COUNTY DISTRICT ATTORNEY'S OFFICE, the SAN BERNARDINO COUNTY SHERIFF'S DEPARTMENT and LEIBERICH to have criminal charges brought against Plaintiff based on unsubstantiated and false allegations of fraudulent activity made by ALLEN against Plaintiff, used to try to convince the court (unsuccessfully) to award custody of Plaintiff's minor child to ALLEN.  ALLEN began making accusations in 1992.

353. SECORD and HOUTS knew or should have known their actions, as stated herein, violated California *Business and Professions Codes* §§6068, 6106, and 6128.

354. BORBA, and RAMOS were aware of the violations of these laws and did nothing to uphold the laws, in violation of the California Business and Professions Code §§6068, 6106, and 6128.

355. The Defendants' acts were intentional and done in violation of Plaintiff's legal and Constitutional rights, and have directly and proximately caused Plaintiff humiliation, mental pain, intentional inflictions of emotional distress, negligent infliction of emotional distress,  injury and harm to Plaintiff's health and body civil and constitutional rights violations, and the invasion of privacy, and has cost Plaintiff excessive amounts of money,

placing Plaintiff and Plaintiff's family in financial hardship.

## FOURTH CAUSE OF ACTION

### Rights Against Self Incrimination

(In Violation of the Fifth Amendment of the U.S. Constitution)
(Against SECORD, SAN BERNARDINO COUNTY DISTRICT ATTORNEY'S OFFICE, ALLEN, HOUTS, ROSAS and USA FEDERAL CREDIT UNION)

356. Plaintiff incorporates and realleges the preceding paragraphs as if fully set out herein.

357. Defendants, as favors granted by the courts, were attempting to force Plaintiff to testify in a Debtor's Examination in a civil matter and court hearings regarding Plaintiff's paternity action, to the accusations presented during the criminal court proceedings.

358. RAMOS, SECORD and HOUTS knew or should have known their actions, as stated herein, violated California *Business and Professions Codes* §§6068, 6106, and 6128.

359. The Defendants' acts were intentional and done in violation of Plaintiff's legal and constitutional rights, and have directly and proximately caused Plaintiff humiliation, mental pain, intentional inflictions of emotional distress, negligent infliction of emotional distress, injury and harm to Plaintiff's health and body, civil and constitutional rights violations, and the invasion of privacy, and have cost Plaintiff excessive amounts of money, placing Plaintiff and Plaintiff's family in financial hardship.

## FIFTH CAUSE OF ACTION

### Twice Placed in Jeopardy for the Same Accused Offense

(In Violation of the Fifth Amendment of the U.S. Constitution)
(Against SECORD, RAMOS, SAN BERNARDINO COUNTY DISTRICT ATTORNEY'S OFFICE, HOUTS, WEVELY, ROSAS and USA FEDERAL CREDIT UNION)

360. Plaintiff incorporates and realleges the preceding paragraphs as if fully set out herein.

361. SECORD filed charges against Plaintiff for Grand Theft Auto of automobiles and also filed charges for Grand Theft of the loans for the same automobiles.

362. As previously stated herein SECORD, through the SAN BERNARDINO COUNTY

DISTRICT ATTORNEY'S OFFICE conspired with HOUTS, and ROSAS on behalf of USA FEDERAL CREDIT UNION,  in order to fabricate a second set of charges in Case #FSB-044914, which included an accusation for grand theft of a 2001 Camaro Z-28, which Plaintiff was charged with in Case #FWV-028000 and had been litigating since May 2003 and which were filed by SECORD.

363.   As previously stated herein SECORD went forum shopping and obtained a warrant for LIBERI'S  arrest for the **third** time in the amount of $100,000.00, which included an accusation for grand theft of a 2001 Camaro Z-28, which Plaintiff was charged with in Case #FWV-028000 and had been litigating since May 2003 and which were filed by SECORD.

364.   Plaintiff is informed, believes and thereon alleges  SECORD obtained this second warrant out of retaliation for the claims Plaintiff  filed against him, as stated herein previously.

365.   SECORD, through the SAN BERNARDINO COUNTY DISTRICT ATTORNEY'S OFFICE conspired with HOUTS, and ROSAS on behalf of USA FEDERAL CREDIT UNION,  in order to fabricate a second set of charges in Case #FSB-044914, which included an accusation for grand theft of a 2001 Camaro Z-28, which Plaintiff was charged with in Case #FWV-028000 and had been litigating since May 2003 and which were filed by SECORD.

366.   USA FEDERAL CREDIT UNION, ROSAS, and WEVELY were aware  criminal charges had been filed against Plaintiff twice for the same accusations as they were the "supposed" victim.  USA FEDERAL CREDIT UNION, ROSAS, and WEVELY conspired and cooperated with SECORD and mis-stated facts to the San Bernardino Superior court, RANCHO CUCAMONGA DISTRICT during the pendency of Plaintiff's preliminary hearing.

367.   HOUTS, RAMOS and SECORD knew or should have known their  actions, as stated herein, violated California *Business and Professions Codes* §§6068, 6106, and 6128.

368.   The Defendants' acts were intentional and done in violation of Plaintiff's legal and constitutional rights, and have directly and proximately caused Plaintiff humiliation,

mental pain, intentional inflictions of emotional distress, negligent infliction of emotional distress, injury and harm to Plaintiff's health and body, civil and constitutional rights violations, and the invasion of privacy, and have cost Plaintiff excessive amounts of money, placing Plaintiff and Plaintiff's family in financial hardship.

## SIXTH CAUSE OF ACTION

### Deprivation of Life, Liberty and Property without proper Due Process

(In Violation of the Fifth Amendment of the U.S. Constitution)
(Against SECORD, RAMOS, SAN BERNARDINO COUNTY DISTRICT ATTORNEY'S OFFICE, HOUTS, WEVELY, ROSAS, and USA FEDERAL CREDIT UNION)

369.    Plaintiff incorporates and realleges the preceding paragraphs as if fully set out herein.

370.    As previously stated herein, SECORD obtained a second warrant for Plaintiff's arrest with full knowledge that Plaintiff was ready and willing to appear for her next hearing, as previously stated herein.

371.    Plaintiff is informed, believes and thereon alleges  SECORD obtained this second warrant out of retaliation for the claims Plaintiff filed against him.

372.    SECORD, through the SAN BERNARDINO COUNTY DISTRICT ATTORNEY'S OFFICE conspired with HOUTS, and ROSAS on behalf of USA FEDERAL CREDIT UNION,  in order to fabricate a second set of charges in Case #FSB-044914, which included an accusation for grand theft of a 2001 Camaro Z-28, which Plaintiff was charged with in Case #FWV-028000 and had been litigating since May 2003 and which were filed by SECORD.

373.    SECORD ignored Plaintiff's  right to Due Process by failing to recognize the right to notice and an opportunity to be heard regarding the dissemination of Plaintiff's home loan application to HOUTS to use in a civil proceeding to aid USA FEDERAL CREDIT UNION in a civil judgment against Plaintiff.

374.    SECORD ignored Plaintiff's right to Due Process by failing to recognize the right to notice and an opportunity to be hard regarding the sealing of civil files.

375.   USA FEDERAL CREDIT UNION through HOUTS, WEVELY and ROSAS testified untruthfully in declarations and before the San Bernardino Superior Court, RANCHO CUCAMONGA DISTRICT in order to obtain a default judgment and in attempts to obtain a conviction against Plaintiff.

376.   HOUTS, RAMOS and SECORD knew or should have known their actions, as stated herein, violated California *Business and Professions Codes* §§6068, 6106, and 6128.

377.   The Defendants' acts were intentional and done in violation of Plaintiff's legal and constitutional rights, and have directly and proximately caused Plaintiff humiliation, mental pain, intentional inflictions of emotional distress, negligent infliction of emotional distress, injury and harm to Plaintiff's health and body, civil and constitutional rights violations, and the invasion of privacy, and have cost Plaintiff excessive amounts of money, placing Plaintiff and Plaintiff's family in financial hardship

**SEVENTH CAUSE OF ACTION**

**District where Crime "Supposedly" Occurred**

(In Violation of the Sixth Amendment of the U.S. Constitution)
(Against SECORD, RAMOS, SAN BERNARDINO COUNTY DISTRICT ATTORNEY'S OFFICE, HOUTS, WEVELY, ROSAS, USA FEDERAL CREDIT UNION, MORRISON, PENROD, and SAN BERNARDINO COUNTY SHERIFF'S DEPARTMENT)

378.   Plaintiff incorporates and realleges the preceding paragraphs as if fully set out herein.

379.   USA FEDERAL CREDIT UNION, WEVELY, ROSAS, MISLEH, HOUTS, MORRISON, SAN BERNARDINO COUNTY SHERIFF'S DEPARTMENT sought out to have SECORD prosecute a criminal accusation which supposedly took place in the city of San Diego, County of San Diego within the county of San Bernardino where SECORD was employed.

380.   SECORD, THE SAN BERNARDINO COUNTY DISTRICT ATTORNEY'S OFFICE, issued a warrant for Plaintiff's arrest for "supposed" crimes which occurred when Plaintiff resided in Santa Fe, New Mexico.

Complaint                                    - 84 -

381.   SAN BERNARDINO COUNTY DISTRICT ATTORNEY'S OFFICE, RAMOS, SAN BERNARDINO COUNTY SHERIFF'S DEPARTMENT, PENROD, and MORRISON allowed this arrest, criminal investigation, and court process knowing they did not have proper jurisdiction.

382.   HOUTS, RAMOS and SECORD knew or should have known their actions, as stated herein, violated California *Business and Professions Codes* §§6068, 6106, and 6128.

383.   The Defendants' acts were intentional and done in violation of Plaintiff's legal and Constitutional rights, and have directly and proximately caused Plaintiff humiliation, mental pain, intentional inflictions of emotional distress, negligent infliction of emotional distress, injury and harm to Plaintiff's health and body civil and constitutional rights violations, and the invasion of privacy, and has cost Plaintiff excessive amounts of money, placing Plaintiff and Plaintiff's family in financial hardship.

### **EIGHTH CAUSE OF ACTION**

**Cruel and Unusual Punishment**

(In Violation of the Eighth Amendment)
(Against SECORD, SAN BERNARDINO COUNTY DISTRICT ATTORNEY'S OFFICE, BORBA, RAMOS, WEST VALLEY DETENTION CENTER, FRATT, DOE NURSES, DOE CONTRACTORS, DOE DEPUTIES, HEARY and LIONG)

384.   Plaintiff incorporates and realleges the preceding paragraphs as if fully set out herein.

385.   SECORD, SAN BERNARDINO COUNTY DISTRICT ATTORNEY'S OFFICE, BORBA, and RAMOS conspired together to have Plaintiff incarcerated for similar if not the same charges Plaintiff had been litigating since May 2003 and which were brought by SECORD.

386.   WEST VALLEY DETENTION CENTER, FRATT, DOE DEPUTIES, DOE NURSES, LIONG, and DOE CONTRACTORS further locked Plaintiff in the mens unit in isolation without a working emergency medical intercom system and refused Plaintiff heart medications and medical attention.

387.   BORBA'S actions, rulings, statements, and behaviors have been extremely biased and

Complaint                                    - 85 -

prejudicial towards Plaintiff and dangerous to Plaintiff's physical health.

388.  BORBA showed extreme bias and prejudice towards Plaintiff, and a disregard for human life, by failing to consider testimony by Plaintiff regarding Plaintiff's own health issues and her knowledge regarding juvenile diabetes, which Plaintiff has dealt with all of her life.   Instead BORBA stated Plaintiff's medical condition could be handled by the jail, which BORBA knew because she had <u>gestational</u> diabetes's when she was pregnant. BORBA made statements which would lead Plaintiff to believe she had medical training superior to a doctor.

389.  BORBA showed extreme bias towards Plaintiff and refused to consider the competent medical testimony provided by the a qualified physician from Kaiser Hospital who treated Plaintiff, regarding the life threatening medical issues which related to Plaintiff.  Again, BORBA made statements which would lead Plaintiff to believe  she had medical training superior to a doctor.

390.  SECORD stated to the court Plaintiff should remain in custody because she "forged" documents which contained a government seal (a court seal).  However, Plaintiff to date, has not been tried and/or convicted of this allegation. BORBA, as a favor to SECORD, took judicial notice of these documents, which was improper, and refused to reduce Plaintiff's bail or release her on her own recognizance, even though Plaintiff has no past criminal history and posed no threat to society.

391.  BORBA was aware Plaintiff was not receiving her heart medications, had been refused medical attention against court orders issued by BORBA.  BORBA ignored this information and did nothing to protect the life of Plaintiff, instead she granted SECORD'S request to keep Plaintiff incarcerated

392.  BORBA participated in and allowed the continuance of Cruel and Unusual Punishment against Plaintiff.

393.  SECORD knew or should have known his actions, as stated herein, violated California *Business and Professions Codes* §§6068, 6106, and 6128.

394. BORBA, and RAMOS were aware of the violations of these laws and did nothing to uphold the laws, in violation of the California *Business and Professions Code* §§6068, 6106, and 6128.

395. BORBA knew or should have known her actions violated the California code of Judicial Ethics, Division II, Canon I, Division II, Canon 2, and Division II, Canon 3

396. The Defendants' acts were intentional and done in violation of Plaintiff's legal and Constitutional rights, and have directly and proximately caused Plaintiff humiliation, mental pain, intentional inflictions of emotional distress, negligent infliction of emotional distress, injury and harm to Plaintiff's health and body civil and constitutional rights violations, and the invasion of privacy, and has cost Plaintiff excessive amounts of money, placing Plaintiff and Plaintiff's family in financial hardship.

## **NINTH CAUSE OF ACTION**

### **Excessive Bail**

(In Violation of the Eighth Amendment)
(Against SECORD, SAN BERNARDINO COUNTY DISTRICT ATTORNEY'S OFFICE, PENROD, BORBA, and RAMOS

397. Plaintiff incorporates and realleges the preceding paragraphs as if fully set out herein.

398. Defendants and each of them, subjected Plaintiff to Excessive Bail, for accusations of a white collar (paper) crime, Plaintiff does not have a past criminal record, and made every court appearance for the past 1-1/2 years, except when she was excused for non appearance due to health related heart problems.

399. When Plaintiff was originally arrested in January 2002, Plaintiff's bail was only set at $20,000.00.

400. SECORD raised Plaintiff's bail to $350,000.00 with a 1275.1 hold, while on other cases far worse than Plaintiff's, they were releasing the defendants on their own recognize. In particular, The State v. Jane Un, wherein SECORD released defendant Un on her own recognize even though she had been fighting two other cases, had violated a Vargas

Waiver and is a Turkish immigrant.

401.    PENROD, at the time Plaintiff was incarcerated, was releasing inmates charged with assault with a deadly weapon on their own recognizance just hours after their arrest.

402.    Defendants and each of them, forced Plaintiff to pay out excessive amounts of money for bail.  Due to the excessive bail, which Plaintiff has been required to pay three separate times, caused Plaintiff to be incarcerated for 3-1/2 weeks.

403.    RAMOS was aware of the deceitful and fraudulent tactics of SECORD'S.  RAMOS did nothing to protect the rights of Plaintiff.

404.    BORBA'S actions, rulings, statements, and behaviors have been extremely biased, prejudiced and detrimental towards Plaintiff.  Plaintiff is also informed and believes and thereon alleges  BORBA was aware of the deceitful and fraudulent tactics being used by SECORD.

405.    RAMOS and SECORD knew or should have known his actions, as stated herein, violated California *Business and Professions Codes* §§6068, 6106, and 6128.

406.    BORBA was aware Plaintiff made almost all of her court appearances, except where her health issues played a role, and BORBA knew  Plaintiff was represented by private counsel.  BORBA was aware Plaintiff did not pose a threat to society.  BORBA was aware of the excessive nature of Plaintiff's bail.   Instead of affixing a reasonable bail on Plaintiff, as a favor to SECORD she allowed SECORD'S request for the high bail.

407.    BORBA exonerated Plaintiff's original bail in the amount of $250,000.00, knowing Plaintiff had just renewed the premium, under threat and coercion, without so much as a motion and opportunity to be heard, and in violation of Plaintiff's right to due process, exonerated the bail, causing Plaintiff further financial hardship.

408.    BORBA participated in and allowed the continuance of the excessive bail against Plaintiff.

409.    BORBA knew or should have known her actions violated the California code of Judicial Ethics, Division II, Canon I, Division II, Canon 2, and Division II, Canon 3

410.    The Defendants' acts were intentional and done in violation of Plaintiff's legal and

Constitutional rights, and have directly and proximately caused Plaintiff humiliation,
mental pain, intentional inflictions of emotional distress, negligent infliction of emotional
distress,  injury and harm to Plaintiff's health and body civil and constitutional rights
violations, and the invasion of privacy, and has cost Plaintiff excessive amounts of money,
placing Plaintiff and Plaintiff's family in financial hardship.

## TENTH CAUSE OF ACTION

### Due Process

(In Violation of the Fourteenth Amendment)
(Against SECORD, SAN BERNARDINO COUNTY DISTRICT ATTORNEY'S OFFICE,
BORBA, RAMOS, HOUTS, WEVELY, USA FEDERAL CREDIT UNION and ALLEN)

411.  Plaintiff incorporates and realleges the preceding paragraphs as if fully set out herein.

412.  As previously stated herein, SECORD obtained a second warrant for Plaintiff's arrest with
full knowledge that Plaintiff was ready and willing to appear for her next hearing, as
previously stated herein.

413.  As previously stated herein, Defendants' shared private information of Plaintiff's without
notice or the opportunity to be heard with HOUTS and USA FEDERAL CREDIT UNION
to aid them in a civil judgment against Plaintiff.

414.  As previously stated herein, Defendants' shared private information of Plaintiff's with
HOUTS and USA FEDERAL CREDIT UNION to aid them in a civil judgment against
Plaintiff.

415.  As previously stated herein,  SECORD, LEIBERICH, SAN BERNARDINO COUNTY
DISTRICT ATTORNEY'S OFFICE and HOUTS conspired with WEVELY and ROSAS
to mis-state their testimony in the preliminary hearing phase of the criminal action pending
against Plaintiff.

416.  As previously stated herein, in violation of court orders, HOUTS and WEVELY reviewed
and discussed documents pertaining to the criminal action pending against Plaintiff prior
to WEVELY'S testimony in the preliminary hearing.

417. As previously stated herein SECORD, LEIBERICH and the SAN BERNARDINO COUNTY DISTRICT ATTORNEY'S OFFICE conspired with ALLEN regarding witness lists in order to harass Plaintiff in the paternity action herein referenced.

418. As previously stated herein ALLEN acquired and used information obtained from SECORD regarding a felony warrant to urge Santa Fe Police Department to arrest Plaintiff, which is the same sort of harassment which Plaintiff has endured for years.

419. As previously stated herein ALLEN conspired with SECORD, the SAN BERNARDINO COUNTY DISTRICT ATTORNEY'S OFFICE, the SAN BERNARDINO COUNTY SHERIFF'S DEPARTMENT and LEIBERICH to have criminal charges brought against Plaintiff based on false allegations made by ALLEN beginning in 1992.

420. RAMOS was aware of the deceitful and fraudulent tactics of SECORD'S. RAMOS did nothing to protect the rights of Plaintiff, even though, in his official capacity, he had a duty to protect Plaintiff.

421. RAMOS, HOUTS and SECORD knew or should have known their actions, as stated herein, violated California *Business and Professions Codes* §§6068, 6106, and 6128.

422. BORBA was aware of Plaintiff's health conditions as well as the money expended on bail in the actions filed by SECORD, and yet allowed Plaintiff's bail to be exonerated, further damaging Plaintiff's financial status and subjecting her to financial hardship, by requiring her to post bail a second and third time.

423. BORBA was aware of the fraudulent and deceitful actions of SECORD'S and instead of taking actions to prevent them, she encouraged SECORD'S activities to continue. BORBA knew or should have known her actions violated the California code of Judicial Ethics, Division II, Canon I, Division II, Canon 2, and Division II, Canon 3.

424. The Defendants' acts were intentional and done in violation of Plaintiff's legal and Constitutional rights, and have directly and proximately caused Plaintiff humiliation, mental pain, intentional inflictions of emotional distress, negligent infliction of emotional distress, injury and harm to Plaintiff's health and body civil and constitutional rights

violations, and the invasion of privacy, and has cost Plaintiff excessive amounts of money, placing Plaintiff and Plaintiff's family in financial hardship.

## ELEVENTH CAUSE OF ACTION

### Misprision of Felony

(In Violation of 18 U.S.C. § 4)
(Against Defendants, SECORD, RAMOS, HOUTS, SAN BERNARDINO COUNTY DISTRICT ATTORNEY'S OFFICE, and BORBA)

425.  Plaintiff incorporates and realleges the preceding paragraphs as if fully set out herein.

426.  Plaintiff is informed, believes and thereon alleges, SECORD was aware of the extortionate means used by ZIBELL, VERLINGO, and ALLWAYS FOR-U BAIL BONDS.  SECORD did not take actions to prevent these actions, but instead conspired with the Defendants named herein to violate Plaintiff's rights.

427.   RAMOS, BORBA, and SAN BERNARDINO COUNTY DISTRICT ATTORNEY'S OFFICE were aware SECORD had been forum shopping in order to obtain another warrant against Plaintiff.  RAMOS, BORBA, and SAN BERNARDINO COUNTY DISTRICT ATTORNEY'S OFFICE did not take any actions against SECORD for his misconduct, instead they concealed and ignored the actions of SECORD.

428.  Plaintiff is informed, believes and thereon alleges  SECORD obtained this second warrant out of retaliation for the claims Plaintiff  filed against him.

429.  SECORD was aware the testimony given by WEVELY in Plaintiff's preliminary hearing was falsified.  SECORD did not take actions to prevent these actions, but instead conspired with the Defendants named herein to violate Plaintiff's rights.

430.  SECORD was aware  WEVELY and HOUTS violated court orders by reviewing and discussing documents contained in the criminal file prior to WEVELY'S testimony in Plaintiff's preliminary hearing.  SECORD did not take actions to prevent these actions, but instead conspired with the Defendants named herein to violate Plaintiff's rights.

431.  As previously stated herein SECORD, LEIBERICH and the SAN BERNARDINO

COUNTY DISTRICT ATTORNEY'S OFFICE conspired with ALLEN regarding witness lists in order to harass Plaintiff in the paternity action herein referenced.

432.   RAMOS, HOUTS and SECORD knew or should have known their actions, as stated herein, violated California *Business and Professions Codes* §§6068, 6106, and 6128.

433.   BORBA was aware court orders were not being followed.  BORBA concealed and ignored the misconduct of the other Defendants.

434.   BORBA was aware of the fraudulent and deceitful actions of SECORD'S and the other defendants and failed to take any action to prevent or stop the illegal actions.  BORBA knew or should have known her actions violated the California code of Judicial Ethics, Division II, Canon I, Division II, Canon 2, and Division II, Canon 3

435.   The Defendants' acts were intentional and done in violation of Plaintiff's legal and Constitutional rights, and have directly and proximately caused Plaintiff humiliation, mental pain, intentional inflictions of emotional distress, negligent infliction of emotional distress,  injury and harm to Plaintiff's health and body civil and constitutional rights violations, and the invasion of privacy, and has cost Plaintiff excessive amounts of money, placing Plaintiff and Plaintiff's family in financial hardship.

## **TWELFTH CAUSE OF ACTION**

### **Conspiracy against Rights and Deprivation of Rights**

(In Violation of 18 U.S.C. § 241 and § 242)
(Against All Defendants)

436.   Plaintiff incorporates and realleges the preceding paragraphs as if fully set out herein.

437.   Defendants and each of them conspired with each other to deprive Plaintiff of her right to due process, right to privacy and protection of the laws of the State of California, as well as Plaintiff's Constitutional Rights.

438.   As previously stated herein, SECORD obtained a second warrant for Plaintiff's arrest with full knowledge that Plaintiff was ready and willing to appear for her next hearing, as previously stated herein.

439.  Plaintiff is informed, believes and thereon alleges  SECORD obtained this second warrant out of retaliation for the claims Plaintiff  filed against him.

440.  SECORD, through the SAN BERNARDINO COUNTY DISTRICT ATTORNEY'S OFFICE conspired with HOUTS, and ROSAS on behalf of USA FEDERAL CREDIT UNION,  in order to fabricate a second set of charges in Case #FSB-044914, which included an accusation for grand theft of a 2001 Camaro Z-28, which Plaintiff was charged with in Case #FWV-028000 and had been litigating since May 2003 and which were filed by SECORD.

441.  As previously stated herein, SECORD and LEIBERICH through the SAN BERNARDINO COUNTY DISTRICT ATTORNEY'S OFFICE conspired with HOUTS, WEVELY, and ROSAS to mis-state their testimony in Plaintiff's preliminary hearing.

442.  As previously stated herein, HOUTS and USA FEDERAL CREDIT UNION  conspired with SECORD and obtained confidential private information of Plaintiff's.

443.  SECORD, conspired with LEIBERICH through the SAN BERNARDINO COUNTY DISTRICT ATTORNEY'S OFFICE, ZIBELL and VERLINGO to have Plaintiff's bail revoked and exonerated on Plaintiff's first Case #FWV-028000, wherein the bail agents testified against Plaintiff in breach of their fiduciary duty.

444.  Plaintiff is informed, believes and thereon alleges SECORD, through the SAN BERNARDINO COUNTY DISTRICT ATTORNEY'S OFFICE conspired with DOE DEPUTIES, DOES NURSES and LIONG, in their individual and official capacities through WEST VALLEY DETENTION CENTER and the SAN BERNARDINO COUNTY SHERIFF'S DEPARTMENT to refuse Plaintiff her heart medications, lock Plaintiff in isolation in the mens unit without a working intercom system, and refused Plaintiff necessary medical care.

445.  Plaintiff is informed, believes and thereon alleges  the prosecutions against her are retaliation for Plaintiff filing a lawsuit and complaints against defendants.

446.  As previously stated herein SECORD, LEIBERICH and the SAN BERNARDINO

Complaint                                    - 93 -

COUNTY DISTRICT ATTORNEY'S OFFICE conspired with ALLEN regarding witness lists in order to harass Plaintiff in the paternity action herein referenced.

447. Sometime between the end of May 2004 to mid June 2004, ALLEN contacted Officer Gallagos with the Santa Fe Police Department alleging Plaintiff had a felony fugitive warrant for her arrest, approximately two weeks **prior** to the issuance of the second warrant, which is information only SECORD would have known. The warrant issued on June 30, 2004.

448. As previously stated herein ALLEN conspired with SECORD, the SAN BERNARDINO COUNTY DISTRICT ATTORNEY'S OFFICE, the SAN BERNARDINO COUNTY SHERIFF'S DEPARTMENT and LEIBERICH to have criminal charges brought against Plaintiff based on false allegations made by ALLEN beginning in 1992.

449. ZIBELL and VERLINGO conspired with ALLEN to testify on behalf of ALLEN in Plaintiff's paternity action in retaliation for Plaintiff's refusal to sign a waiver of fees regarding Plaintiff's bail.

450. As a direct result, Plaintiff was incarcerated for 3-1/2 weeks, was refused medical care, refused her heart medication, suffered a Myocardial Infarction (Heart Attack), which caused permanent damage.

451. RAMOS, HOUTS and SECORD knew or should have known their actions, as stated herein, violated California *Business and Professions Codes* §§6068, 6106, and 6128.

452. BORBA was aware of SECORD'S and other defendants' conspiracies and failed to take any actions to prevent them. BORBA knew or should have known her actions violated the California code of Judicial Ethics, Division II, Canon I, Division II, Canon 2, and Division II, Canon 3.

453. Defendants' acts are also in violation of California Penal Code §182(A)(1) and California *Civil Code* §43 and §52.1(a).

454. The Defendants' acts were intentional and done in violation of Plaintiff's legal and Constitutional rights, and have directly and proximately caused Plaintiff humiliation,

mental pain, intentional inflictions of emotional distress, negligent infliction of emotional distress, injury and harm to Plaintiff's health and body civil and constitutional rights violations, and the invasion of privacy, and has cost Plaintiff excessive amounts of money, placing Plaintiff and Plaintiff's family in financial hardship.

## THIRTEENTH CAUSE OF ACTION

### Records Maintained on Individuals

(In Violation of 5 U.S.C. §552(a)(b)(7))
(Against SECORD, SAN BERNARDINO COUNTY DISTRICT ATTORNEY'S OFFICE, HOUTS, HOUTS & ASSOCIATES and USA FEDERAL CREDIT UNION)

455. Plaintiff incorporates and realleges the preceding paragraphs as if fully set out herein.

456. SECORD distributed copies of Plaintiff's private and confidential home loan application to HOUTS, HOUTS & ASSOCIATES and USA FEDERAL CREDIT UNION to aid and abet HOUTS scheme to obtain and collect on a default judgment against Plaintiff.

457. As previously stated herein SECORD, LEIBERICH and the SAN BERNARDINO COUNTY DISTRICT ATTORNEY'S OFFICE conspired with ALLEN regarding witness lists in order to harass Plaintiff in the paternity action herein referenced.

458. As previously stated herein, sometime between the end of May 2004 to mid June 2004, ALLEN contacted Officer Gallagos with the Santa Fe Police Department alleging Plaintiff had a felony fugitive warrant for her arrest, approximately two weeks **prior** to the issuance of the second warrant, which is information only SECORD would have known. The warrant issued on June 30, 2004.

459. HOUTS and SECORD knew or should have known their actions, as stated herein, violated California *Business and Professions Codes* §§6068, 6106, and 6128.

460. The Defendants' acts were intentional and done in violation of Plaintiff's legal and constitutional rights, and have directly and proximately caused Plaintiff humiliation, mental pains, intentional inflictions of emotional distress, negligent infliction of emotional distress, injury and harm to Plaintiff's health and body. civil and constitutional rights

violations, and the invasion of privacy, and have cost Plaintiff excessive amounts of money, placing Plaintiff and Plaintiff's family in financial hardship.

### FOURTEENTH CAUSE OF ACTION

**Extortionate Credit Transactions**

(In Violation of 18 U.S.C. § 892 )
(Against USA FEDERAL CREDIT UNION, HOUTS, ROSAS, WEVELY, MISLEH, SECORD and HOUTS & ASSOCIATES)

461.   Plaintiff incorporates and realleges the preceding paragraphs as if fully set out herein.

462.   Defendants obtained a default judgment against Plaintiff by not properly serving Plaintiff and giving her the opportunity to defend the allegations,

463.   Once Plaintiff learned of this judgment, Plaintiff immediately began litigating the judgment in attempts to have an opportunity to defend herself.

464.   Defendants gave false testimony before the courts and in declarations in attempts to have Plaintiff prosecuted in a criminal action wherein defendants were the "supposed" victims.

465.   SECORD had the civil file sealed and defendants have refused to turn over a copy of the civil file to Plaintiff.

466.   HOUTS and SECORD knew or should have known their actions, as stated herein, violated California *Business and Professions Codes* §§6068, 6106, and 6128.

467.   The Defendants' acts were intentional and done in violation of Plaintiff's legal and constitutional rights, and have directly and proximately caused Plaintiff humiliation, mental pain, intentional inflictions of emotional distress, negligent infliction of emotional distress, injury and harm to Plaintiff's health and body, civil and constitutional rights violations, and the invasion of privacy, and have cost Plaintiff excessive amounts of money, placing Plaintiff and Plaintiff's family in financial hardship.

## FIFTEENTH CAUSE OF ACTION

### Collection of Extensions of Credit by Extortionate Means

(In Violation of 18 U.S.C. §894)
(Against USA FEDERAL CREDIT UNION, HOUTS, ROSAS, WEVELY, MISLEH, SECORD, SAN BERNARDINO COUNTY DISTRICT ATTORNEY'S OFFICE, and HOUTS & ASSOCIATES)

468. Plaintiff incorporates and realleges the preceding paragraphs as if fully set out herein.

469. Defendants' knew or should have known the criteria in order to become a member of USA FEDERAL CREDIT UNION. Defendants' further knew or should have known Plaintiff did not qualify for membership with USA FEDERAL CREDIT UNION.

470. According to the declarations filed within the civil file entitled USA FEDERAL CREDIT UNION v. LIBER, payments had been made and received on the loans pertaining to the civil and criminal court proceedings.

471. USA FEDERAL CREDIT UNION, MISLEH, WEVELY, ROSAS, HOUTS and HOUTS & ASSOCIATES repossessed the vehicles securing the loans in question, sold them and obtained payment.

472. USA FEDERAL CREDIT UNION, MISLEH, WEVELY, ROSAS, HOUTS, and HOUTS & ASSOCIATES obtained a default judgment against Plaintiff by not serving Plaintiff in order to give her the opportunity to defend herself.

473. SECORD filed criminal charge against Plaintiff twice, wherein WEVELY, and ROSAS, gave false testimony and false declarations in attempts to have Plaintiff convicted. SECORD had the civil file sealed in order to conceal the false testimony.

474. RAMOS, HOUTS, and SECORD knew or should have known of the illegal tactics of SECORD, HOUTS, HOUTS & ASSOCIATES, USA FEDERAL CREDIT UNION, WEVELY, ROSAS, and MISLEH in attempts to collect on the default judgment and in attempts to obtain a criminal conviction against Plaintiff knowing if Plaintiff were convicted she would be required to repay the entire amounts of the loans.

475. HOUTS and SECORD knew or should have known their actions, as stated herein, violated California *Business and Professions Codes* §§6068, 6106, and 6128.

476. The Defendants' acts were intentional and done in violation of Plaintiff's legal and constitutional rights, and have directly and proximately caused Plaintiff humiliation, mental pain, intentional inflictions of emotional distress, negligent infliction of emotional distress, injury and harm to Plaintiff's health and body, civil and constitutional rights violations, and the invasion of privacy, and have cost Plaintiff excessive amounts of money, placing Plaintiff and Plaintiff's family in financial hardship.

### SIXTEENTH CAUSE OF ACTION

#### Title Records

(In violation of 18 U.S.C. § 1021)
(Against USA FEDERAL CREDIT UNION, HOUTS, ROSAS, and WEVELY)

477. Plaintiff incorporates and realleges the preceding paragraphs as if fully set out herein.

478. Defendants' testified Plaintiff forged their signatures on the title to a 2001 Chevrolet camaro, placing the title in Plaintiff's name which secured a loan with USA FEDERAL CREDIT UNION. As a result, SECORD filed a second set of charges, placing Plaintiff in double jeopardy, and incarcerating Plaintiff.

479. Defendants' knew Plaintiff could not have forged the title to this 2001 Chevrolet camaro, as Plaintiff never had access to the title, which was in the possession of USA FEDERAL CREDIT UNION and Plaintiff resided outside the state of California.

480. As a result of the arrest and incarceration, Plaintiff suffered another heart attack, causing permanent heart damage and almost ending Plaintiff's life.

481. HOUTS and SECORD knew or should have known their actions, as stated herein, violated California *Business and Professions Codes* §§6068, 6106, and 6128.

482. The Defendants' acts were intentional and done in violation of Plaintiff's legal and constitutional rights, and have directly and proximately caused Plaintiff humiliation, mental pain, intentional inflictions of emotional distress, negligent infliction of emotional distress, injury and harm to Plaintiff's health and body, civil and constitutional rights violations, and the invasion of privacy, and have cost Plaintiff excessive amounts of

money, placing Plaintiff and Plaintiff's family in financial hardship

## SEVENTEENTH CAUSE OF ACTION

### Tampering with a Witness, Victim, or an Informant

(In Violation of 18 U.S.C.  §1512)
(Against HOUTS, SECORD, HAMILTON, LEIBERICH, SAN BERNARDINO COUNTY
DISTRICT ATTORNEY'S OFFICE, MORRISON, SAN BERNARDINO COUNTY SHERIFF'S
DEPARTMENT and HOUTS & ASSOCIATES)

483.  Plaintiff incorporates and realleges the preceding paragraphs as if fully set out herein.

484.  Plaintiff is informed, believes and thereon alleges LEIBERICH, MORRISON, SECORD,
HOUTS, and HOUTS & ASSOCIATES caused and induced other Defendants, USA
FEDERAL CREDIT UNION, WEVELY, MISLEH, and ROSAS to withhold testimony,
give false testimony under the penalty of perjury.

485.  Plaintiffi is informed, believes and thereon alleges LEIBERICH, MORRISON and
SECORD summoned HOUTS, HOUTS & ASSOCIATES, WEVELY, and ROSAS to
appear before the judge in the official criminal proceedings to testify against Plaintiff and
give false testimony.

486.  SECORD,  concealed the records in the civil file, sealing the civil file,  so the documents
would be unavailable for Plaintiff to defend herself against the civil action and in her
official criminal proceedings to show  the testimony given against her was falsified.

487.  SECORD, LEIBERICH, HAMILTON, and MORRISON  conspired together sought and
instituted a criminal prosecution to take place against Plaintiff, knowing the testimony
given was false.  Defendants' aided,  abetted and assisted in the prosecution against
Plaintiff and assisted USA FEDERAL CREDIT UNION, HOUTS, HOUTS &
ASSOCIATES, WEVELY, and ROSAS in civil proceedings in order to obtain a default
judgment against Plaintiff.

488.  SECORD, LEIBERICH, MORRISON, HOUTS, and HOUTS & ASSOCIATES further
suppressed evidence, which would clear Plaintiff of criminal activity.

489. These actions were also in violation of California *Penal Code* §141(b).

490. HOUTS and SECORD knew or should have known their actions, as stated herein, violated California *Business and Professions Codes* §§6068, 6106, and 6128.

491. The Defendants' acts were intentional and done in violation of Plaintiff's legal and constitutional rights, and have directly and proximately caused Plaintiff humiliation, mental pain, intentional inflictions of emotional distress, negligent infliction of emotional distress, injury and harm to Plaintiff's health and body, civil and constitutional rights violations, and the invasion of privacy, and have cost Plaintiff excessive amounts of money, placing Plaintiff and Plaintiff's family in financial hardship.

## EIGHTEENTH CAUSE OF ACTION
### Extortion

(In Violation of 18 U.S.C. §1951)
(Against SECORD, ZIBELL and VERLINGO)

492. Plaintiff incorporates and realleges the preceding paragraphs as if fully set out herein.

493. ZIBELL and VERLINGO traveled to Santa Fe, NM in or about May 2004 and extorted money from Plaintiff and her family.

494. ZIBELL and VERLINGO were informed and aware Plaintiff did not want to renew Plaintiff's bail through them.

495. ZIBELL and VERLINGO threatened and attempted to place a $420,000.00 lien against Plaintiff's family's assets with full knowledge that Plaintiff's bail premium was not yet due. Plaintiff's family paid the bail based on fear, coercion and the extortionate conduct of ZIBELL and VERLINGO.

496. ZIBELL and VERLINGO used extortionate means to deprive Plaintiff of an additional $25,000.00 bail bond premium with no intent to perform the duties they were paid for, which Plaintiff is informed, believes and thereon alleges SECORD was aware of and a party to.

497. The Defendants' acts were intentional and done in violation of Plaintiff's legal and

Constitutional rights, and have directly and proximately caused Plaintiff humiliation, mental pain, intentional inflictions of emotional distress, negligent infliction of emotional distress, injury and harm to Plaintiff's health and body civil and constitutional rights violations, and the invasion of privacy, and has cost Plaintiff excessive amounts of money, placing Plaintiff and Plaintiff's family in financial hardship.

## NINETEENTH CAUSE OF ACTION

### Torture

(In Violation of 18 U.S.C. §2340A)
(Against WEST VALLEY DETENTION CENTER, SECORD, DOE NURSES, DOE DEPUTIES, LIONG, SECORD, SAN BERNARDINO COUNTY DISTRICT ATTORNEY'S OFFICE, SAN BERNARDINO COUNTY SHERIFF'S DEPARTMENT, DOE CONTRACTORS, )

498. Plaintiff incorporates and realleges the preceding paragraphs as if fully set out herein

499. Defendants' incarcerated Plaintiff in the mens unit of WEST VALLEY DETENTION CENTER in isolation without an emergency medical working intercom system.

500. Defendants refused medical attention to Plaintiff, refused to allow Plaintiff to shower, and refused Plaintiff to contact her attorney for help.

501. Defendants were aware of Plaintiff's medical problems, as they obtained her medical records from her treating physician in New Mexico. WEST VALLEY DETENTION CENTER, DOE DEPUTIES, LIONG, DOE NURSES, DOE CONTRACTORS, SECORD, RAMOS, SAN BERNARDINO COUNTY DISTRICT ATTORNEY'S OFFICE, PENROD, and the SAN BERNARDINO COUNTY SHERIFF'S DEPARTMENT were aware Plaintiff was not receiving her heart medications.

502. BORBA was advised by Plaintiff's counsel, of Plaintiff's medical condition, the fact Plaintiff was not receiving required heart medications, Plaintiff's insulin pump was taken away, further endangering her health, since the jail personnel was not monitoring Plaintiff's diabetes. BORBA took no steps and allowed the torture to continue.

503. As a result, Plaintiff suffered a heart attack and permanent heart damage. Plaintiff was

Complaint

made to suffer the pain and anguish caused by the heart attack, as well as the jail personnel's refusal to allow Plaintiff to contact her family or her attorneys about her condition, stating  if Plaintiff died, someone would eventually find out.

504.   RAMOS and SECORD knew or should have known their actions, as stated herein, violated California *Business and Professions Codes* §§6068, 6106, and 6128. .

505.   BORBA was aware of SECORD'S and the other Defendants' actions, which constitutes Torture, but BORBA failed to take actions to prevent the harm caused to Plaintiff. BORBA knew or should have known her actions violated the California code of Judicial Ethics, Division II, Canon I, Division II, Canon 2, and Division II, Canon 3.

506.   The Defendants' acts were intentional and done in violation of Plaintiff's legal and Constitutional rights, and have directly and proximately caused Plaintiff humiliation, mental pain, intentional inflictions of emotional distress, negligent infliction of emotional distress,  injury and harm to Plaintiff's health and body civil and constitutional rights violations, and the invasion of privacy, and has cost Plaintiff excessive amounts of money, placing Plaintiff and Plaintiff's family in financial hardship.

## TWENTIETH CAUSE OF ACTION

### Mail Fraud and Wire Fraud

(In Violation of 18 U.S.C. § 1341 and §1343)
(Against  WEST VALLEY DETENTION CENTER,
DOE DEPUTIES, DOE NURSES, SAN BERNARDINO COUNTY SHERIFF'S
DEPARTMENT, HOUTS, USA FEDERAL CREDIT UNION, PENROD and ALLEN)

507.   Plaintiff incorporates and realleges the preceding paragraphs as if fully set out herein.

508.   For the purpose of executing and/or attempting to execute their scheme to defraud and to obtain money by means of false pretenses, representations and promises, as well as to execute and/or attempt to execute their scheme or artifice to deprive another of the intangible right of appropriate services, the defendants, in violation of 18 U.S.C. §1341, placed in post offices and/or in authorized repositories for mail matter, matters and things to be sent or delivered by the Postal Service, and received matters and things therefrom and knowingly caused to be delivered by mail those matters and things according to the

direction thereon or at the place at which they were directed to be delivered by the person to whom they were addressed.

509. HOUTS on behalf of USA FEDERAL CREDIT UNION sent documentation by wire and United States Postal Service, knowing it to be false, to Attorney Alfred Sanchez in New Mexico to aid in collection of a default judgment against Plaintiff.

510. In those matters and things sent or delivered by the Postal Service and the other mediums referred to above, defendants falsely and fraudulently represented to the United States Congressman, Tom Udal Plaintiff was in the medical ward of WEST VALLEY DETENTION CENTER and Plaintiff was receiving all needed medical services based on their independent medical judgment free of improper influence or interference.

511. Defendants sent correspondence to United States Congressman Tom Udall stating Plaintiff was in their medical ward receiving constant medical attention. Defendants knew this information was false when they sent it to the United States Congressman.

512. Sometime between the end of May 2004 to mid June 2004, ALLEN contacted Officer Gallagos with the Santa Fe Police Department alleging Plaintiff had a felony fugitive warrant for her arrest, approximately two weeks **prior** to the issuance of the second warrant, which is information only SECORD would have known. The warrant issued on June 30, 2004.

513. With respect to their unlawful activities described above, defendants also transmitted funds, and other business communications and transactions in a continuous and uninterrupted flow across state lines and employed the United States mails and interstate wires in violation of 18 U.S.C. §§1341, 1343, and 1346.

514. The defendants intentionally and knowingly made the material misrepresentations to the United States Congressman and the Santa Fe Police Department regarding Plaintiff, referred to above for the purpose of deceiving them and thereby allowing and causing continued harm to the Plaintiff. The defendants either knew or recklessly disregarded the misrepresentations and omissions described above were material.

515. The Defendants' acts were intentional and done in violation of Plaintiff's legal and Constitutional rights, and have directly and proximately caused Plaintiff humiliation, mental pain, intentional inflictions of emotional distress, negligent infliction of emotional distress, injury and harm to Plaintiff's health and body civil and constitutional rights violations, and the invasion of privacy, and has cost Plaintiff excessive amounts of money, placing Plaintiff and Plaintiff's family in financial hardship.

## TWENTY-FIRST CAUSE OF ACTION

### Obstruction of Proceedings

(In Violation of 18 U.S.C. §1505)
(Against All Defendants')

516. Plaintiff incorporates and realleges the preceding paragraphs as if fully set out herein.

517. Defendants solicited each other to insure they made misrepresentations, falsified oral testimony, concealed information by sealing the civil case pertaining to USA FEDERAL CREDIT UNION and other civil files to cover up the declarations filed in this civil case, knowing and conspiring in order to cause Plaintiff harm. These Defendants were aware Plaintiff would be refused access and a right to due process when a case was sealed.

518. Defendants solicited each other to insure they made misrepresentations, falsified oral testimony, concealed information by giving information which they knew to be false regarding Plaintiff's medical treatment, health situation, lack of medical treatment, and violation of court orders pertaining to the medical treatment Plaintiff should have received.

519. Defendants, in furtherance of their schemes against Plaintiff, suppressed evidence to the courts, which included but was not limited to the documents contained within the civil files, and a postal box application, which Defendants knew could have an effect in favor of Plaintiff.

520. As previously stated herein SECORD, LEIBERICH, SAN BERNARDINO COUNTY DISTRICT ATTORNEY'S OFFICE and HOUTS conspired with WEVELY and ROSAS to mis-state their testimony in the preliminary hearing phase of the criminal action pending

against Plaintiff.

521. As previously stated herein, in violation of court orders, HOUTS and WEVELY reviewed and discussed documents pertaining to the criminal action pending against Plaintiff prior to WEVELY'S testimony in the preliminary hearing

522. As previously stated herein SECORD, LEIBERICH and the SAN BERNARDINO COUNTY DISTRICT ATTORNEY'S OFFICE conspired with ALLEN regarding witness lists in order to harass Plaintiff in the paternity action herein referenced.

523. As previously stated herein ALLEN conspired with SECORD, the SAN BERNARDINO COUNTY DISTRICT ATTORNEY'S OFFICE, the SAN BERNARDINO COUNTY SHERIFF'S DEPARTMENT and LEIBERICH to have criminal charges brought against Plaintiff based on false allegations made by ALLEN beginning in 1992.

524. As previously stated herein, ALLEN contacted the Santa Fe Police Department regarding a warrant which had yet to be issued and of which only SECORD would have known.

525. HEARY conspired with ALLEN to testify against Plaintiff in the Paternity matter attempting to have Plaintiff's minor son taken away from her.

526. ZIBELL and VERLINGO conspired with ALLEN to testify on behalf of ALLEN in Plaintiff's Paternity Action out of retaliation for Plaintiff's refusal to sign a waiver of fees.

527. Defendants influenced, obstructed, impeded and endeavor to influence, obstruct and impede the due and proper administration of the department or agency of the United States.   Defendants further covered up the wrong doings of each other so they would be able to carry out their crimes against Plaintiff.

528. Plaintiff is informed, believes and thereon alleges the prosecutions against her are in retaliation for the lawsuit and complaints she had filed.

529. RAMOS was aware of the deceitful and fraudulent tactics of SECORD'S and the other defendants'.  RAMOS did nothing to protect the rights of Plaintiff.

530. RAMOS, HOUTS and SECORD knew or should have known their actions, as stated herein, violated California *Business and Professions Codes* §§6068, 6106, and 6128. .

531.  The Defendants' acts were intentional and done in violation of Plaintiff's legal and Constitutional rights, and have directly and proximately caused Plaintiff humiliation, mental pain, intentional inflictions of emotional distress, negligent infliction of emotional distress,  injury and harm to Plaintiff's health and body civil and constitutional rights violations, and the invasion of privacy, and has cost Plaintiff excessive amounts of money, placing Plaintiff and Plaintiff's family in financial hardship.

### TWENTY-SECOND CAUSE OF ACTION

**Perjury**

**(In Violation of 18 U.S.C. § 1621)**
(Against , HEARY, WEST VALLEY DETENTION CENTER,
DOE NURSES, SECORD, LEIBERICH, SAN BERNARDINO COUNTY
SHERIFF'S DEPARTMENT, LEIBERICH, ZIBELL, VERLINGO,
ALLEN, WEVELY, HOUTS, USA FEDERAL CREDIT UNION and ALLWAYS FOR-U BAIL
BONDS)

532.  Plaintiff incorporates and realleges the preceding paragraphs as if fully set out herein.

533.  SECORD misstated facts, knowing the information to be untrue,  to the San Bernardino Superior Court, CENTRAL DISTRICT in order to obtain another warrant against Plaintiff.

534.  HOUTS, mis-stated facts, knowing the testimony he was giving to be untrue, regarding the illegally obtained documents he possessed.  HOUTS informed the court  he had obtained the confidential information from Plaintiff's criminal file.  Plaintiff has yet to be convicted of any crime and therefore, Plaintiff's criminal file should not be open for inspection. Plaintiff's home loan application was not made an exhibit to the file until April 2004, and HOUT'S declaration was executed in February 2004, before the exhibits were ever entered.

535.  WEVELY and ROSAS gave false testimony during Plaintiff's preliminary hearing.

536.  ZIBELL and VERLINGO misstated facts, knowing the testimony they were giving to be untrue,  regarding Plaintiff moving,  to the San Bernardino County Superior Court, Rancho Cucamonga  District in order to have Plaintiff's bail exonerated.

537.  HEARY, DOE NURSES and WEST VALLEY DETENTION CENTER misstated facts, knowing the statements given to be untrue, to the San Bernardino Superior Court, regarding their failure to provide necessary medical treatment to Plaintiff.

538.  LEIBERICH misstated facts, knowing the testimony to be untrue, to the San Bernardino County Superior Court, Rancho Cucamonga District, regarding the arrest of Plaintiff.

539.  DOE NURSES knew the information they were providing to the Courts was untrue and Plaintiff was not receiving her heart medications.

540.  ALLEN misstated facts to the San Bernardino County Superior Court, Rancho Cucamonga Division, in Plaintiff's paternity action, falsely stating in declarations signed under penalty of perjury and dated July 28, 2004, regarding his alleged contact with Santa Fe Police Department.   ALLEN knew this information was untrue.

541.  RAMOS was aware of the deceitful and fraudulent tactics of SECORD'S and the other defendants'.  RAMOS did nothing to protect the rights of Plaintiff.

542.  RAMOS, HOUTS and SECORD knew or should have known their actions, as stated herein, violated California *Business and Professions Codes* §§6068, 6106, and 6128.

543.  BORBA was aware of SECORD'S and the other Defendants' actions, and failed to take actions to prevent them.  BORBA knew or should have known her actions violated the California code of Judicial Ethics, Division II, Canon I, Division II, Canon 2, and Division II, Canon 3.

544.  Defendants' also violated California *Penal Code* §§ 118(a), 118.1, and 118a.

545.  The Defendants' acts were intentional and done in violation of Plaintiff's legal and Constitutional rights, and have directly and proximately caused Plaintiff humiliation, mental pain, intentional inflictions of emotional distress, negligent infliction of emotional distress,  injury and harm to Plaintiff's health and body civil and constitutional rights violations, and the invasion of privacy, and has cost Plaintiff excessive amounts of money, placing Plaintiff and Plaintiff's family in financial hardship.

# TWENTY-THIRD CAUSE OF ACTION

## Subornation of Perjury

### (In Violation of 18 U.S.C. § 1622)
### (Against  SECORD, LEIBERICH, SAN BERNARDINO COUNTY DISTRICT ATTORNEY'S OFFICE, RAMOS, HEARY, and WEST VALLEY DETENTION CENTER)

546.    Plaintiff incorporates and realleges the preceding paragraphs as if fully set out herein.

547.    Plaintiff is informed, believes and thereon alleges SECORD was aware the testimony given by ZIBELL, VERLINGO, LEIBERICH, and HEARY, along with other defendants' and witnesses was untrue, when he called them to testify at Plaintiff's bail hearing. SECORD conspired with the other defendants to insure their testimony would be untruthful regarding Plaintiff.

548.    As previously stated herein SECORD, LEIBERICH, SAN BERNARDINO COUNTY DISTRICT ATTORNEY'S OFFICE and HOUTS conspired with WEVELY and ROSAS to mis-state their testimony in the preliminary hearing phase of the criminal action pending against Plaintiff.

549.    Plaintiff is informed, believes and thereon alleges LEIBERICH conspired with other defendants from WEST VALLEY DETENTION CENTER to insure the testimony given regarding Plaintiff's arrest was untrue and matched his testimony.

550.    Plaintiff is informed, believes, and thereon alleges HEARY conspired with other defendants from WEST VALLEY DETENTION CENTER to insure the testimony given was untrue and matched his testimony regarding the care of Plaintiff while incarcerated at WEST VALLEY DETENTION CENTER.

551.    SECORD was aware ALLEN had misstated facts and testified untruthfully in his declarations presented to the San Bernardino County Superior Court, Rancho Cucamonga District, in the matter of Plaintiff's paternity action.  SECORD further knew Plaintiff and her minor son were the victims of ALLEN'S crimes.

552.    RAMOS was aware of the deceitful and fraudulent tactics of SECORD'S and the other defendants'.  RAMOS did nothing to protect the rights of Plaintiff.

553. RAMOS, HOUTS and SECORD knew or should have known their actions, as stated herein, violated California *Business and Professions Codes* §§6068, 6106, and 6128. .

554. BORBA was aware of SECORD'S and the other Defendants' actions, and failed to take actions to prevent them. BORBA knew or should have known her actions violated the California code of Judicial Ethics, Division II, Canon I, Division II, Canon 2, and Division II, Canon 3.

555. Defendants' also violated California *Penal Code* §§ 118(a), 118.1, and 118a.

556. The Defendants' acts were intentional and done in violation of Plaintiff's legal and Constitutional rights, and have directly and proximately caused Plaintiff humiliation, mental pain, intentional inflictions of emotional distress, negligent infliction of emotional distress, injury and harm to Plaintiff's health and body civil and constitutional rights violations, and the invasion of privacy, and has cost Plaintiff excessive amounts of money, placing Plaintiff and Plaintiff's family in financial hardship.

## TWENTY-FOURTH CAUSE OF ACTION

### False Declarations

(In Violation of 18 U.S.C. § 1623)
(Against Defendants, SAN BERNARDINO COUNTY DISTRICT ATTORNEY'S OFFICE, SECORD, LEIBERICH, ALLEN and RAMOS)

557. Plaintiff incorporates and realleges the preceding paragraphs as if fully set out herein.

558. HOUTS filed declarations February 2004 with the San Bernardino County Superior Court, RANCHO CUCAMONGA DISTRICT to enter illegally obtained confidential documents as exhibits in a civil matter pending against Plaintiff. HOUTS stated in his declaration he obtained the confidential documents from the Exhibits filed in the criminal matter pending against Plaintiff. Plaintiff has yet to be tried and did not conclude her preliminary hearing phase until March 26, 2004. Exhibits were not entered until April 2004.

559. SECORD and LEIBERICH filed declarations with the San Bernardino County Superior Court, CENTRAL DISTRICT to obtain a second warrant against Plaintiff, which they knew was unnecessary and for which they knew they had already arrested Plaintiff before.

560.    As previously stated, ALLEN filed declarations, signed under penalty of perjury on July 28, 2004 in the San Bernardino County Superior Court, Rancho Cucamonga District, in Plaintiff's paternity action regarding alleged contact with the Santa Fe Police Department, which he knew to be false when they were filed.

561.    RAMOS was aware of these false declarations and the actions of the defendants herein. RAMOS failed to take any actions to prevent the ongoing behaviors.

562.    RAMOS was aware of the deceitful and fraudulent tactics of SECORD'S and the other defendants'. RAMOS did nothing to protect the rights or safety of Plaintiff.

563.    RAMOS, HOUTS and SECORD knew or should have known their actions, as stated herein, violated California *Business and Professions Codes* §§6068, 6106, and 6128

564.    BORBA was aware of SECORD'S and the other Defendants' actions, and failed to take actions to prevent them.  BORBA knew or should have known her actions violated the California code of Judicial Ethics, Division II, Canon I, Division II, Canon 2, and Division II, Canon 3.

565.    Defendants' also violated California *Penal Code* §§ 118(a), 118.1, and 118a.

566.    The Defendants' acts were intentional and done in violation of Plaintiff's legal and Constitutional rights, and have directly and proximately caused Plaintiff humiliation, mental pain, intentional inflictions of emotional distress, negligent infliction of emotional distress,  injury and harm to Plaintiff's health and body civil and constitutional rights violations, and the invasion of privacy, and has cost Plaintiff excessive amounts of money, placing Plaintiff and Plaintiff's family in financial hardship.

## TWENTY-FIFTH  CAUSE OF ACTION

### Interstate and Foreign Travel or Transportation in aid of Racketeering Enterprises

(In Violation of 18 U.S.C. §1952)
(Against Defendants,  ZIBELL, and VERLINGO)

567.    Plaintiff incorporates and realleges the preceding paragraphs as if fully set out herein.

568.   ZIBELL and VERLINGO traveled from the State of California to the State of New Mexico in order to extort money from Plaintiff and Plaintiff's family and in order to carry out their racketeering scheme, all of which is set out herein in full.

569.   The Defendants' acts were intentional and done in violation of Plaintiff's legal and Constitutional rights, and have directly and proximately caused Plaintiff humiliation, mental pain, intentional inflictions of emotional distress, negligent infliction of emotional distress,  injury and harm to Plaintiff's health and body civil and constitutional rights violations, and the invasion of privacy, and has cost Plaintiff excessive amounts of money, placing Plaintiff and Plaintiff's family in financial hardship.

## TWENTY-SIXTH CAUSE OF ACTION

### Racketeering, Laundering of Monetary Instruments

(In Violation of 18 U.S.C. § 1956)
(Against SAN BERNARDINO COUNTY DISTRICT ATTORNEY'S OFFICE, SECORD, LEIBERICH,  HOUTS, ROSAS, WEVELY, MISLEH,  HOUTS AND ASSOCIATES, and MORRISON)

570.   Plaintiff incorporates and realleges the preceding paragraphs as if fully set out herein.

571.   All Defendants' conspired and are attempting to convict Plaintiff of crimes, if successful, Plaintiff would be required to pay back the entire amount of all loans.

572.   USA FEDERAL CREDIT UNION, HOUTS, HOUTS & ASSOCIATES, WEVELY, and ROSAS repossessed and resold two vehicles, and obtained a $20,0000.00 payment, according to a declaration,  on a credit card wherein only $15,000.00 was owed.

573.   USA FEDERAL CREDIT UNION, HOUTS, and HOUTS & ASSOCIATES filed a lawsuit against Plaintiff, obtained a default judgment, and are attempting to collect the monies on this judgment from Plaintiff.

574.   USA FEDERAL CREDIT UNION, which is a financial institution, is attempting to collect three times the amount of these supposed loans. Defendants' are aware  their allegations are untrue and have continued to provide false documents and statements in attempts to

illegally obtain money from Plaintiff.

575. SAN BERNARDINO COUNTY DISTRICT ATTORNEY'S OFFICE, RAMOS, MORRISON, HAMILTON, LEIBERICH, SAN BERNARDINO COUNTY SHERIFF'S DEPARTMENT, PENROD, USA FEDERAL CREDIT UNION, WEVELY, ROSAS, MISLEH, SECORD, and HOUTS  knew or should have known  USA FEDERAL CREDIT UNION had possession and monies for the vehicle and credit card involved in their accusations during the entire time of all court actions.

576. The Defendants' acts were intentional and done in violation of Plaintiff's legal and constitutional rights, and have directly and proximately caused Plaintiff humiliation, mental pain, intentional inflictions of emotional distress, negligent infliction of emotional distress, injury and harm to Plaintiff's health and body, civil and constitutional  rights violations, and the invasion of privacy, and have cost Plaintiff excessive amounts of money, placing Plaintiff and Plaintiff's family in financial hardship.

## TWENTY-SEVENTH CAUSE OF ACTION

### Engaging in Monetary Transactions in Property Derived from Specified Unlawful Activity

(In Violation of 18 U.S.C.  §1957)
(Against Defendants, SECORD, HOUTS, WEVELY, ROSAS, USA FEDERAL CREDIT UNION, ZIBELL, and VERLINGO)

577. Plaintiff incorporates and realleges the preceding paragraphs as if fully set out herein.

578. HOUTS, WEVELY and ROSAS on behalf of USA FEDERAL CREDIT UNION repossessed vehicles, resold the vehicles, obtained a default judgment against Plaintiff, and aided in criminal charges against Plaintiff, in attempts to be paid a third time.

579. ZIBELL and VERLINGO went to Santa Fe, New Mexico, where Plaintiff resides, in or about May 2004 and threatened Plaintiff and Plaintiff's family, if Plaintiff did not renew her bail with them.

580. ZIBELL and VERLINGO was advised by Plaintiff's attorney they were not to renew

Plaintiff's bail.

581.  ZIBELL and VERLINGO threatened and attempted to place a $420,000.00 lien on Plaintiff's family's assets. .

582.  ZIBELL and VERLINGO used extortionate means to deprive Plaintiff out of an additional $25,000.00 bail bond premium with no intent to perform the duties for which they were paid, and for which Plaintiff already made known her intention not to renew her bond with Defendants.

583.  ZIBELL and VERLINGO attempted to obtain a waiver of fees from Plaintiff, however, Plaintiff's attorney refused.

584.  On July 14, 2004, ZIBELL and VERLINGO appeared with SECORD at Plaintiff's bail hearing and testified Plaintiff had not followed the rules by failing to notify them of her change of address, knowing the information to be untrue.

585.  ZIBELL and VERLINGO obtained money by false pretenses and by false promises with fraudulent intent not to perform their promises or duties, all of which SECORD was aware. Once Defendants were successful in obtaining the additional $25,000.00 bail premium, they conspired with SECORD and revoked Plaintiff's bail.

586.  ZIBELL and VERLINGO traveled from the State of California to the State of New Mexico in order to extort money from Plaintiff and Plaintiff's family and in order to carry out their racketeering scheme, of which Plaintiff is informed, believes and thereon alleges SECORD had knowledge.

587.  The Defendants' acts were intentional and done in violation of Plaintiff's legal and Constitutional rights, and have directly and proximately caused Plaintiff humiliation, mental pain, intentional inflictions of emotional distress, negligent infliction of emotional distress, injury and harm to Plaintiff's health and body civil and constitutional rights violations, and the invasion of privacy, and has cost Plaintiff excessive amounts of money, placing Plaintiff and Plaintiff's family in financial hardship.

## TWENTY-EIGHTH CAUSE OF ACTION
### Racketeering Influenced Corrupt Organizations, (RICO) Prohibited Activities

(In Violation of 18 U.S.C. §1962©) (RICO))
(Against All Defendants)

588.    Plaintiff incorporates and realleges the preceding paragraphs as if fully set out herein.

589.    Section 1962©) of RICO provides that "it will be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which effect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprises affairs through a pattern of racketeering activity or collection of unlawful debt.

590.    18 U.S.C. 1961(2) "State" means any state of the United States, the District of Columbia, the Commonwealth of Puerto Rico, and territory or possession of the United States, any political subdivision, or any department, agency, or instrumentality thereof.  18 U.S.C. §1961(4) of RICO defines "enterprise" to include "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity.

591.    The first theory of enterprise is WEST VALLEY DETENTION CENTER, which is a San Bernardino County Detention Center, run by the Sheriff's Department in the United States is a legal entity.  The delivery system is made up of deputies, nurses, judges, district attorney's and doctors who must be associated in fact for the system to function.   The Detention Center delivery system in the United States has an ascertainable structure separate and apart from the pattern of racketeering conduct.  The Detention Center must be associated, and must function as at least an inmate housing and  information organization to provide jail services to the inmates of the United States in order to protect the residents of the United States.

592.    ALLWAYS FOR-U BAIL BONDS is an enterprise made up of Bail Agents whose duties are to post bail for defendants' accused of crimes.  The delivery system is made up of Bail Agents,  law enforcement personnel, Jail Personnel, and district attorney's who must be

associated in fact for the system to function.  The Bail Bonds delivery system in the United States has an ascertainable structure separate and apart from the pattern of racketeering conduct.  The defendants have sought to participate in the affairs of the enterprise through the pattern of racketeering activity the Plaintiff has alleged.

593.   SAN BERNARDINO COUNTY DISTRICT ATTORNEY'S OFFICE is a legal entity made up of a District Attorney, Deputy District Attorney's and Investigators,  whose duties are to investigate and prosecute those accused of crimes.  The delivery system is made up of Deputy District Attorney's, Investigators, law enforcement personnel, and Judges who must be associated in fact for the system to function.  The District Attorney's Office delivery system in the United States has an ascertainable structure separate and apart from the pattern of racketeering conduct.  The defendants have sought to participate in the affairs of the enterprise through the pattern of racketeering activity the Plaintiff has alleged.

594.   SAN BERNARDINO COUNTY SHERIFF'S DEPARTMENT is a legal entity made up of a Sheriff, Deputies, Detectives and other law enforcement personnel of various ranks, whose duties are to document and investigate information provided by citizens regarding laws being broken by accused persons'.  The Law Enforcement delivery system is made up of Deputies, Detectives and other law enforcement personnel with various ranks, district attorney's, county jails, county jail personnel, and judges who must be associated in fact for the system to function.   The District Attorney's Office delivery system in the United States has an ascertainable structure separate and apart from the pattern of racketeering conduct.  The defendants have sought to participate in the affairs of the enterprise through the pattern of racketeering activity the Plaintiff has alleged.

595.   USA FEDERAL CREDIT UNION, which is a Credit Unions or delivery system of financial services in the United States is an enterprise.  The delivery system is made up of lenders, bankers, collection personnel, and other financial representatives who must be associated in fact for the system to function.  The financial delivery system in the United States has an ascertainable structure separate and apart from the pattern of racketeering

conduct. The Credit Union must be associated, and must function as at least an information organization to provide financial services to the residents of the United States. The Defendants' have sought to participate in the affairs of the enterprise through the pattern of racketeering activity Plaintiff has alleged.

596. SECORD, BORBA, ZIBELL, ALLEN, VERLINGO, HEARY, RAMOS, PENROD, HOUTS, WEVELY, ROSAS, HENDERSON, MISLEH and HAMILTON are a group of individuals associated in fact, although not a legal entity, who have a common and shared purpose.

597. Alternatively, the Plaintiff alleges the Detention delivery system, the Law enforcement system, the Prosecutory system, the Credit Union System and the Bail Bond delivery system within California or every other geographic area in California constitute an enterprise and the defendants have participated in the affairs of those enterprises which include the classes in this case through a pattern of racketeering activity.

598. SECORD, BORBA, ZIBELL, ALLEN, VERLINGO, HEARY, RAMOS, PENROD, VERLINGO, and ZIBELL are a group of individuals associated in fact, although not a legal entity, who have a common and shared purpose.

599. Alternatively, the Plaintiff alleges the Detention delivery system, the Law enforcement system, the Prosecutory system and the Bail Bond delivery system within California or every other geographic area in California constitute an enterprise and the defendants have participated in the affairs of those enterprises which include the classes in this case through a pattern of racketeering activity.

600. Under all theories of enterprise alleged by the Plaintiff, the enterprises have an ascertainable structure separate and apart from the pattern of racketeering activity in which the defendants' engage.

601. With respect to the allegations contained herein, the Defendants' have engaged in a "pattern of racketeering activity," as defined in § 1961 (5) of RICO, by committing and/or conspiring to aiding and abetting a scheme for at least two such acts of racketeering

activity, as described above.

602.    The multiple acts of racketeering activity committed and/or conspired to or aided and abetted by the Defendants, were related to each other and amount to and pose a threat of continued racketeering activity, and therefore, constitute a "pattern of racketeering activity," as defined in 18 U.S.C. § 1961(5).

603.    With respect to the activities alleged herein, the Defendants' have acted at all times with malice toward Plaintiff's life and rights secured by the Constitution of the United States.

604.    The Defendants' acts amount to an overt and extortionate scheme to deprive the Plaintiff to her right secured to her under the laws of California and her Constitutional Rights secured to her by the United States laws codes and Constitution.  Including the right to redress without the fear of reprisals, life, liberty,  economic loss, and/or equal protection of the laws, which Plaintiff has been deprived of such rights, which have and continue to Constitute a pattern of illegal activity has and continues to inflict harm upon the Plaintiff.

605.    In carrying out the overt acts described above, the defendants' have engaged in conduct in violation of State, and Federal Laws, including inter alia 18 U.S.C. §§ 2, 4, 241, 242, 1021, 1341,  1343, 1346, 1505, 1512, 1621, 1623, 18 U.S.C. §1951, §1952, 18 U.S.C. §1956, 18 U.S.C. §1957, 18 U.S.C. §1961, et seq. (RICO) as set forth more fully above.

606.    Therefore, defendants' have each engaged in "racketeering activity which is defined in §1961(1) of RICO to mean "any act which is indictable under any of the following provisions Title 18 §892 (Relating to extortionate Credit Transaction), §894 (Relating to collection of extensions of credit by extortionate means)    §1341 (relating to mail fraud) §1343 (relating to wire fraud) §1952(a) (relating to travel in interstate commerce to attempt to and to actually commit mail fraud,), §1957 (Engaging in Monetary Transactions in Property derived from Specified Unlawful Activity), and 18 U.S.C. §1951 (Extortion), 18 U.S.C. §1956 (Laundering of Monetary Instruments) and instances of offers, solicitations and acceptance of "favors" In their activity to influence and interfere with court processes in order to obtain the result which best suits them.

607.   As a proximate result of Defendants' unlawful pattern of illegal extortionate conduct as described above, Plaintiff's property, life, liberty, finances, health safety, reputation, security and rights secured to her as a citizen of the United States has been injured as described above.

### TWENTY-NINTH CAUSE OF ACTION

**Racketeering Influenced Corrupt Organizations, (RICO**

(RICO VIOLATIONS 18 U.S.C. §1962(d) BY
CONSPIRING TO VIOLATE 18 U.S.C. §1962(c))
(Against All Defendants)

608.   Plaintiff incorporates and realleges the preceeding paragraphs as fully set out herein.

609.   This claim for relief arises under 18 U.S.C. §1964(a) of RICO and seeks to obtain injunctive and declaratory relief from the defendants' activities described herein for violations of 18 U.S.C. §1962(d) for their conspiring to violate 18 U.S.C. §1962©).

610.   Section 1962(d) of RICO provides it "shall be unlawful for any person to conspire to violate any of the provisions of subsection ( c ) of this section."

611.   Section 1961(4) of RICO defines "enterprise" to include any individual, partnership, corporation, association or other legal entity, and any union or group of individuals associated in fact although not a legal entity."

612.   Under all theories of enterprise alleged by the Plaintiff, the enterprises have an ascertainable structure separate and apart from the pattern of racketeering activity in which the defendants engage.

613.   Defendants have violated § 1962(d) by conspiring to violate 18 U.S.C. § 1962 ( c).  The object of this conspiracy has been and is to conduct or participate in, directly or indirectly, the conduct of the affairs of the § 1962 (c) Enterprises described previously through a pattern of racketeering activity.

614.   As demonstrated in detail above, the defendants' co-conspirators have engaged in numerous overt and predicate fraudulent and extortionate racketeering acts in furtherance of

the conspiracy, including material misrepresentations and omissions designed to fraudulently induce retaliatory prosecution of criminal charges, civil suits, paternity litigation, harassment, intimidation, multiplicity of suits, attempting to obtain money on judgments, criminal conviction, and keep Plaintiff incarcerated, which has forced Plaintiff to repay bail bond fees', attorney fees, travel expenses, medical expenses in addition to new bond premiums for the new warrant, in order to punish Plaintiff for exercising her rights for redress and for disclosing numerous internal systemic fraudulent and extortionate policies and practices designed to defraud the Plaintiff of money, to unlawfully influence and interfere with the Plaintiff's rights secured to her by the laws of California, United States Laws and the Constitution of the United States.

615.   The nature of the above described defendants co-conspirators' acts, material misrepresentations, and omissions in furtherance of the conspiracy gives rise to an inference they not only agreed to the objective of an 18 U.S.C. § 1962(d) violation of RICO by conspiring to violate 18 U.S.C. § 1962 ( c), but they were aware their ongoing fraudulent and extortionate acts have been and are part of an overall pattern of racketeering activity.

616.   As a direct and proximate result of the Defendants' overt acts and predicate acts in furtherance of violating 18 U.S.C. § 1962(d) by conspiring to violate 18 U.S.C. §1962 ( c), the Plaintiff has been and is continuing to be injured in her property, life, liberty, finances, reputation, health safety, security and rights secured to her as a citizen of the United States more fully above. Pursuant to 18 U.S.C. § 1964 ( c) of RICO, the Plaintiff is entitled, therefore, to bring this action on behalf of herself to obtain injunctive and declaratory relief, as well as the costs of bringing this suit and attorneys' fees.

617.   The defendants' have sought to and have engaged in the commission of and continue to commit overt acts and the following described unlawful racketeering predicate acts have and continue to generate income, proceeds and/or favors, received by defendants from such patterns of racketeering activity, including:

a.   Instances of mail and wire fraud violations of 18 U.S.C. §§ 1341, 1343 and 1346;

b.  Instances of Extortionate Credit Transactions and Collection of extensions of credit by extortionate means in violation of 18 U.S.C. §§ 892 and 894.

c.  Instances of travel in interstate commerce to attempt to and to actually commit Extortion, mail fraud, wire fraud, engaging in monetary transactions in property derived from specified unlawful activity, in violation of 18 U.S.C. § 1952(a);

d.  Instances of laundering of monetary instruments and engaging in monetary transactions in property derived from specified unlawful activity in violation of 18 U.S.C. §§ 1956 and 1957;

e.  Instances of offers, solicitations and acceptance of "favors" in their activity to influence and interfere with court processes in order to obtain the result which best suits them.

618.  The Defendants' violations of the above federal laws and the effects thereof detailed above are continuing and will continue unless injunctive relief prohibiting the Defendants' illegal acts constituting a pattern of racketeering activity is fashioned and imposed by the Court.

## **THIRTIETH CAUSE OF ACTION**

### **Racketeering Influenced Corrupt Organizations, (RICO)**

(RICO VIOLATIONS 18 U.S.C. §2 BY SEEKING TO
AND AIDING AND ABETTING A SCHEME TO VIOLATE 18 U.S.C.  §1962 (c))
(Against All Defendants)

619.  Plaintiff incorporates and realleges the preceding paragraphs as if fully set out herein.

620.  This claim for relief arises under 18 U.S.C. § 1964©) of RICO providing for injunctive and declaratory relief for Defendants' violations of 18 U.S.C. § 2 by seeking to aid and abet and aiding and abetting a scheme to violate 18 U.S.C. § 1962©).

621.  Under all theories of enterprise alleged by the Plaintiff, the enterprises have an ascertainable structure separate and apart from the pattern of racketeering activity in which

the defendants engage.

622.    With respect to the Defendants' violation of 18U.S.C. §2, each defendant has sought to, and have aided and abetted, each other each other respectively in the commission of those violations of 18 U.SC. §2 by seeking to and aiding and abetting a scheme to violate 18 U.S.C. §1962 ( c).

623.    Each WEST VALLEY DETENTION CENTER defendant, each SAN BERNARDINO COUNTY SHERIFF'S DEPARTMENT defendant, each SAN BERNARDINO COUNTY DISTRICT ATTORNEY'S defendant, each ALLWAYS FOR-U BAIL BONDS defendant, each USA FEDERAL CREDIT UNION  defendant has aided and abetted, and has a shared intent to aid and abet each other in attempting to derive, and actually deriving substantial favors, income and property and proceeds through the above described pattern of racketeering activity.  Each WEST VALLEY DETENTION CENTER defendant, each SAN BERNARDINO COUNTY SHERIFF'S DEPARTMENT defendant, each SAN BERNARDINO COUNTY DISTRICT ATTORNEY'S defendant, each ALLWAYS FOR-U BAIL BONDS defendant, each USA FEDERAL CREDIT UNION  defendant has further aided and abetted, and has a shared intent to aid and abet, each other defendant respectively, in conducting or participating in the conduct of the affairs of the Section 1962 ( c) Enterprise described above through a pattern of racketeering activity, in violation of 18 U.S.C. §2 and 18 U.S.C. §1962 ( c).

624.    As a direct and proximate result of Defendants' RICO violation of 18 U.S.C. § 2 by seeking to and aiding and abetting a scheme to violate 18 U.S.C. § 1962 ( c), the Plaintiff has been and is continuing to be injured in her property, life, liberty, finances, reputation, health, safety, security and rights secured to her as a citizen of the United States more fully above.  Pursuant to 18 U.S.C. § 1964 ( c) of RICO, the Plaintiff is entitled, therefore, to

bring this action on behalf of herself to obtain injunctive and declaratory relief, as well as the costs of bringing this suit and attorneys' fees.

625.    The defendants' have sought to and have engaged in the commission of and continue to commit overt acts and the following described unlawful racketeering predicate acts have and continue to generate income, proceeds and/or favors, received by defendants from such patterns of racketeering activity, including:

a.    Instances of mail and wire fraud violations of 18 U.S.C. §§ 1341, 1343 and 1346;

b.    Instances of Extortionate Credit Transactions and Collection of extensions of credit by extortionate means in violation of 18 U.S.C. §§ 892 and 894.

c.    Instances of travel in interstate commerce to attempt to and to actually commit Extortion, mail fraud, wire fraud, engaging in monetary transactions in property derived from specified unlawful activity, in violation of 18 U.S.C. § 1952(a);

d.    Instances of laundering of monetary instruments and engaging in monetary transactions in property derived from specified unlawful activity in violation of 18 U.S.C. §§ 1956 and 1957;

e.    Instances of offers, solicitations and acceptance of "favors" in their activity to influence and interfere with court processes in order to obtain the result which best suits them.

626.    The Defendants' violations of the above federal laws and the effects thereof detailed above are continuing and will continue unless injunctive relief prohibiting the Defendants' illegal acts constituting a pattern of racketeering activity is fashioned and imposed by the Court.

627.    By reason of each Defendants' violations of 18 U.S.C. §1962(d) and 18 U.S.C. §2 by conspiring to violate 18 U.S.C. §1962 ( c), and seeking to and aiding and abetting a scheme to violate 18 U.S.C. §1962 ( c), the Plaintiff is entitled to injunctive and declaratory relief

pursuant to 18 U.S.C. § 1964 ( c).

## **THIRTY-FIRST CAUSE OF ACTION**

### **Racketeering Influenced Corrupt Organizations, (RICO) Prohibited Activities**

(In Violation of 18 U.S.C. §1962 (RICO))
(Against All Defendants)

628.   Plaintiff incorporates and realleges the preceding paragraphs as if fully set out herein.

629.   Defendants, acting under the color of law and in concert with one another, engaged in intentional due process violations.  In so doing, defendants have caused the Plaintiff to suffer deprivation of her fundamental rights to due process.  These actions violated Plaintiff's rights to due process of the laws.

630.   Plaintiff and Plaintiff's property was severely damaged by the favors and extortionate money defendants' received by making it financially difficult on Plaintiff.  In addition, Plaintiff stayed incarcerated for 3-1/2 weeks as a result of not being able to re-post her excessive bail, because of the money defendants' forced Plaintiff to spend-out.

631.   The defendants' have sought to and have engaged in the commission of and continue to commit overt acts and the following described unlawful racketeering predicate acts have and continue to generate income,  proceeds and/or favors,   received by defendants from such patterns of racketeering activity, including:

a.      Instances of mail and wire fraud violations of 18 U.S.C. §§ 1341, 1343 and 1346;

b.      Instances of Extortionate Credit Transactions and Collection of extensions of credit by extortionate means in violation of 18 U.S.C. §§ 892 and 894.

c.      Instances of travel in interstate commerce to attempt to and to actually commit Extortion, mail fraud, wire fraud, engaging in monetary transactions in property

derived from specified unlawful activity, in violation of 18 U.S.C. § 1952(a);

d.    Instances of laundering of monetary instruments and engaging in monetary transactions in property derived from specified unlawful activity in violation of 18 U.S.C. §§ 1956 and 1957;

e.    Instances of offers, solicitations and acceptance of "favors" in their activity to influence and interfere with court processes in order to obtain the result which best suits them..

632.    The Defendants' acts were intentional and done in violation of Plaintiff's legal and Constitutional rights, and have directly and proximately caused Plaintiff humiliation, mental pain, intentional inflictions of emotional distress, negligent infliction of emotional distress,  injury and harm to Plaintiff's health and body civil and constitutional rights violations, and the invasion of privacy, and has cost Plaintiff excessive amounts of money, placing Plaintiff and Plaintiff's family in financial hardship.

## THIRTY-SECOND CAUSE OF ACTION

### Civil Rights, Civil Action for Deprivation of Rights
(In Violation of 42 U.S.C. §1983)
(Against All Defendants)

633.    Plaintiff incorporates and realleges the preceding paragraphs as if fully set out herein.

634.    SECORD, acting under the color of law, subjected Plaintiff to Excessive Bail, in violation of Plaintiff's Eighth Amendment Right.

635.    Plaintiff is informed, believes and thereon alleges SECORD conspired with other defendants', DOE DEPUTIES, DOE NURSES, DOE CONTRACTORS, LIONG, and other defendants stating Plaintiff did not have any medical problems, as a result, Plaintiff was not

given her heart medications, in violation of the Eighth Amendment Right pertaining to Cruel and Unusual Punishment and in violation of the United States Code 18 §2340A Torture.

636.  SECORD, acting under the color of law, was aware of the other defendants' violations, which were in violation of Plaintiff's First, Fourteenth, and Eighth Amendment Rights, and in violation of 18 U.S.C. 2340A and took no steps to protect Plaintiff.   This was in direct violation of the Equal Protection of the Law clause of the First and Fourteenth Amendment.

637.  SECORD, acting under the color of law, in his official and individual capacity violated Plaintiff's first and fourteenth Amendment rights secured to her by the United States Constitution and the laws of the United States by giving confidential information to ALLEN, HOUTS, and USA FEDERAL CREDIT UNION about Plaintiff.

638.  ALLEN violated 18 U.S.C. §§2 and 242 by conspiring with LEIBERICH, VERLINGO, ZIBELL, and HEARY to have them appear as witnesses against Plaintiff in Plaintiff's Paternity action out of retaliation and to intimidate Plaintiff.

639.  ZIBELL and VERLINGO conspired with ALLEN to testify on behalf of ALLEN in Plaintiff's Paternity Action out of retaliation for Plaintiff's refusal to sign a waiver of fees in violation of the United States Constitution and Federal and State Laws.

640.  DOE DEPUTIES, LIONG, DOE NURSES, WEST VALLEY DETENTION CENTER, PENROD, SAN BERNARDINO COUNTY SHERIFF'S DEPARTMENT and DOE CONTRACTORS, acting under the color of law, refused medical attention and medications to Plaintiff.  Defendants' furthered their scheme by refusing Plaintiff her heart medications and insulin pump against Court Order, in violation of Eighth Amendment Right pertaining to Cruel and Unusual Punishment and in violation of 18 U.S.C. §2340A Torture.

641.  LEIBERICH admitted in San Bernardino County Superior Court, Rancho Cucamonga District, before BORBA he did not read Plaintiff her Miranda Rights.  LEIBERICH further

refused Plaintiff counsel when he arrested her. This was in violation of Plaintiff's rights secured to her by the First and Fourteenth Amendment of the United States Constitution pertaining to Due Process of the laws.

642. HOUTS, USA FEDERAL CREDIT UNION, SECORD, LEIBERICH, SAN BERNARDINO COUNTY DISTRICT ATTORNEY'S OFFICE, WEVELY and ROSAS conspired to have the testimony of WEVELY and ROSAS falsified in violation of the Due Process Cause and Equal Protection of the laws secured by the First, Fourteenth, and Fifth Amendment of the United States Constitution, and in violation of 18 U.S.C. §§ 1621, 1622, and 1623.

643. RAMOS and THE SAN BERNARDINO COUNTY DISTRICT ATTORNEY'S OFFICE were aware of the actions taking place, however, took no steps to protect the life of Plaintiff or prosecute the defendants' which were breaking the laws of the United States and the Laws of California. Instead, RAMOS and the SAN BERNARDINO COUNTY DISTRICT ATTORNEY'S OFFICE ignored the illegal behaviors. This was in violation of 18 U.S.C. §4, and Plaintiff's Due Process Rights, Plaintiff's Rights to Equal Protection of the Law, Excessive Bail, Cruel and Unusual Punishment, which are secured to her by the First, Eighth and Fourteenth Amendment Rights secured to her by the United States Constitution.

644. BORBA, was aware of the actions taking place by the other defendants', however, took no steps to protect the life of Plaintiff or prosecute the defendants' which were breaking the laws of the United States and the Laws of California. Instead, BORBA ignored the illegal behaviors and allowed them to continue. This was in violation of 18 U.S.C. §4, and Plaintiff's Due Process Rights, Plaintiff's Rights to Equal Protection of the Law, Excessive Bail, Cruel and Unusual Punishment, which are secured to her by the First, Eighth and Fourteenth Amendment Rights secured to her by the United States Constitution.

645. Plaintiff is informed, believes, and thereon alleges the acts of defendants' have happened to other individuals and the illegal activity is continuing within San Bernardino County.

646.    All Defendants' conspired together attempting to keep Plaintiff incarcerated. They further conspired together to refuse medical attention and medications to Plaintiff in violation of Plaintiff's First and Fourteenth Amendment Rights secured to her by the United States Constitution and in violation of 18 U.S.C §§ 2, 241, and 242, Defendants' knew each other and worked together within the County of San Bernardino.

647.    All Defendants' subjected Plaintiff to the deprivation of rights, immunity and privileges secured by the Constitution and laws.

648.    Defendants' actions also violated California *Civil Code* §43 and §52.1(a).

649.    The prosecutions against Plaintiff are Retaliatory. The first arrest on January 15, 2002 was after Plaintiff filed complaints against MORRISON with the San Bernardino County Board of Supervisors and the FBI. . No charges were ever filed against Plaintiff resulting from that arrest. The first criminal case was filed May 9, 2003 against Plaintiff after she filed a lawsuit against the County of San Bernardino, San Bernardino county Sheriff's Department, City of Rancho Cucamonga, Detective Morrison, Deputy Girard, and Detective Skaturo on January 14, 2003. The second arrest and second set of charges were filed against Plaintiff after she filed a Government Claim dated June 10, 2004 and signed for by the SAN BERNARDINO COUNTY DISTRICT ATTORNEY'S OFFICE on June 17, 2004 for the illegal access of Plaintiff's confidential Paternity Action and sharing of confidential information with outside parties, which was illegally taken from Plaintiff's confidential Paternity Action. All Defendants' have gone to extreme lengths in order to harm and destroy Plaintiff.

650.    The Defendants' acts were intentional and done in violation of Plaintiff's legal and Constitutional rights, and have directly and proximately caused Plaintiff humiliation, mental pain, intentional inflictions of emotional distress, negligent infliction of emotional distress, injury and harm to Plaintiff's health and body civil and constitutional rights violations, and the invasion of privacy, and has cost Plaintiff excessive amounts of money,

**Complaint**                                  - 127 -

placing Plaintiff and Plaintiff's family in financial hardship.

## **THIRTY-THIRD CAUSE OF ACTION**

### **Civil Rights, Conspiracy to Interfere with Civil Rights**
(In Violation of 42 U.S.C. § 1985)
(Against All Defendants)

651.  Plaintiff incorporates and realleges the preceding paragraphs as if fully set out herein.

652.  SECORD, acting under the color of law, and acting in his official capacity subjected Plaintiff to Excessive Bail, in violation of Plaintiff's Eighth Amendment Right.  Plaintiff is informed, believes and thereon alleges SECORD conspired with other defendants', DOE DEPUTIES, DOE NURSES, DOE CONTRACTORS, LIONG, and other defendants stating Plaintiff did not have any medical problems, as a result, Plaintiff was not given her heart medications, in violation of the Eighth Amendment Right pertaining to Cruel and Unusual Punishment and in violation of 18 U.S.C. §2340A  Torture.

653.  SECORD, acting under the color of law, and in his official capacity was aware of the other defendants' violations, which were in violation of Plaintiff's First, Fourteenth, and Eighth Amendment Rights, and in violation of 18 U.S.C. 2340A and took no steps to protect Plaintiff.   This was in direct violation of the Equal Protection of the Law clause of the First and Fourteenth Amendment.

654.  DOE DEPUTIES, LIONG, DOE NURSES, WEST VALLEY DETENTION CENTER, PENROD, SAN BERNARDINO COUNTY SHERIFF'S DEPARTMENT and DOE CONTRACTORS, acting under the color of law,  refused medical attention to Plaintiff, while Plaintiff was suffering chest pains which radiated down her left arm and up to her jaw.  Defendants' furthered their scheme by refusing Plaintiff her heart medications and insulin pump against Court Order, in violation of her Eighth Amendment Right pertaining to Cruel and Unusual Punishment and in violation of 18 U.S.C. §2340A Torture.

655.  LEIBERICH, acting under the color of law, did not read Plaintiff her Miranda Rights. LEIBERICH further refused Plaintiff counsel when he arrested her. This was in violation of Plaintiff's rights secured to her by the First and Fourteenth Amendment of the United States Constitution pertaining to Due Process of the laws.

656.  RAMOS and THE SAN BERNARDINO COUNTY DISTRICT ATTORNEY'S OFFICE, acting under the color of law, were aware of the actions taking place, however, took no steps to protect the life of Plaintiff or prosecute the defendants' which were breaking the laws of the United States and the Laws of California. Instead, RAMOS and the SAN BERNARDINO COUNTY DISTRICT ATTORNEY'S OFFICE ignored the illegal behaviors. This was in violation of 18 U.S.C. §4, and Plaintiff's Due Process Rights, Rights to Equal Protection of the Law, Excessive Bail, Cruel and Unusual Punishment, which are secured to her by the First, Eighth and Fourteenth Amendment of the United States Constitution.

657.  BORBA, acting under the color of law was aware of the actions taking place by the other defendants', however, took no steps to protect the life of Plaintiff or prosecute the defendants' which were breaking the laws of the United States and the Laws of California. Instead, BORBA ignored the illegal behaviors and allowed them to continue. This was in violation of 18 U.S.C. §4, and Plaintiff's Due Process Rights, Rights to Equal Protection of the Law, Excessive Bail, Cruel and Unusual Punishment, which are secured to her by the First, Eighth and Fourteenth Amendment of the United States Constitution.

658.  SECORD and LEIBERICH, acting under the color of law, in their official and individual capacity, through the SAN BERNARDINO COUNTY DISTRICT ATTORNEY'S OFFICE, gave Plaintiff's confidential information to ALLEN in violation of Plaintiff's Rights to Privacy and Invasion of Privacy secured to her by the First and Fourteenth Amendment of the United States Constitution.

659.  All Defendants' conspired together attempting to keep Plaintiff incarcerated. They further

conspired together to refuse medical attention and medications to Plaintiff attempting to hinder and endanger Plaintiff's life. Defendants' know each other and work together within the County of San Bernardino.

660. All Defendants' conspired, with each other to deprive Plaintiff of equal protection of the laws, equal privileges and immunities under the laws and hindering and preventing the constituted authorities from giving or securing to Plaintiff the equal protection of the laws.

661. Plaintiff is informed, believes and thereon alleges that the prosecutions against her are retaliatory for exercising her rights to redress.

662. As a result, Plaintiff suffered another heart attack which resulted in permanent heart damage.

663. Defendants' actions also violated California *Civil Code* §43 and §52.1(a).

664. The Defendants' acts were intentional and done in violation of Plaintiff's legal and Constitutional rights, and have directly and proximately caused Plaintiff humiliation, mental pain, intentional inflictions of emotional distress, negligent infliction of emotional distress, injury and harm to Plaintiff's health and body civil and constitutional rights violations, and the invasion of privacy, and has cost Plaintiff excessive amounts of money, placing Plaintiff and Plaintiff's family in financial hardship.


## THIRTY-FOURTH CAUSE OF ACTION

### Civil Rights, Action for Neglect to Prevent

(In Violation of 42 U.S.C. § 1986)
(Against All Defendants)

665. Plaintiff incorporates and realleges the preceding paragraphs as if fully set out herein.

666. SECORD, acting under the color of law, was aware of the other defendants' violations,

which were in violation of Plaintiff's First, Fourteenth, and Eighth Amendment Rights, and in violation of 18 U.S.C. 2340A and took no steps to protect Plaintiff.   This was in direct violation of the Equal Protection of the Law clause of the First and Fourteenth Amendment.

667.   RAMOS and THE SAN BERNARDINO COUNTY DISTRICT ATTORNEY'S OFFICE, acting under the color of law,  were aware of the actions taking place, however, took no steps to protect the life of Plaintiff or prosecute the defendants' which were breaking the laws of the United States and the Laws of California.  Instead, RAMOS and the SAN BERNARDINO COUNTY DISTRICT ATTORNEY'S OFFICE ignored the illegal behaviors.  This was in violation of 18 U.S.C. §4, and Plaintiff's Due Process Rights, Plaintiff's Rights to Equal Protection of the Law, Excessive Bail, Cruel and Unusual Punishment,  which are secured to her by the First, Eighth and Fourteenth Amendment Rights secured to her by the United States Constitution.

668.    BORBA, acting under the color of law was aware of the actions taking place by the other defendants', however, took no steps to protect the life of Plaintiff or prosecute the defendants' which were breaking the laws of the United States and the Laws of California. Instead,  BORBA ignored the illegal behaviors and allowed them to continue.  This was in violation of 18 U.S.C. §4, and Plaintiff's Due Process Rights, Plaintiff's Rights to Equal Protection of the Law, Excessive Bail, Cruel and Unusual Punishment,  which are secured to her by the First, Eighth and Fourteenth Amendment Rights secured to her by the United States Constitution.

669.   All Defendants' had knowledge the wrongs conspired to be done, and mentioned in section 1985 of this title were about to be committed, and having power to prevent or aid in preventing the commission of the same, neglected and refused to take proper action.

670.   Plaintiff is informed, believes and thereon alleges that the prosecutions against her are retaliatory for exercising her right to redress.

671.   Defendants' actions also violated California *Civil Code* §43 and §52.1(a).

672. The Defendants' acts were intentional and done in violation of Plaintiff's legal and Constitutional rights, and have directly and proximately caused Plaintiff humiliation, mental pain, intentional inflictions of emotional distress, negligent infliction of emotional distress, injury and harm to Plaintiff's health and body civil and constitutional rights violations, and the invasion of privacy, and has cost Plaintiff excessive amounts of money, placing Plaintiff and Plaintiff's family in financial hardship.

## THIRTY-FIFTH CAUSE OF ACTION

### Breach of Contract
(Against Defendants', ZIBELL, VERLINGO, SENECA, and
ALLWAYS FOR-U BAIL BONDS)

673. Plaintiff incorporates and realleges the preceding paragraphs as if fully set out herein.

674. Plaintiff is informed, believes and thereon alleges ZIBELL and VERLINGO gave SECORD her new home address. ZIBELL and VERLINGO further gave falsified testimony in order to have Plaintiff's bail exonerated. ZIBELL and VERLINGO used extortionate means to obtain money to pay for a second bail premium. ZIBELL and VERLINGO retaliated against Plaintiff because Plaintiff's attorney's refused to allow Plaintiff to sign a waiver of fees' if Plaintiff had been released on her own recognize or allowed a bail reduction.

675. On or about May 21, 2003, VERLINGO and ZIBELL contact Plaintiff and Plaintiff's step-mother in order to post Plaintiff's bail. .

676. The Defendants' acts were intentional and done in violation of Plaintiff's legal and Constitutional rights, and have directly and proximately caused Plaintiff humiliation, mental pain, intentional inflictions of emotional distress, negligent infliction of emotional distress, injury and harm to Plaintiff's health and body civil and constitutional rights violations, and the invasion of privacy, and has cost Plaintiff excessive amounts of money, placing Plaintiff and Plaintiff's family in financial hardship.

## THIRTY-SIXTH CAUSE OF ACTION

Complaint

- 132 -

**Breach of Fiduciary Duty**
(Against Defendants' ZIBELL, VERLINGO,
SENECA, and ALLWAYS FOR-U BAIL BONDS)

677.    Plaintiff incorporates and realleges the preceding paragraphs as if fully set out herein.

678.    ZIBELL and VERLINGO had a duty to Plaintiff in posting her bail and to keep Plaintiff's information private and confidential.

679.    Plaintiff is informed, believes and thereon alleges ZIBELL and VERLINGO gave SECORD her new home address. ZIBELL and VERLINGO further gave falsified testimony in order to have Plaintiff's bail exonerated. ZIBELL and VERLINGO used extortionate means to obtain money to pay for a second bail premium. ZIBELL and VERLINGO retaliated against Plaintiff because Plaintiff's attorney's refused to allow Plaintiff to sign a waiver of fees' if Plaintiff had been released on her own recognize or allowed a bail reduction.

680.    The Defendants' acts were intentional and done in violation of Plaintiff's legal and Constitutional rights, and have directly and proximately caused Plaintiff humiliation, mental pain, intentional inflictions of emotional distress, negligent infliction of emotional distress,  injury and harm to Plaintiff's health and body civil and constitutional rights violations, and the invasion of privacy, and has cost Plaintiff excessive amounts of money, placing Plaintiff and Plaintiff's family in financial hardship.

## THIRTY-SEVENTH CAUSE OF ACTION
### Unjust Enrichment
(Against Defendant, BOONES, ALLWAYS FOR-U BAIL BONDS,
ZIBELL, VERLINGO, and SENECA INSURANCE)

681.    Plaintiff incorporates and realleges the preceding paragraphs as if fully set out herein.

682.    Although demand has been made of Defendant to reimburse, compensate and pay Plaintiff for the reimbursement of the second premium paid for Plaintiff's bail at the behest of

Defendant, Defendants' ZIBELL, VERLINGO and SENECA, have refused, and continues to refuse to reimburse or compensate Plaintiff.

683.  Defendants, and each of them, have been unjustly enriched by the second bail premium, profits and issues gained therefrom, with interest thereon at the legal rate of 10 % per annum from the date of Defendants's breach or alternatively from the date of the filing of the Complaint.

684.  The Defendants' acts were intentional and done in violation of Plaintiff's legal and Constitutional rights, and have directly and proximately caused Plaintiff humiliation, mental pain, intentional inflictions of emotional distress, negligent infliction of emotional distress,  injury and harm to Plaintiff's health and body civil and constitutional rights violations, and the invasion of privacy, and has cost Plaintiff excessive amounts of money, placing Plaintiff and Plaintiff's family in financial hardship.

## THIRTY-EIGHTH CAUSE OF ACTION

### Quantum Meriut

(Against Defendants', BOONES, ALLWAYS FOR-U BAIL BONDS,
ZIBELL, VERLINGO and SENECA INSURANCE)

685.  Plaintiff incorporates and realleges the preceding paragraphs as if fully set out herein.

686.  In or about May 24, 2004, Plaintiff paid Defendants' $25,000.00 as bail premium for her $250,000.00 bail amount on case #FWV-028000 in order to keep her out of jail. Defendants' agreed they would handle Plaintiff's bail.

687.  Plaintiff has performed all conditions, covenants, and promises required by her on her part to be performed in accordance with the terms and conditions of the contract with Defendants' ZIBELL, VERLINGO, and SENECA INSURANCE and all acts to be performed by the Plaintiff under the Agreement have occurred in substantially the form and

manner required by the Agreement and otherwise.

688. Defendants' breached the written agreement by failing, neglecting, and refusing to maintain Plaintiff's bail and refusing to reimburse Plaintiff for the premium paid for the bail premium under the written and oral agreement.

689. As a direct and foreseeable result of Defendants' breach of the written Agreement as well as the oral agreement, Plaintiff has suffered damages in the amount that exceeds the minimum jurisdiction of this court.

690. The Defendants' acts were intentional and done in violation of Plaintiff's legal and Constitutional rights, and have directly and proximately caused Plaintiff humiliation, mental pain, intentional inflictions of emotional distress, negligent infliction of emotional distress, injury and harm to Plaintiff's health and body civil and constitutional rights violations, and the invasion of privacy, and has cost Plaintiff excessive amounts of money, placing Plaintiff and Plaintiff's family in financial hardship.

## THIRTY-NINTH CAUSE OF ACTION

### Negligence
(Against All Defendants)

691. Plaintiff incorporates and realleges the preceding paragraphs as if fully set out herein.

692. Defendants ALLWAYS FOR-U BAIL BONDS, ZIBELL, VERLINGO, BOONES and SENECA, and each of them, were and currently are licensed bail bond agents and/or licensed insurance agents engaged in the business of selling, and other activities related to insurance and posting bail on behalf of persons accused of crimes.

693. As licensed bail bond agents, Defendants' ZIBELL and VERLINGO through BOONES, ALLWAYS FOR-U BAIL BONDS and the insurance company, SENECA they wrote the bail bond and made representations to Plaintiff regarding the transaction whereby Defendant ZIBELL and VERLINGO were selling a service to post a bail bond in the

amount of $250,000.00, encouraging Plaintiff and Plaintiff's stepmother to execute documents which would allow Defendants' BOONES, ALLWAYS FOR-U BAIL BONDS, ZIBELL, VERLINGO, and SENECA to proceed with the transaction, which Plaintiff did, on the understanding Defendants' would keep her bail in tact for a premium of $25,000.00 which Plaintiff paid.

694.  As bail bond agents, Defendants, ZIBELL and VERLINGO, had a duty to adequately advise, disclose, inform and/or otherwise make certain once Defendants advised Plaintiff regarding executing documents for the bail bond, Plaintiff would be adequately protected by the bail bond posted with the court.

695.  Plaintiff is informed and believes and thereon alleges once Plaintiff 's attorney's refused to allow Plaintiff to sign a waiver of fees on the pretense her bail was reduced or she was released on her own recognize,  The Defendants, and each of them, breached their duty to Plaintiff by allowing Defendants' BOONES, ALLWAYS FOR-U BAIL BONDS, ZIBELL, VERLINGO and SENECA revoked Plaintiff's bail, failed to disclose, failed to consult, failed to advise and inform, and/or otherwise make certain Plaintiff was properly and adequately protected in the transaction as agreed.

696.  As a direct and proximate result of Defendants' negligence as set forth above, Plaintiff was incarcerated at WEST VALLEY DETENTION CENTER.

697.  The Defendants, and each of them, breached that duty because they failed to complete the agreed upon transaction.

698.  Defendants' WEST VALLEY DETENTION CENTER, PENROD, SAN BERNARDINO COUNTY SHERIFF'S DEPARTMENT, LIONG, DOE DEPUTIES, DOE NURSES and DOE CONTRACTORS violated court orders and refused medical attention to Plaintiff, refused her heart medications, removed her insulin pump, convinced the doctors at Kaiser Hospital to release Plaintiff from the hospital, and placed Plaintiff in isolation in the mens unit of WEST VALLEY DETENTION CENTER.  Violating Court orders is also in

violation of California Code of Civil Procedure §1209(5),

699.    Plaintiff was refused medical personnel when she was having chest pains radiating down her left arm and up into her jaw. DOE DEPUTY refused and told Plaintiff she shouldn't commit crimes, this was inflicted torture. As a result, Plaintiff suffered a heart attack, which is temporary loss of an organ and loss of bodily function. Plaintiff also suffered Permanent heart damage.

700.    HEARY was aware Plaintiff was not receiving her heart medications, not receiving proper medical attention and mis-stated information to the San Bernardino County Superior Court, Rancho Cucamonga District.

701.    Plaintiff immediately requested her attorney, who was present at WEST VALLEY DETENTION CENTER. Plaintiff was refused and threatened by LEIBERICH and DOE DEPUTY if she did not answer their questions, she would be input into the system as Jane Doe.

702.    DOE DEPUTIES, DOE CONTRACTORS and SECORD listened and recorded Plaintiff's conversations with her attorney's while she was incarcerated at WEST VALLEY DETENTION CENTER.

703.    Defendants placed Plaintiff, in solitary confinement in the mens unit. Plaintiff could be seen by the male inmates. Plaintiff was informed by Jail personnel the reason she was placed in the mens unit was because the jail was so overcrowded.

704.    Defendants' violated a Federal Court order pertaining to the overcrowding of the jails, and the lack of medical care within San Bernardino County by keeping Plaintiff, who was not charged with violent crimes and had no prior criminal record, incarcerated while the facility was overcrowded and did not have room for her, and refused her medical attention, while PENROD was releasing inmates with prior criminal records and charged with violent crimes, including assault, assault with a deadly weapon and grand theft auto on their own recognize just hours after their arrest.

705. Defendants' denied Plaintiff access to a shower. Even if Plaintiff had been allowed access to a shower, Plaintiff would have been forced to use the mens shower in front of the male inmates.

706. Male inmates could see into Plaintiff's cell where she was locked in solitary confinement.

707. As a direct and proximate result, Plaintiff suffered a Myocardio Infarction (heart attack) causing permanent damage to Plaintiff's bypassed area of her heart and placing Plaintiff in Ketoacidosis.

708. Defendants' SECORD, BORBA, RAMOS, SAN BERNARDINO COUNTY DISTRICT ATTORNEY'S OFFICE, were aware of Plaintiff's medical history and Plaintiff had been making all her appearances. However, SECORD went forum shopping and obtained a second warrant for similar if not the same charges as Plaintiff had been fighting. SECORD affixed unreasonable bail upon Plaintiff in the amount of $350,000.00. BORBA, RAMOS, and the SAN BERNARDINO COUNTY DISTRICT ATTORNEY'S OFFICE, were aware of the fraud and deceit used by SECORD and the life threatening position Plaintiff was placed in. Instead of taking action to protect the life of Plaintiff, defendants' ignored the illegal activities.

709. As a direct and proximate result of Defendants' negligence as set forth above, Plaintiff has been damaged in an amount to be determined at the time of trial, but in excess of the minimum jurisdictional limits of this court.

710. The Defendants' acts were intentional and done in violation of Plaintiff's legal and Constitutional rights, and have directly and proximately caused Plaintiff humiliation, mental pain, intentional inflictions of emotional distress, negligent infliction of emotional distress, injury and harm to Plaintiff's health and body civil and constitutional rights violations, and the invasion of privacy, and has cost Plaintiff excessive amounts of money, placing Plaintiff and Plaintiff's family in financial hardship.

**FORTIETH CAUSE OF ACTION**

**Fraud & Deceit**

**(Concealment)**

(Against Defendants' SECORD, RAMOS, SAN BERNARDINO
COUNTY DISTRICT ATTORNEY'S OFFICE, ZIBELL,
VERLINGO, WEST VALLEY DETENTION CENTER,
DOE NURSES, HEARY, LIONG, and DOE CONTRACTORS)

711.   Plaintiff incorporates and realleges the preceding paragraphs as if fully set out herein.

712.   Defendants ALLWAYS FOR-U BAIL BONDS, ZIBELL, VERLINGO, BOONES and
SENECA, and each of them, were and currently are licensed bail bond agents and/or
licensed insurance agents engaged in the business of selling, and other activities related to
insurance and posting bail on behalf of persons accused of crimes.

713.   Defendants ALLWAYS FOR-U BAIL BONDS, ZIBELL, VERLINGO, BOONES and
SENECA, and each of them, had a duty to adequately perform their duties as agreed to.

714.   Defendants ALLWAYS FOR-U BAIL BONDS, ZIBELL, VERLINGO, BOONES and
SENECA intentionally and actively concealed and kept from Plaintiff they were revoking
her bail if her bail was not reduced and/or if she was not released on her own recognize if
she did not sign the waiver of fees'.

715.   SECORD used fraud and deceit and misrepresented facts to San Bernardino County
Superior Court, Central Division in order to obtain a second warrant for Plaintiff's arrest
for allegations pertaining to a 2001 Chevrolet Camaro, which Plaintiff had already been
arrested, posted bail and been litigating since May 2003.

716.   WEST VALLEY DETENTION CENTER, DOE NURSES, LIONG, DOE
CONTRACTORS, HEARY, PENROD and SAN BERNARDINO COUNTY SHERIFF'S
DEPARTMENT concealed the fact Plaintiff was not receiving her heart medications and
the court orders to protect the health and safety of Plaintiff were being violated.
Defendants' further concealed from the court they were unable and unequipped to handle
Plaintiff's medical conditions.

717. As a result of the concealment described above, Plaintiff has been damaged in an amount to be proven at trial, in an amount to be proven at trial, but exceeding the minimum jurisdictional limits of this court.

718. The conduct of the Defendants, and each of them, was despicable and carried on by Defendants, each as the agent of the others, and each ratifying the conduct of the others, with a willful and conscious disregard of the legal rights Plaintiff possessed; and, the conduct of the Defendants, and each of them, each as the agent of the others, and each ratifying the conduct of the others, was knowingly cruel and oppressive which subjected Plaintiff's rights; and Defendants, and each of them, each as the agent of the others, and each ratifying the conduct of the others, intentionally misrepresented, concealed, and misinformed Plaintiff and the Courts of the above stated facts all the time knowing such fraudulent statements would deprive Plaintiff of property and legal rights and otherwise cause Plaintiff severe personal injury.  Therefore, Plaintiff's are entitled to exemplary and punitive damages under *Civil Code*, §3294.

### FORTY-FIRST CAUSE OF ACTION
#### Fraud & Deceit
#### (Misrepresentation)
(Against Defendants' SECORD,  ZIBELL and VERLINGO)

719. Plaintiff incorporates and realleges the preceding paragraphs as if fully set out herein.

720. ZIBELL and VERLINGO used fraud and deceit and misrepresented to San Bernardino County Superior Court, Rancho Cucamonga District, Plaintiff did not notify them when she moved.

721. ZIBELL and VERLINGO used fraud and deceit and misrepresented facts to Plaintiff and her family in order to extort an addition $25,000.00 for a premium for a bail which they knew they had no intentions of following through with.

722. Plaintiff is informed, believes and thereon alleges ZIBELL and VERLINGO gave SECORD Plaintiff's home address, in spite of their contract to keep all information pertaining to

Plaintiff confidential.

723.  SECORD, ZIBELL and VERLINGO and each of them, misrepresented to the Plaintiff, and the courts, Defendants' intentions, thereby depriving Plaintiff of **any** ability to collect her bail premium back and forcing her to expend more money in order to be released from WEST VALLEY DETENTION CENTER.

724.  As a result of the misrepresentations described above, Plaintiff has been damaged in an amount to be proven at trial, in an amount to be proven at trial, but exceeding the minimum jurisdictional limits of this court.

725.  The conduct of the Defendants, and each of them, was despicable and carried on by Defendants, each as the agent of the others, and each ratifying the conduct of the others, with a willful and conscious disregard of the legal and property rights Plaintiff possessed; and, the conduct of the Defendants, and each of them, each as the agent of the others, and each ratifying the conduct of the others, was knowingly cruel and oppressive which subjected Plaintiff's rights; and Defendants, and each of them, each as the agent of the others, and each ratifying the conduct of the others, intentionally misrepresented, concealed, and misinformed Plaintiff of the above stated facts all the time knowing such fraudulent statements would deprive Plaintiff of property and legal rights and otherwise cause Plaintiff severe personal injury. Therefore, Plaintiff's are entitled to exemplary and punitive damages under *Civil Code*, §3294.

## **FORTY-SECOND CAUSE OF ACTION**

**Promise Without Intent to Perform**
(Against Defendant BOONES, ALLWAYS FOR-U
BAIL BONDS, ZIBELL and VERLINGO)

726.  Plaintiff incorporates and realleges the preceding paragraphs as if fully set out herein.

727.  On and prior to May 23, 2003, Defendant, ZIBELL and VERLINGO willfully, maliciously,

falsely, and fraudulently represented to Plaintiff if Plaintiff would pay the additional $25,000.00 bail premium,  BOONES would continue her bail bond.

728.    At the time these representations were made by Defendants and each of them, they knew these representations were false and Defendant, BOONES, ALLWAYS FOR-U BAIL BONDS and SENECA did not intend to continue Plaintiff's bail. These misrepresentations were made pursuant to a design and scheme by Defendants and each of them, to extort an additional premium of $25,000.00 from Plaintiff and her family.  At the time these representations were made, Plaintiff was ignorant of their falsity, but believed them to be true.  Had Plaintiff known the true facts Plaintiff would not have executed the documents ultimately cost Plaintiff an additional $25,000.00 premium without Plaintiff maintaining her freedom.

729.    In reliance on these representations by Defendants, and each of them, Plaintiff executed the documents necessary and paid the additional premium.  Plaintiff  fulfilled all of the terms agreed upon with  Defendants and each of them.

730.    Defendants and each of them now refuse to reimburse, compensate and otherwise perform the covenants and conditions as agreed.   Plaintiff did not discover or become aware the representations by Defendants and each of them were false and untrue until July 14, 2004 when her bail was exonerated.

731.    As a proximate result of Defendants' refusal to reimburse, compensate and otherwise perform the covenants and conditions as agreed, and of the wilful, malicious, false, and fraudulent misrepresentations made by Defendants and each of them to Plaintiff,  Plaintiff has been damaged in an amount to be proven at trial, but in excess of the minimum jurisdiction of this court.

732.    As alleged herein, the conduct of the Defendants and each of them, was despicable and carried on by Defendants, each as the agent of the others, and each ratifying the conduct of the others, with a willful and conscious disregard of the legal rights Plaintiff possessed;

and, the conduct of the Defendants, and each of them, each as the agent of the others, and each ratifying the conduct of the others, was knowingly cruel and oppressive which subjected Plaintiff's rights; and Defendants, and each of them, each as the agent of the others, and each ratifying the conduct of the others, intentionally misrepresented, concealed, and misinformed Plaintiff of the above stated facts all the time knowing such fraudulent statements would deprive Plaintiff's of legal rights and otherwise cause Plaintiff's severe personal injury and such concealment and misinformation would cause Plaintiff and did cause Plaintiff to loose substantial money, stay incarcerated and time away from her family. Therefore, Plaintiff's are entitled to exemplary and punitive damages under *Civil Code*, §3294.

### FORTY-THIRD CAUSE OF ACTION
**Slander**

(In Violation of California *Civil Code* §46)
(Against Defendants' ALLEN, SAN BERNARDINO COUNTY
DISTRICT ATTORNEY'S OFFICE, and SECORD)

733.  Plaintiff incorporates and realleges the preceding paragraphs as if fully set out herein.

734.  Plaintiff is informed, believes and thereon alleges SECORD through the SAN BERNARDINO COUNTY DISTRICT ATTORNEY'S OFFICE, made statements to the WEST VALLEY DETENTION CENTER personnel and Scott Mehr, Plaintiff's bail agent, Plaintiff had a criminal record in San Antonio, Texas, Plaintiff's husband had just been released from CIM (Chino Institute for Men), Plaintiff was a liar, could not be trusted and Plaintiff did not have any medical problems. SECORD further stated to Scott Mehr Plaintiff was a flight risk.

735.  The Defendants' acts were intentional and done in violation of Plaintiff's legal and Constitutional rights, and have directly and proximately caused Plaintiff humiliation,

mental pain, intentional inflictions of emotional distress, negligent infliction of emotional distress, injury and harm to Plaintiff's health and body civil and constitutional rights violations, and the invasion of privacy, and has cost Plaintiff excessive amounts of money, placing Plaintiff and Plaintiff's family in financial hardship.

## FORTY-FOURTH CAUSE OF ACTION
### False Imprisonment

(California Penal Code §§236 and 237(a))
(Against Defendants' SECORD, RAMOS, BORBA, VERLINGO,
ZIBELL, SENECA, SAN BERNARDINO COUNTY
DISTRICT ATTORNEY'S OFFICE and LEIBERICH)

736.   Plaintiff incorporates and realleges the preceding paragraphs as if fully set out herein.

737.   SECORD, through the SAN BERNARDINO COUNTY DISTRICT ATTORNEY'S OFFICE conspired with HOUTS, and ROSAS on behalf of USA FEDERAL CREDIT UNION,  in order to fabricate a second set of charges in Case #FSB-044914, which included an accusation for grand theft of a 2001 Camaro Z-28, which Plaintiff was charged with in Case #FWV-028000 and had been litigating since May 2003 and which were filed by SECORD.

738.   As previously stated herein, SECORD obtained a second warrant for Plaintiff's arrest with full knowledge that Plaintiff was ready and willing to appear for her next hearing, as previously stated herein.

739.   Plaintiff is informed, believes and thereon alleges  SECORD obtained this second warrant out of retaliation for the claims Plaintiff  filed against him.

740.   Plaintiff is informed, believes and thereon alleges SECORD  conspired with ZIBELL, VERLINGO, and SENECA to have Plaintiff's original bail exonerated.

741.   As previously stated herein ALLEN conspired with SECORD, the SAN BERNARDINO COUNTY DISTRICT ATTORNEY'S OFFICE, the SAN BERNARDINO COUNTY

SHERIFF'S DEPARTMENT and LEIBERICH to have criminal charges brought against Plaintiff based on false allegations made by ALLEN beginning in 1992.

742. Plaintiff is informed, believes and thereon alleges the prosecutions against her are in retaliation for the lawsuit and complaints she filed.

743. BORBA was aware of the deceit used by SECORD in obtaining the second warrant, however, BORBA allowed it, exonerated Plaintiff's original bail, and kept Plaintiff incarcerated at WEST VALLEY DETENTION CENTER. As part of the fraudulent scheme to keep Plaintiff incarcerated, SECORD requested BORBA to take judicial notice of two documents, which Plaintiff was accused of forging the seal of, however, Plaintiff had never been convicted of this crime, nor had Plaintiff even been tried on this issue. As a favor to SECORD, BORBA took judicial notice of these documents, which was in violation of Plaintiff's Constitutional Rights secured to her by the U.S. Constitution and the laws of the United States.

744. In furtherance of the fraudulent scheme to keep Plaintiff incarcerated, BORBA exonerated Plaintiff's bail without any type of motion for exoneration before the court.

745. The Defendants' acts were intentional and done in violation of Plaintiff's legal and constitutional rights, and have directly and proximately caused Plaintiff humiliation, mental pain, intentional inflictions of emotional distress, negligent infliction of emotional distress, injury and harm to Plaintiff's health and body civil and constitutional rights violations, and the invasion of privacy, and has cost Plaintiff excessive amounts of money, placing Plaintiff and Plaintiff's family in financial hardship

### FORTY-FIFTH CAUSE OF ACTION
#### Abuse of Process

(Against Defendants' ZIBELL, VERLINGO, ALLEN,
SECORD, RAMOS, SAN BERNARDINO COUNTY
DISTRICT ATTORNEY'S OFFICE)

746. Plaintiff incorporates and realleges the preceding paragraphs as if fully set out herein.

747. Defendants, in retaliation brought charges against Plaintiff for allegations of fraud, forgery and other alleged crimes, instead of pursuing those actions against ALLEN.

748. As previously stated herein SECORD, LEIBERICH and the SAN BERNARDINO COUNTY DISTRICT ATTORNEY'S OFFICE conspired with ALLEN regarding witness lists in order to harass Plaintiff in the paternity action herein referenced.

749. As previously stated herein ALLEN conspired with SECORD, the SAN BERNARDINO COUNTY DISTRICT ATTORNEY'S OFFICE, the SAN BERNARDINO COUNTY SHERIFF'S DEPARTMENT and LEIBERICH to have criminal charges brought against Plaintiff based on false allegations made by ALLEN beginning in 1992

750. As previously stated herein Defendants' shared private information of Plaintiff's with HOUTS and USA FEDERAL CREDIT UNION to aid them in a civil judgment against Plaintiff.

751. As previously stated herein HOUTS on behalf of USA FEDERAL CREDIT UNION filed declarations and attached the confidential private information illegally obtained in an unrelated Civil matter.

752. SECORD used San Bernardino County Superior Court, CENTRAL DIVISION to obtain the second warrant against Plaintiff, as he knew since Plaintiff was already fighting a similar if not the same case in San Bernardino County Superior Court, Rancho Cucamonga District, he would not be successful in obtaining a duplicate warrant.

753. SECORD failed to notify Plaintiff's counsel of the new charges or the fact he had obtained a second warrant for Plaintiff's arrest. SECORD was aware Plaintiff would be flying in for her court appearance.

754. On or about July 12, 2004, SECORD had Plaintiff arrested at the Ontario Airport as she stepped off the plane for a court appearance on Case #FWV-028000.

755. SECORD, SAN BERNARDINO COUNTY DISTRICT ATTORNEY'S OFFICE, BORBA, and RAMOS conspired together to have Plaintiff incarcerated for similar if not the same charges Plaintiff had been litigating since May 2003 and which were brought by SECORD.

756. SECORD raised Plaintiff's bail to $350,000.00 with a 1275.1 hold, while on other cases far worse than Plaintiff's, they were releasing the defendants on their own recognize. In particular, The State v. Jane Un, wherein SECORD released defendant Un on her own recognize even though she had been fighting two other cases, had violated a Vargas Waiver and is a Turkish immigrant.

757. The criminal cases against Plaintiff are retaliatory prosecution for Plaintiff asserting her rights to redress.

758. Defendants shared private information of Plaintiffs with ALLEN, knowing Plaintiff was the victim of ALLEN'S crimes. Plaintiff is informed, believes and thereon alleges SECORD gave ALLEN her address information. SECORD was aware Plaintiff had a confidential address due to ALLEN'S crimes.

759. Sometime between the end of May 2004 to mid June 2004, ALLEN contacted Officer Gallagos with the Santa Fe Police Department alleging Plaintiff had a felony fugitive warrant for her arrest, approximately two weeks **prior** to the issuance of the second warrant, which is information only SECORD would have known. The warrant issued on June 30, 2004.

760. ZIBELL and VERLINGO exonerated Plaintiff's bail without notice to Plaintiff's Attorney and without a motion before the court. This is also in violation of California Penal Code §1300.

761. As a direct result of SECORD'S actions, Plaintiff was incarcerated for 3-1/2 weeks at WEST VALLEY DETENTION CENTER, was refused medical attention, her heart medications, resulting in a Myocardio Infarction (heart attack) which caused permanent

damage to Plaintiff's heart.

762. As a direct result of ZIBELL and VERLINGO'S actions, Plaintiff was forced to pay, for the third time, a bail premium for her $250,000.00 bail which defendants exonerated. This was over and above the cost of the bail premium for the $100,000.00 bail SECORD had affixed on Plaintiff for the second set of charges.

763. The Defendants' acts were intentional and done in violation of Plaintiff's legal and constitutional rights, and have directly and proximately caused Plaintiff humiliation, mental pain, intentional inflictions of emotional distress, negligent infliction of emotional distress, injury and harm to Plaintiff's health and body civil and constitutional rights violations, and the invasion of privacy, and has cost Plaintiff excessive amounts of money, placing Plaintiff and Plaintiff's family in financial hardship

### FORTY-SIXTH CAUSE OF ACTION

**Medical Malpractice**
(Against Defendants SAN BERNARDINO COUNTY SHERIFF'S
DEPARTMENT, WEST VALLEY DETENTION CENTER LIONG,
DOE CONTRACTORS and DOE NURSES)

764. Plaintiff incorporates and realleges the preceding paragraphs as if fully set out herein.

765. Defendants, acting in concert with one another, engaged in intentional due process violations. In so doing, Defendants' have caused the Plaintiff to suffer deprivation of her fundamental rights to due process. These actions violated Plaintiff's rights to due process of the laws.

766. Defendants, and each of them, and Does 1 through 10, inclusive, owed a duty of care to provide the necessary medical care to Plaintiff for her medical condition.

767. Defendants, and DOES 1 through 10, and each of them, failed to exercise that degree of

Complaint                                    - 148 -

knowledge and skill ordinarily possessed and exercised by other physicians, surgeons, hospitals, nurses, attendants, consultants, employees, and the like engaged in said profession in the same locality as said defendants, and each of them.

768.   Defendants, their agents, DOES 1 through 10,  and each of them, breached this duty by failing and/or refusing and/or negligently providing medical care for plaintiff's medical condition, failing to conduct a proper examination and testing upon the Plaintiff; providing Plaintiff with proper medication, and providing plaintiff with improper medication and amounts, and treatment, causing Plaintiff to have to deal with and terminate a pregnancy, and causing Plaintiff to have additional and unnecessary medical care and treatment as a result of Defendants negligence; and failing to  inform Plaintiff of the injury inflicted by defendants as a result of their negligence, thereby causing Plaintiff to suffer additional medical care for her condition.

769.   As a legal and proximate cause of this breach of duty by the Defendants, and each of them, Plaintiff was forced to undergo additional medical services, undergo other related medical services and procedures associated with Defendants negligence.

770.   In or about August 2004, Plaintiff discovered  the cause of Plaintiff's injuries was a failure of the Defendants, and each of them, to properly exercise the proper degree of knowledge and skill in examining, diagnosing, treating, and caring for Plaintiff's medical condition, and in fact, discovered  Defendants, and each of them, committed extreme gross negligence by improperly failing to treat Plaintiff's medical condition.

771.   As result of the conduct of the Defendants, and each of them, Plaintiff has suffered damages in a sum to be proven at trial but in excess of the jurisdictional minimum of this court.

772.   The Defendants' acts were intentional and done in violation of Plaintiff's legal and constitutional rights, and have directly and proximately caused Plaintiff humiliation, mental

**Complaint**                                    - 149 -

pain, intentional inflictions of emotional distress, negligent infliction of emotional distress, injury and harm to Plaintiff's health and body civil and constitutional rights violations, and the invasion of privacy, and has cost Plaintiff excessive amounts of money, placing Plaintiff and Plaintiff's family in financial hardship.

### PRAYER FOR RELIEF ON ALL COUNTS

WHEREFORE, plaintiff prays for judgment, awarding her:

A.. Immediate indictment and prosecution of all defendants, co-conspirators, and offenders.

B. Immediate restraint of all prohibited racketeering activity pursuant to Title 18 U.S.C. Section 1964(a) Civil remedies by issuance of the appropriate orders, including, but not limited to: ordering any person to divest himself or herself of any interest, direct or indirect, in any enterprise; imposing reasonable restrictions on the future activities or investments of any person, including, but not limited to, prohibiting any person from engaging in the same type of endeavor as the enterprise engaged in, the activities of which effect interstate or foreign commerce; or ordering dissolution or reorganization of any enterprise, making due provision for the rights of innocent persons.

C. The court enter a judgment declaring, pursuant to 28 U.S.C. §§ 2201 and 2202, all defendants official policy authorizing the violations of the rights to privacy, excessive bail, Torture, Twice Placed in Jeopardy, non discriminatory policing, due process, equal protection of the laws, and violate the laws of the State of California, is unconstitutional on its face and as applied, in that it has resulted in unjustified emotional distress, invasion of privacy, including those of Plaintiff's, in violation fo the First, Sixth, Eighth and Fourteenth Amendments to the Constitution of the Unites States, 42 U.S.C. §1983; 1985(3); and 1986;

D. The court enter a judgment declaring, pursuant to 28 U.S.C. §§ 2201 and 2202, defendants have engaged in violations of due process, non discriminatory policing, invasion of privacy, excessive bail, twice placed in jeopardy, torture, rights to privacy and equal protection of

**Complaint**

- 150 -

the laws by taking items from Plaintiff's confidential and private paternity file in violation of the First, Sixth, Eighth and Fourteenth Amendments to the Constitution of the United States;

E.    Declare, pursuant to 28 U.S.C. §§ 2201 and 2202, defendants official policy authorizing the San Bernardino District Attorney's Office, Deputy District Attorneys to violate the rights to privacy, the rights to due process, non discriminatory policing, excessive bail, twice placed in jeopardy for the same crime, torture, the rights to the equal protection of the laws and violate the laws of the State of California, is unconstitutional on its face and as applied, in that it has resulted in unjustified emotional distress, invasion of privacy, including those of Plaintiff's, in violation fo the First, Sixth, Eighth and Fourteenth Amendments to the Constitution of the Unites States, 42 U.S.C. §§ 1983; 1985(3); and 1986;

F.    The court enter a judgment declaring, pursuant to 28 U.S.C. §§ 2201 and 2202, defendants have engaged conspiracies, racketeering, prohibited activities in violations of 18 U.S.C. §§ 892, 894. 1341, 1343, 1962, 1956, 1957 Racketeering influenced Corrupt Organizations (RICO) and in violation of the First and Fourteenth Amendments to the Constitution of the United States;

G.    The court enter a judgment declaring, pursuant to 28 U.S.C. §§ 2201 and 2202 defendants have engaged in and are guilty of violating court orders, slander and libel.

H.    The court enter a judgment declaring, pursuant to 28 U.S.C. §§ 2201 and 2202, defendants have engaged in perjury, subornation of perjury, False Declarations before Grand Jury or Court, in violation of 18 U.S.C. §§ 1621, 1622 and 1623;

I.    The court enter a judgment declaring, pursuant to 28 U.S.C. §§ 2201 and § 2202, defendants have engaged in mail and wire fraud in violation of 18 U.S.C. §§ 1341 and

**Complaint**

- 151 -

1343.

J      The court enter a judgment declaring, pursuant to 28 U.S.C. §§ 2201 and 2202, defendants engaged in misprision of felony, pursuant to 18 U.S.C. § 4;

K.     Enjoin defendants immediately to discontinue such invasion of privacy, handing out private information, discriminatory policing, violation of rights to the equal protection of the laws and refusal of due process as described herein;

L.     Enjoin defendants immediately to amend their continuing unconstitutional custom, policy or practice of invading private and personal information, giving private and personal information to others to aid in civil actions, perjury, misprision of felony, deprivation of rights, false declarations before grand jury or court, the rights to the equal protection of the laws;

M.     Enjoin Defendants immediately from their participation in the state court proceeding against Plaintiff Lisa Richardson and Lisa Liberi, Case #FWV-028000 and FSB-044914.

N.     The Court order injunctive and declaratory relief against defendants and enjoin the state court proceedings, San Bernardino County Superior Court Case #FSB 044914 and FWV 028000, on the ground they are retaliatory, fraudulent and California laws are being unconstitutionally applied by the state court and defendants' so as to cause Plaintiff great and irreparable harm.

O.     The court order an immediate investigation by the Attorney General, Grand Jury and/or FBI regarding the practices of the SAN BERNARDINO DISTRICT ATTORNEY'S OFFICE, THE SAN BERNARDINO COUNTY SHERIFF'S DEPARTMENT, and WEST VALLEY DETENTION CENTER.

P.     The court order an immediate investigation by the Department of Insurance, Attorney General, Grand Jury and/or FBI regarding the practices of BOONES BAIL BONDS,

Complaint                                - 152 -

ALLWAYS FOR-U BAIL BONDS, ZIBELL, VERLINGO and SENECA INSURANCE COMPANY.

Q.    The court order an immediate investigation by the FBI, Attorney General and/or Grand Jury regarding the behaviors and practices of SECORD, ALLEN, LEIBERICH, HEARY, RAMOS, ZIBELL and VERLINGO.

R.    The court order all defendants to stop conspiring, Racketeering (favors), frauds, swindles, harassing, and intimidating the Plaintiff, Plaintiff's family, and Plaintiff's counsel.

S.    The court order all defendants to stay away from each other.

T.    The court immediately order all defendants are restrained and are to stay away from Plaintiff, Plaintiff's family, and Plaintiff's counsel, their place of residence, place of business, and school.

U.    The court immediately order all defendants are not to have any association with any actions which have anything to do with Plaintiff.

V.    Award Plaintiff compensatory and consequential damages pursuant to all counts, in an amount to be determined at trial, against the official and individual defendants, jointly and severally, in their official and individual capacities;

W.    Award Plaintiff punitive damages pursuant to all counts in an amount to be determined at trial, against the individual defendants, jointly and severally, in their official and individual capacities;

X.    Award Plaintiff treble damages pursuant to all counts in an amount to be determined at trial, against the individual defendants, jointly and severally, in their official and individual capacities;

Y.    Award Plaintiff their costs and attorney fees incurred in pursuing this action, as provided in

**Complaint**

42 U.S.C. § 1988;

Z.     Grant such other and further relief as the Court may deem just and proper.

## JURY DEMAND

773.   Plaintiff hereby demands a trial by jury.

Dated: March 17, 2005                    LAW OFFICES OF MICHELLE D. STRICKLAND


                                         *Michelle D. Strickland*
                                         MICHELLE D. STRICKLAND, Attorney for
                                         Plaintiff, LISA LIBERI, individually

**Complaint**                            - 154 -

## <u>VERIFICATION</u>

STATE OF NEW MEXICO, COUNTY OF SANTE FE

I have read the foregoing COMPLAINT UNDER CIVIL RICO ACT Section 18 U.S.C. 1962, etc., and know its contents.

I am a party to this action. The matters stated in the foregoing document(s) are true, based on my own knowledge, except for those matters which are stated on information and belief, and as to those matters, I believe them to be true.

I declare under the penalty of perjury under the laws of the State of California that the forgoing is true and correct and that this verification was executed this 7th day of April 2005, at Santa Fe, New Mexico.


LISA LIBERI